THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICIA DAFFIN,<br><br>   Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>   Defendant. | Case No. C-1-00 458<br><br>Judge Dlott<br><br>**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM IN RESPONSE TO THE COURT'S ORDER DIRECTING PARTIES TO ADDRESS CERTAIN SPECIFIC ISSUES** |

## **INTRODUCTION**

On October 31, 2003, the Court ordered the parties to be prepared to address at the November 13, 2003 oral argument on plaintiffs' class certification motion 10 questions relating to class certification and subject matter jurisdiction. Subsequently, the Court granted plaintiff's request for briefing on those questions, and continued oral argument on class certification to December 11, 2003. As discussed below, the answers to the Court's questions clearly establish that this Court has subject matter jurisdiction and should deny plaintiff's motion to certify a statewide class.

    **A.**    **Class Certification Issues**

        1.    **Whether the unnamed putative class members have a cause of action if they have not yet experienced an injury.**

Defendant previously addressed this issue in its Memorandum In Opposition To Plaintiff's Motion For Certification Of A Statewide Class ("Def. Mem. Opp.") at pages 14-16. There, Defendant cited extensive Ohio and Federal case law for the unremarkable proposition that without a cognizable injury, the purchaser of a product has no standing to sue. *See, e.g., In*

*re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.,* 288 F.3d 1012, 1017 (7th Cir. 2002) ("no injury, no tort, is an ingredient of every state's law").[1] Accordingly, unnamed putative class members who have driven their vehicles without incident – never experiencing accelerator sticking – simply have no cause of action. Nor have those putative class members who had their throttle body assemblies cleaned or replaced during the applicable warranty period suffered any cognizable injury. Indeed, as the court noted in *In re Bridgestone/Firestone,* "If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation." *Id.*

> 2. **How the individualized issues of reliance of the putative class members impact the commonality of warranty claims.**

As defendant has previously established: (1) under Ohio law, express warranty claims require a demonstration of reliance, and (2) such reliance cannot be proven on a class-wide basis. Def. Mem. Opp. at 32-33; *Wagner v. Roche Lab.*, 709 N.E.2d 162, 166 (Ohio 1999); *Jones v. Kellner*, 451 N.E.2d 548, 549 (Ohio Ct. App. 1982); *Duran v. AT&T Corp.*, No. Civ. A. WMN-00-3676, 2000 WL 33592869, *8 (S.D. Ohio Aug. 31, 2000) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.* 155 F.3d 331, 341 (4th Cir. 1998)).

Numerous federal courts have held that where reliance is an element of a claim (outside the securities law context), establishing reliance requires highly individualized proof – ***even***

---

[1] *See also Briehl v. General Motors Corp.,* 172 F.3d 623, 627-28 (8th Cir. 1999) (citing cases holding that plaintiffs whose products have not actually failed can have no cause of action); *Children's Hosp. v. Dept. of Public Welfare*, 433 N.E.2d 187, 190 (Ohio 1982) ("Ordinarily, a cause of action does not accrue until ***actual damage occurs****….*") (emphasis added); *Vasu v. Kohlers*, *Inc.,* 61 N.E.2d 707 (Ohio 1945) ("The very gist of an action for negligence is the damages to person or property…."); *Wolf v. Lakewood Hosp.*, 598 N.E.2d 160, 164 (Ohio Ct. App. 1991) (tort and contract claims require "actual damages," not prospective harm); *Gilmore v. General Motors Corp.*, 300 N.E.2d 259 (Ohio Ct. Com. Pl.'s 1973) (denying certification of class of Ohio residents seeking mandatory inspection and repair of allegedly defective heaters, where only some class members were alleged to have been exposed to harmful vapors); *Frank v. Daimler Chrysler Corp.*, 741 N.Y.S.2d 9, 11-12, 16 (App. Div. 2002); *Ziegelmann v. Daimler Chrysler Corp.*, 649 N.W.2d 556, 565 (N.D. 2002); *Cf. Delahunt v. Cytodyne Technologies*, 241 F. Supp. 2d 827, 837 (E. D. Ohio 2003) (CSPA claim can arise only when prior decision or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated the CSPA).

***where the representations made to the purchasers are uniform***. *See, e.g., Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002) (reversing the certification of a class of telephone customers alleging fraud because reliance could not be presumed); *Hudson v. Delta Air Lines*, 90 F.3d 451, 457 (11th Cir. 1996) (even where a uniform message communicated to retirees, the reliance element required highly individualized proof).[2]

Thus, even were the Court to presume that all putative class members were exposed to identical statements from Ford regarding their purchase, the Court could not presume that each individual relied on any particular portion of that warranty. Without proof of reliance on an individualized basis, there is no proof of any commonality among the putative class members with respect to the purported express warranty claims.

Further, because Ohio law provides that any explicit "affirmation of fact or promise" by the seller constitutes part of an express warranty (Ohio Rev. Code § 1302.26(A)(1)), the Court could not even begin to address individual issues of reliance, until it first determined the statements from Ford to which each individual had been exposed. *See* Def. Mem. Opp. at 33-34).[3]

---

[2] *See also, e.g., Smith v. Berg,* No. 99 C 7457, 2001 WL 1169106 (E.D. Pa. Oct. 1, 2001) ("Common questions do not predominate because plaintiffs' RICO claims require proof of individual reliance."); *Krieger v. Gast*, 197 F.R.D. 310, 320 (W.D. Mich. 2000) (court refused to certify class under Rule 23(b)(3) because state-law fraud claim required proof of individualized reliance by class members); *O'Neil v. Appel*, 165 F.R.D. 479, 498 (W.D. Mich. 1996) ("district courts have refused to certify class actions for the very reason that individual proof of reliance would be necessary, thus creating an unmanageable lawsuit in which numerous 'mini-trials' on the issue of reliance and damages would overwhelm the common issues"); *Freedman v. Arista Records, Inc*., 137 F.R.D. 225, 229 (E.D. Pa. 1991) (denying certification of class alleging fraudulent representations regarding the authenticity of vocals on a music album because the reasons for purchasing popular music were "highly individualized . . . and as such . . . not susceptible to a class based determination of inducement as in securities fraud cases.").

[3] Although reliance, per se, is not an element of implied warranty under Ohio law, individualized issues regarding plaintiff's implied warranty claims still bear negatively on any commonality among putative class members. For example, individuals who purchased their vehicles used rather than new, may have done so with express disclaimers – *i.e.*, "as is" *see* Ohio Rev. Code § 1302.29 (C)(1) ("all implied warranties are excluded by expressions like 'as is'"); meanwhile, commercial purchasers cannot recover purely economic damages under an implied warranty theory, *see Sun Ref. & Mktg. Co. v. Crosby Valve & Gage Co.,* 627 N.E.2d 552, 554 (Ohio 1994).

>   3.  **Whether Plaintiff's tailoring of her claims has a preclusive effect on putative class members later asserting claims for personal injury or putative class members with both personal injury and property damage claims.**

Plaintiffs' cynical attempt to win certification by excluding the claims of all putative class members who have suffered or may suffer personal injury (First Am. Compl. ¶ 33.ii)[4] runs afoul of two important legal principles.

First, Ohio law prohibits claim splitting. *See Rush v. City of Maple Heights,* 147 N.E.2d 599, 601 (Ohio 1958) (reversing trial court decision to allow plaintiff to "split her cause of action" and to file separate actions for property damage and for personal injury.) As the Ohio Supreme Court noted in *Rush*, "'[t]he negligent action of the plaintiff . . . constituted but one tort.'" 147 N.E.2d at 605 (quoting *Mobile & Ohio Rd. Co. v. Matthews,* 91 S.W. 194 (Tenn. 1906). "'[I]f the plaintiff fail to sue for the entire damage done him by the tort, a second action for the damages omitted will be precluded by the judgment in the first suit brought and tried.'" *Id.*

Second, if a class were to be certified, regardless of the named plaintiffs' success on the merits, Ohio principles of *res judicata* would preclude future lawsuits by putative class members seeking personal injury and property damage claims. *See, e.g., Hughes v. Calabrese,* 767 N.E. 2d 725, 728 (Ohio 2002) ("'[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action'") (citations omitted); *Nilavar v. Mercy Health System-Western Ohio,* 142 F. Supp. 2d 859, 884 (2000) ("The Ohio law of res judicata, or claim preclusion 'requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.'") (citations omitted).

---

[4] While plaintiff has not explicitly excluded claims for property damage, she does not argue that such individualized claims could or should be susceptible to classwide treatment.

Not surprisingly, numerous courts have refused to certify classes where the named plaintiffs attempt to exclude claims for personal injury or engage in other forms of claim splitting. For example, in *Feinstein v. Firestone Tire & Rubber Co.,* 535 F. Supp. 595, 606 (S.D.N.Y. 1982) refused to certify a class where plaintiffs' attempted to "tailor[] the class claims" to exclude personal injury and property damage claims. Plaintiffs' strategy "was purchased at the price of presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action." *Id. See also Western States Wholesale, Inc. v. Synthetic Indus., Inc.,* 206 F.R.D. 271, (C.D. Cal. 2002) (denying class certification because named plaintiff in inadequate representative for "abandon[ing] particular remedies to the detriment of the class"); *Hoyte v. Stauffer Chem. Co.,* 2002 WL 31892830 at \*\*42-43 (Fla. Cir. Ct. Nov. 6, 2002) (same); *Pearl v. Allied Corp.,* 102 F.R.D. 921, 923-24 (E.D. Pa. 1984) (same); *Thompson v. Am. Tobacco Co., Inc.,* 189 F.R.D. 544, 550 (holding class representatives inadequate because they waived personal injury damages and sought only medical monitoring program). [5]

Even if unnamed class members were allowed to bring future actions for personal injury or property damage – which Ohio law would prohibit – they unquestionably would be bound by the determination of dispositive issues in this case. For example, if a class is certified and a jury determines that the Villagers at issue are not defective, class members attempting to bring a future claim for personal injury or property damage will be bound by that determination. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 340 n. 25. (S.D.N.Y.

---

[5] As the *Feinstein* court noted, in addition to establishing the named plaintiffs' inadequacy as class representatives, "The sacrifice by a putative class representative of the rights of absent class members implicates due process considerations." 535 F. Supp. at 606 n. 16 (citing *Hansberry v. Lee,* 311 U.S. 32, 45 (1940)).

2002).[6] Indeed, as Ford has noted, the Seventh Amendment to the United States Constitution would prohibit reexamination of the same issue by a different jury, or consideration of issues such as causation or comparative fault by different juries. Def. Mem. Opp. at 50-51.

    4. **Whether injunctive relief, and thus class certification under Federal Rule of Civil Procedure 23(b)(2), is appropriate if remedies are available at law.**

As Ford has previously established, Rule 23(b)(2) was designed for and is reserved for cases in which the predominate relief sought is injunctive. *See* Def. Mem. Opp. at 23-30; Advisory Committee Notes to Rule 23(b)(2); *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1003 (D.C. Cir. 1986); *Rugambwa v. Betten Motor Sales,* 200 F.R.D. 358, 366 (W.D. Mich. 2001).[7]

As the Supreme Court of both the United States and Ohio have held, it is black letter law that "[e]quitable relief in a federal court is of course subject to restrictions . . . [including that] a plain, adequate and complete remedy at law must be wanting." *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945); *Haig v. Ohio State Bd. of Educ.*, 584 N.E.2d 704, 707 (Ohio 1992) ("An injunction is an equitable remedy and will not lie where there is an adequate remedy at law").

Here, Ms. Daffin has made no showing – nor even a credible argument – that she is not seeking damages in all her claims. In fact, her First Amended Complaint makes abundantly clear that the primary relief that she seeks is to recover monetary damages.[8] And there is no question that under any of the causes of action which Ms. Daffin alleges, monetary damages are available.

---

[6] The prejudice to unnamed class members is particularly acute in a Rule 23(b)(2) class where there is no opt-out provision. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. at 340 n. 24.

[7] *See also Feinstein,* 535 F. Supp. at 600 n. 5 ; *In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 177 F.R.D. 360, 364 (E.D. La. 1997).

[8] "Plaintiff seeks economic damages on behalf of all class members" (FAC ¶ 33ii); Plaintiff seeks for herself and all putative class members "incidental and consequential damages" (FAC ¶¶ 47, 53); Plaintiff is entitled to "all compensatory damages proximately caused by Ford's breach, including, but not limited to, the difference in valuation of a Villager with a non-defective Throttle Body Assembly and a Villager with a defective Throttle Body Assembly" (FAC ¶¶ 59, 65); and "damages and, where appropriate under state consumer protection laws, trebling such damages." (FAC Prayer ¶ d.).

*See, e.g.,* Ohio Rev. Code § 1302.88(B) (breach of warranty); *Wagenheim v. Alexander Grant & Co*., 482 N.E.2d 955 (Ohio 1983) (same); *Haag v. Cuyahoga County,* 619 F. Supp. 262, 276 (N.D. Ohio 1985) (negligence; remedy for a tort is damages); Ohio Rev. Code § 1345.09 (providing for damages under CSPA). Accordingly, there is no basis for injunctive relief in this case, and the Court cannot credibly entertain class certification under Rule 23(b)(2).

To make this point even more clear, the alternative injunctive relief which Ms. Daffin seeks – *i.e.*, a de facto court ordered recall – is unavailable. Federal courts have no authority to supplant the wide-ranging investigatory, administrative, and monitoring functions of the National Highway Transportation Safety Administration ("NHTSA"). *See In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig,* 153 F. Supp. 2d 935, 944 (S.D. Ind. 2001) (holding that "[a] parallel, competing system of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies") (citing *International Paper Co. v. Ouellette*, 479 U.S. 481, 492-95 (1987)).[9]

     5.    **Whether a class certification under 23(b)(2) is proper while compensatory damages are at issue, eliminating the opt-out and notice due process requirements of 23(b)(3).**

A class certified under 23(b)(2) must be homogeneous and cohesive in order to justify the departure from normal prerequisites of due process embodied by the opt-out and notice

---

[9] *See also, e.g., Ayres v. General Motors Corp*., 234 F.3d 514, 524 (11th Cir. 2000); *Handy v. General Motors Corp*., 518 F.2d 786, 788 (9th Cir. 1975); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F.Supp. 582, 584 (D. Md. 2001) (holding that "Congress has completely preempted the field with respect to the initiation and conduct of motor vehicle and tire recalls"); *Lilly v. Ford Motor Co.*, No. Civ. A. WMN-00-3676, 2002 WL 84603, *5 (N.D. Ill. Jan. 22, 2002); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* ("*Ignition Switch I*"), 174 F.R.D. 332, 353 (D.N.J. 1997) (same); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 464 (D.N.J. 1998) (same); *In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig*., 846 F. Supp. 330, 343 (E.D. Pa. 1993), *rev'd on other grounds*, 55 F.3d 768 (3d Cir. 1995); *Am. Suzuki Motor Corp. v. Superior Court,* 44 Cal. Rptr. 2d 526, 531 (Cal. Ct. App. 1995); *Ford Motor Co. v. Magill,* 698 So. 2d 1244, 1245 (Fla. Dist. Ct. App. 3d Dist. 1997). For reasons stated in Defendant's Statewide Opp. at 30, Ms. Daffin's reliance on a single unpublished decision to the contrary is unpersuasive.

provisions. *See* Def. Mem. Opp. at 30 n.48.   As suggested by the Court's inquiry, the individualized factual issues raised by plaintiff's compensatory damages claims undermine the homogeneity and cohesiveness of the class and render certification under 23(b)(2) inappropriate *See, e.g., Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000).[10]

In a recent decision, the Sixth Circuit cast serious doubt on whether a class can be ever certified under Rule 23(b)(2) while compensatory damages are at issue. *See Coleman v. General Motors Acceptance Corp.,* 296 F.3d 443, 447 (2002) (reversing the certification of Rule 23(b)(2) class that included compensatory damages as an abuse of discretion).  The Sixth Circuit noted that "the Supreme Court has repeatedly expressed concern over the constitutionality of certifying a mandatory class that includes claims for money damages." *Id.* at 447 (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 846 (1999)).[11]   Nonetheless, the Sixth Circuit had no need to finally resolve that question because even "[a]ssuming *arguendo* that. . . money damages may be recoverable by a Rule 23(b)(2) class," in the case before it the requested injunctive relief did not predominate over monetary damages. *Id.*  The court noted several reasons why the request for compensatory damages in *Coleman* precluded Rule 23(b)(2) certification:

> First, the inclusion of this claim undermines the assumption of homogeneity because each member of the class has an individual stake in the outcome of the litigation that could be protected by the opportunity to opt out of the class. …
> Second, the individualized determinations necessary to calculate the amount of

---

[10] *See also, e.g., Barnes v. Amer. Tobacco Co.,* 161 F.3d 127, 137 (3d Cir. 1998); *Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 450 (N.D. Cal. 1994); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 343 (S.D.N.Y. 2002); *Block v. Abbott Labs.*, No. 99 C 7457, 2002 WL 485364, *8 (N.D. Ill. Mar. 29, 2002); *Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, 641 (E.D. Pa. 2001); *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 628 (E.D. Pa. 1976).

[11] Prior to the decision in *Coleman,* courts in this district had held that Rule 23(b)(2) certification is appropriate only where consequential damages are incidental to the injunctive relief requested.  *See, e.g., Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466 (S.D. Ohio 2001); *Hoffman v. Honda of Am. Mfg., Inc.*, 191 F.R.D. 530 (S.D. Ohio 1999).  As Ford has established, Ms. Daffin initially and primarily seeks money damages.  Def. Mem. at 23-30.  Indeed, even her feigned "injunctive" relief is proffered alternatively as s request for monetary damages.

8

>damages each class member would be entitled to eliminates the efficiencies created by adjudicating these claims on a classwide basis. … Finally, the primary justification for class treatment of these claims is largely absent in this case because the [statutory] provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims.

*Id.* (internal citations omitted).

Each of the concerns exists here. Compensatory damages give each putative class member here an "individual stake" which an opportunity to opt-out would protect. The factual determination of what compensatory damages each plaintiff is entitled to would require individualized inquiry. And the Ohio CSPA provides for attorneys fees, thus "eliminat[ing] any potential financial bar to pursuing individual claims." *Id.* at 449.

> 6. **Whether class action treatment is the superior method for resolving this dispute given the availability of filing a complaint with the National Highway Traffic Safety Administration and its authority to remedy safety-related defects.**

Defendant has offered extensive briefing on this issue in the past. *See* Def. Mem. Opp. at 44-47. As previously explained, to the extent Ms. Daffin is serious in her allegation that her sticking throttle body poses a significant safety risk (an allegation that has become increasingly suspect in the years since this lawsuit was originally filed, during which plaintiff has driven her own vehicle well over 100,000 miles) NHTSA – not this Court – offers the far superior path to an appropriate remedy. Congress empowered NHTSA with broad investigatory, monitoring, and remedial authority over car manufacturers. Unlike a court, NHTSA was created with the welfare of motorists specifically in mind. It is funded by Congress with the specific intent and objective to investigate potential safety risks and remedy those risks on a nationwide basis. Unlike this Court, NHTSA has a legion of technical engineers and experts who can make a clear determination of the potential safety risks involved. Unlike this Court, NHTSA can order a nationwide recall, if necessary, to eliminate and eventually remedy any such risk. The 50

9

separate statewide recalls suggested by plaintiff's current motion promote a costly, disjointed court-administered remedy, without the benefit of NHTSA's expertise and experience. Although Ms. Daffin has the burden to demonstrate that her proposed class action is superior to alternatives, she has done nothing to justify bypassing NHTSA for the courts. *See, e.g., Ignition Switch I,* 174 F.R.D. at 353; *Chin,* 182 F.R.D. at 464 (same); *see also Am. Suzuki Motor Corp.,* 44 Cal. Rptr.2d at 531; *Ford Motor Co. v. Magill,* 698 So. 2d 1244, 1245 (Fla. Dist. Ct. App. 1997).

## II.    SUBJECT MATTER JURISDICTION

The Court posed four questions relating to subject matter jurisdiction. Two years ago the Court raised similar questions in its Order To Show Cause Establishing Federal Jurisdiction. In response to that Order, the parties submitted detailed briefing in which all sides agreed that the amount in controversy requirement was satisfied for two separate reasons: 1) plaintiff sought damages equal to treble purchase price of the vehicle, which alone would have exceeded $75,000; and 2) plaintiff's request for class-wide injunctive relief in the form of a recall program would have greatly exceeded $75,000. *See* Def.'s Resp. to Order to Show Cause Establishing Federal Jurisdiction (Nov. 20, 2003) (Def. Show Cause Mem.); Pl.'s Mem. in Supp. of Diversity Jurisdiction (Nov. 20, 2001) ("Pl. Show Cause Mem.").

Although the Court did not expressly rule on the question of subject matter jurisdiction, it proceeded to deny plaintiff's motion for class certification. The parties have continued to litigate this case in this Court for the past two years. For the sake of efficiency, Ford will not repeat all of the arguments made in response to the Court's prior Order to Show Cause, but will limit its response to the particular issues raised by the Court's most recent order, none of which call into question this Court's subject matter jurisdiction.

      1.    **The jurisdictional effect of the averment in paragraph 10 of Plaintiff's complaint that "Federal jurisdiction over this action does not exist. The amount of controversy as to each plaintiff and putative class member does not exceed $75,000. . . ."**

Plaintiff's averment does not defeat federal court jurisdiction. The Supreme Court has noted that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith," *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938). However, a plaintiff cannot avoid removal to federal court merely by alleging that the amount in controversy does not exceed $75,000. Otherwise, every plaintiffs could avoid removal, which would undermine "[t]he principal policy behind a defendant's statutorily created right to remove," which is "protection from local bias." *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 158 (6th Cir. 1993).

As the Sixth Circuit noted in interpreting *St. Paul,* "state counterparts to Rule 54(c) of the Federal Rules of Civil Procedure, might enable a plaintiff to claim in his or her complaint an amount lower than the federal amount-in-controversy requirement in an attempt to defeat federal jurisdiction, while actually seeking and perhaps obtaining damages far in excess of the federal requirement." *Id.* at 157-58. Such is the case here. Ohio Civil Rule 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." Accordingly, under Ohio law plaintiff's averment that she is not seeking in excess of $75,000 does not mean that she cannot recover more than that amount.

Under such circumstances, the Sixth Circuit has noted that "courts have considered allowing removal where the defendant establishes a 'substantial likelihood' or 'reasonable probability' that the plaintiff *intends* to seek damages in excess of the federal amount-in-controversy requirement." *Gafford*, 997 F.2d at 158 (citations omitted) (emphasis added). Here,

plaintiffs' own admissions establish beyond any doubt that she "*intends* to seek" in excess of $75,000.  *See* Pl. Show Cause Mem. at 12.  Plaintiff's conclusory averment that she was not seeking in excess of $75,000 was insufficient to avoid removal, as even she acknowledges.

        2.    **The effect of Plaintiff's request for an injunction on the amount in controversy.**

In its Notice of Removal, Ford argued that plaintiff's request for injunctive relief in the form of a nationwide recall provided an independent basis for the amount in controversy.  Ford relied on three U.S. District Court cases from within the Sixth Circuit to establish that, under the "either viewpoint" rule, the Court could look to the cost of defendant's compliance with the requested recall program, which would greatly exceed $75,000. (*See* Notice of Removal at ¶¶ 10-18 (citing *In re Cardizem CD Antitrust Litig.*, 90 F. Supp.2d 819, 834 (E.D. Mich. 1999); *Crosby v. America Online, Inc.*, 967 F. Supp. 257, 264 (N.D. Ohio 1997); *Hambell v. Alphagraphics Franchising, Inc.*, 779 F. Supp. 910, 912 (E.D. Mich. 1991)).

Two post-removal decisions in the Southern District of Ohio suggest that the appropriate measure for the amount in controversy for injunctive relief is not the "either viewpoint" rule, but rather the "plaintiff's viewpoint" rule.  *McIntire v. Ford Motor Co.,* 142 F. Supp. 2d 911, 922 (S.D. Ohio 2001); *Perotti v. Black & Decker (U.S.), Inc.,* 205 F. Supp. 2d 813 (N.D. Ohio 2002).

Under this view, in hindsight, Ford arguably did not satisfy its burden of establishing the jurisdictional minimum, as Ford did not argue that the value of the injunctive relief would exceed $75,000 to the named plaintiff individually or to each members of the class.  *McIntire*, 142 F.Supp.2d. at 923 (ascribing no value to the requested injunction "[b]ecause neither Plaintiffs in the Complaint nor Defendant in its Opposition Memorandum has provided a basis for determining the value of this litigation *to Plaintiffs*.")

Nonetheless, given the then-existing facts and law as of the date of removal, federal

diversity jurisdiction was appropriate and adequately demonstrated through Ford's Notice of Removal and attached affidavits.  To the extent case law decided after the filing of a notice of removal could be an exception to the rule that "the determination of federal jurisdiction in a diversity case is made as of the time of removal," *Rodgers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000), *cert. denied*, 532 U.S. 953 (2001), Ford notes that *McIntire* and *Perotti* are contrary to other District Court opinions within the Sixth Circuit and are not controlling on this Court.[12]

        3.    **The Court inquired about "[t]he jurisdictional effect of Ohio Revised Code Section 1345.09(B)'s provision that a consumer may not recover treble damages under the Consumer Sales Practices Act in a class action.**

Plaintiff brought her original complaint on "behalf of herself" as well as on behalf of a putative class.  If this lawsuit cannot be certified as a class action, plaintiff can, and presumably will, continue to pursue her individual claims.[13]  If successful, there is no question that under Section 1345.09(B), plaintiff can and will attempt to recover treble damages.[14]  As both sides concede if successful, Section 1345.09(B) plaintiff could recover treble damages.  Given that the original purchase price of her vehicles exceeded $29,000, the total amount of plaintiffs' recovery under Section 1345.09(B) could exceed $75,000.  It would be turn logic on it head – and involve an enormous waste of judicial resources – if following years of litigation in this Court, this case were remanded to state court, class certification were denied, and plaintiff allowed to proceed on her individual CSPA claim for treble damages in excess of $75,000.

---

[12] Ford further notes that any discussion in *McIntire* regarding the aggregation of defendant's costs of injunctive relief was dicta.

[13] Where class action claims are meritless, "it would be improper to consider the claims of putative class members in determining jurisdiction."  *Knauer v. Ohio State Life Ins. Co.,* 102 F. Supp. 2d 443, 446 (N.D. Ohio 2000).

[14] Indeed, following this Court's denial of nationwide class certification, plaintiff was under no obligation to seek certification of an Ohio-only class.  She could have proceeded simply to litigate her individual claims on her own behalf.  Likewise, if the Court denies plaintiff's motion to certify a statewide class, plaintiff can continue to pursue her individual claims.

Moreover, when plaintiff filed her original complaint she purported to pursue claims not only under Ohio's CSPA, but under "similar state statues." There is no question that the amount in controversy would be satisfied under the consumer protection statutes of other states. For example, in *Rosen v. Chrysler Corp.,* 205 F.3d 918 (6th Cir. 2000), the district court dismissed class action claims brought under the New Jersey Consumer Fraud Act for lack of subject matter jurisdiction, because the amount in controversy requirement had not been satisfied. The Sixth Circuit reversed, noting that New Jersey's Consumer Fraud Act (unlike Ohio's) provides for treble damages in a class action and that a "trebling of rescission damages alone potentially could exceed" the amount in controversy. *Id.* at 922. The fact that, following removal, the Court denied certification of a nationwide class and plaintiff now seeks only claims on behalf of Ohio residents, does affect the fact that removal was appropriate when it occurred. *See Rodgers*, 230 F.3d at 871.

        4.      **The effect of the Judicial Improvements Act of 1990, amending 28 U.S.C. 1367, on whether this Court could exercise supplemental jurisdiction over putative class members whose claims do not meet the amount in controversy.**

The question of whether this court could exercise supplemental jurisdiction over putative class members whose claims do not meet the amount in controversy requirement is largely irrelevant in this case, where defendant has demonstrated conclusively that this case cannot be maintained a class action under any theory. If the Court denies plaintiffs' motion for class certification, it has no need to address the issue.

Nonetheless, should the court feel the need to resolve the issue, it should find that if the claims of even one member of Plaintiff's putative class meet the amount in controversy, the Court would nonetheless have supplemental jurisdiction over the entire class under section 1367. When Congress amended 28 U.S.C. § 1367 in the Judicial Improvements Act of 1990, it

explicitly listed those parties over whom a federal court could not exercise supplemental jurisdiction once it had diversity jurisdiction under 28 U.S.C. § 1332:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction . . . over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b). By not excluding putative class members made parties under Rule 23, Congress clearly expressed its intent that federal courts should exercise supplemental jurisdiction over putative class members if one member of that class exceeded the amount in controversy (thereby legislatively overruling *Zahn v. International Paper Co.*, 414 U.S. 291 (1973)).[15]

Despite this seemingly clear cut language, the United States Supreme Court divided 4-4 on the only occasion where it considered whether section 1367 had overruled *Zahn*. *See Free v. Abbott Labs., Inc.*, 529 U.S. 333 (2000) (per curiam). The Court of Appeals for the Sixth Circuit has not yet addressed this issue, and the district courts in this circuit have split as to their conclusion. *Compare Olden v. LaFarge Corp.*, 203 F.R.D. 254, 260-65 (E.D. Mich. 2001) (relying on plain language of statute), with *Krieger v. Gast*, 197 F.R.D. 310, 315-16 (W.D. Mich. 2000) (relying on legislative history rather than plain language of statute).[16]

---

[15] *Zahn* held that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case . . . ." 414 U.S. at 301.

[16] The two other cases that the Court asked the parties to consider, *i.e.*, *Crosby v. America Online, Inc.*, 967 F. Supp. 257 (N.D. Ohio 1997) and *Knauer v. Ohio State Life Insurance Co.*, 102 F. Supp. 2d 443 (N.D. Ohio 2000), are questionable precedents as they relate to supplemental jurisdiction. The discussion in *Crosby* of the impact of the Judicial Improvements Act is clearly dicta, because the court had already decided that *no* plaintiff met the amount in controversy. *See* 967 F. Supp. at 262. Without examining the rationale of *Crosby*, the *Knauer* court subsequently followed that decision, because it "believe[d] that the better policy is to avoid intra-district splits wherever possible." 102 F. Supp. 2d at 448.

Nevertheless, the most recent decisions by federal appellate courts have found that the Judicial Improvements Act of 1990 overruled *Zahn*.[17]  And recent opinions by the Sixth Circuit Court of Appeals emphasizing that courts must look at the "plain language of a statute" to determine its meaning suggest that it too would side with this conclusion.  *Telespectrum, Inc. v. Public Service Comm'n*, 227 F.3d 414, 421 (6th Cir. 2000) ("This Court 'must presume that a legislature says in a statute what it means and means in a statute what it says.' [and] . . . may not amend or add to the plain language of a statute." (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992)); *accord U.S. v. Boucha*, 236 F.3d 768, 774 (6thCir. 2001) ("It is a well settled canon of statutory construction that when interpreting statutes, '[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.'") (quoting *United States v. Choice,* 201 F.3d 837, 840 (6th Cir. 2000)).  Thus, if the claims of even on putative class member satisfy the amount in controversy, this Court has supplemental jurisdiction over the entire class under section 1367.

---

[17] The circuits have split on the question of whether the new 28 U.S.C. § 1367 overruled *Zahn*.  The Courts of Appeals for the Fourth, Fifth, Seventh, Ninth and Eleventh Circuits have all held that courts can exercise supplemental jurisdiction over class members who do not meet the amount in controversy requirement.  *See Allapattah Services, Inc. v. Exxon Corp*., 333 F.3d 1248, 1253-56 (11th Cir. 2003); *Rosmer v. Pfizer Inc.,* 263 F.3d 110, 118-19 (4th Cir. 2001); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 939-40 (9th Cir. 2001), *cert denied*, 534 U.S 1104 (2002); *Stromberg Metal Works, Inc. v. Press Mech., Inc.,* 77 F.3d 928, 930-31 (7th Cir. 1996); *In re Abbott Labs.,* 51 F.3d 524, 529 (5th Cir. 1995).  The Courts of Appeal for the Third, Eighth, and Tenth Circuits disagree with this conclusion, however.  *See Trimble v. Asarco, Inc.,* 232 F.3d 946, 962 (8th Cir. 2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 222 (3d Cir. 1999); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 641 (10th Cir. 1998).

November 14, 2003

        /s/_____
        Gary M. Glass (0042417)
        THOMPSON HINE LLP
        Suite 1400
        312 Walnut Street
        Cincinnati, Ohio  45404
        Telephone:   (513) 352-6700

        Brian C. Anderson  (pro hac vice)
        John F. Niblock (pro hac vice)
        Thomas Kuczajda (pro hac vice)
        O'MELVENY & MYERS LLP
        1625 Eye Street, N.W.
        Washington, DC  20006
        Telephone:   (202) 383-5300
        Facsimile:    (202) 383-5414

        Attorneys for Defendant Ford Motor Company

DC1:567116.2

17