**Westlaw Attached Printing Summary Report**
**for**
**NETSOLUTIONS 3857996 Thursday, November 13, 2003 19:46:21 Central**

(C) 2003. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2003 West, a Thomson business. No claim to orig. U.S. govt. works."Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN.  WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.

| | |
|---|---|
| Request Created Date/Time: | Thursday, November 13, 2003 19:46:00 Central |
| Client Identifier: | 00000#060000-0010 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 610 |
| Documents: | 1 |
| Images: | 0 |

Not Reported in F.Supp.2d  
168 L.R.R.M. (BNA) 2456  
**(Cite as: 2000 WL 33592869 (S.D.Ohio))**

Page 1

United States District Court, S.D. Ohio, Eastern Division.

George DURAN, Sr., et al., Plaintiffs,
v.
AT & T CORP., et al., Defendants,
COMMUNICATIONS WORKERS OF AMERICA,
and
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
and
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Local 2020, Non-Aligned
Parties.

**No. C-2-99-418.**

Aug. 31, 2000.

*OPINION AND ORDER*

GRAHAM, J.

*1 This is an action for breach of a collective bargaining agreement brought against defendants AT & T Corp. and its successor, Lucent Technologies. The plaintiffs in the above case are production occupation level employees of AT & T Corp. ("AT & T") or Lucent Technologies ("Lucent") and are present or former members of the Communication Workers of America ("CWA"). CWA is one of two unions which has represented production occupation employees at the defendants' facilities, the other being the International Brotherhood of Electrical Workers ("IBEW").

The plaintiffs allege that the defendants are obligated under a 1986 collective bargaining agreement between CWA and AT & T known as the MFG-3 Agreement to pay to the plaintiffs certain benefits referred to as Special Hourly Payment ("SHP") and Special Supplementary Wage Treatment ("SSWT") benefits. The plaintiffs further allege that since the payment of SHP and SSWT benefits was not required under the collective bargaining agreement between the defendants and IBEW, the defendants have refused to continue paying these benefits in cases where the employee has transferred from a CWA-represented facility to a production facility represented by IBEW.

In Count I of the Second Amended Complaint, the plaintiffs assert a claim pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of contract, specifically, the MFG-3 Agreement, alleging that the defendants breached the agreement by failing to pay plaintiffs the SHP and SSWT benefits to which they are allegedly entitled under that agreement.

In Count II of the second amended complaint, the plaintiffs assert a claim of promissory estoppel. This claim is based on a letter dated June 12, 1986 from Robert E. Allen, then president-elect of AT & T (hereinafter the "Allen letter"), which was sent to AT & T employees during the course of a strike which preceded the signing of the MFG-3 Agreement. *See* Second Amended Complaint, Ex. 3. This letter discussed the company's contract offer which, at that point, had been rejected by the union. Plaintiffs assert that they relied on representations made in the Allen letter concerning SHP and SSWT payments to their detriment by agreeing to ratify the MFG-3 Agreement.

In Count III of the second amended complaint, the plaintiffs assert a claim for breach of fiduciary duty. The plaintiffs allege that the collective bargaining agreement between the plaintiffs and the defendant companies established a relationship giving rise to a fiduciary duty owed by the defendants to the plaintiffs, and that the failure to pay SHP and SSWT benefits constituted a breach of that fiduciary duty.

Counts IV and VI assert claims for fraud and fraud in the omission, respectively. The plaintiffs allege that the defendants made knowingly false representations in the collective bargaining agreements and the Allen letter concerning their entitlement to SHP and SSWT payments upon which the plaintiffs relied to their detriment.

*2 Count V asserts a claim for breach of a strike agreement. The plaintiffs claim that statements made in the Allen letter concerning the payments of SHP and SSWT benefits to the plaintiffs "for as long as they are employed by the company" constituted a strike settlement agreement which is enforceable.

This matter is before the court on the motion of defendants AT & T and Lucent for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) with respect to Counts II through VI of the second amended complaint. Judgment may be granted under Rule 12(c) if a court determines that a moving party is entitled to judgment as a matter of law. *Astor v. International Bus. Machs. Corp.,* 7 F.3d 533, 538

Not Reported in F.Supp.2d  
168 L.R.R.M. (BNA) 2456  
**(Cite as: 2000 WL 33592869 (S.D.Ohio))**

Page 2

(6th Cir.1993); *Bools v. General Electric Co.,* 70 F.Supp.2d 829, 830 (S.D.Ohio 1999). In making this determination, the court must accept as true all well-pleaded allegations in the pleadings of the opposing party. *Bools,* 70 F.Supp.2d at 830.

*I. Section 301 Pre-emption*

The defendants have moved for judgment on the pleadings on Counts II through VI on the basis that these claims are state law claims which are pre-empted by § 301 of the LMRA. It is well established that § 301 of the LMRA pre-empts any state claim arising from a breach of a collective bargaining agreement. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The purpose of this rule is to require that all claims raising issues of labor contract interpretation be decided under federal labor law so as to prevent inconsistent interpretations of collective bargaining agreements. *Lucas Flour,* 360 U.S. at 103. The LMRA authorizes the federal courts to develop a uniform body of federal substantive law governing the enforcement of collective bargaining agreements. *Franchise Tax Bd. of state of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Pre-emption occurs when a decision on the state claim "is inextricably intertwined with consideration of the terms of the labor contract," *Lueck,* 471 U.S. at 213, and when application of state law to a dispute "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In evaluating whether state law tort claims are pre-empted by federal law, this court must first determine whether proof of the state law claim requires interpretation of the collective bargaining agreement. *DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994). Next, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement instead of state law. *Id.* If either of these tests is satisfied, § 301 pre-emption is warranted. *Id.*

The defendants contend that the plaintiffs' claims in Counts II through VI of the second amended complaint are state law claims pre-empted by § 301. The plaintiffs contend that they did not intend to assert state law claims of promissory estoppel, breach of fiduciary duty, and breach of contract, specifically, an alleged strike settlement agreement, in Counts II, III and V, but rather that they are pursuing those claims under the federal common law applicable to § 301 contract actions. The plaintiffs agree that their claims of fraud in Count IV and fraud in the omission in Count VI are state law claims, but argue that they are not pre-empted. The court will address *infra* whether the plaintiffs may assert claims of promissory estoppel, breach of fiduciary duty and breach of a strike settlement agreement under federal common law. To the extent that Counts II, III and V may be construed as asserting claims under state law, the court will address the defendants' pre-emption arguments here.

*A. Promissory Estoppel--Count II*

**\*3** To prove a claim of promissory estoppel under Ohio law, a plaintiff would be required to show the following elements: (1) there must be a clear and unambiguous promise; (2) the party to whom the promise was made must rely on it; (3) the reliance is reasonable and foreseeable; and (4) the party relying on the promise must have been injured by the reliance. *Patrick v. Painesville Commercial Properties, Inc.,* 123 Ohio App.3d 575, 583, 704 N.E.2d 1249 (1997).

In Count II of the second amended complaint, the plaintiffs allege that they relied on statements in the Allen letter concerning SHP and SSWT benefits. In ¶ 66, the plaintiffs allege that AT & T, "by its conduct and language as outlined above, represented to Plaintiffs and the Class that were to receive, *pursuant to the terms of the MFG-3 Agreement,* SSWT and SWP [sic] payments for so long as they remained production occupation employees of AT & T." (Emphasis supplied). Ascertaining whether a clear and unambiguous promise was made and whether the plaintiffs were justified in relying on any such promises would require an examination of the Allen letter and the terms of the MFG-3 Agreement to determine to what extent they purported to grant rights to the plaintiffs and whether they were in conflict. Any state law claim of promissory estoppel is inextricably intertwined with the MFG-3 Agreement and would require an interpretation of that agreement. *See DeCoe,* 32 F.3d at 216; *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 801 (6th Cir.1990). The court concludes that to the extent that the plaintiffs' complaint may be construed as asserting a claim of promissory estoppel under Ohio law, that claim is pre-empted under § 301.

*B. Breach of Fiduciary Duty--Count III*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
168 L.R.R.M. (BNA) 2456  
**(Cite as: 2000 WL 33592869 (S.D.Ohio))**

Page 3

In ¶ 77 of the second amended complaint, the plaintiffs allege that "[t]he collective bargaining agreement between Plaintiffs and Defendant established a relationship creating a fiduciary duty owed by Defendant to Plaintiffs." Thus, proof of this claim would require an interpretation of the MFG-3 Agreement, and the plaintiffs have alleged that the right which they are asserting was created by the collective bargaining agreement. *See DeCoe,* 32 F.3d at 216. Both these factors indicate that a state law claim of breach of fiduciary duty would be pre-empted under § 301. *See Williams v. WCI Steel Co., Inc.,* 170 F.3d 598, 607 (6th Cir.1999) (state law claim for breach of fiduciary duty pre-empted).

*C. Fraud and Fraud in the Omission--Counts IV and VI*

The plaintiffs acknowledge that their claims of fraud and fraud in the omission are state law claims, but they assert that these claims are based on the representations made in the Allen letter and that reference to the collective bargaining agreement is therefore unnecessary.

In order to establish their claims of fraud and fraud in the omission under Ohio law, the plaintiffs would have to prove the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991).

**\*4** In ¶ 57(a) of the second amended complaint, the plaintiffs allege that "the agreements upon which Plaintiffs predicate their claims were collectively bargained agreements[.]" In ¶ 81 of Count IV, the fraud claim, the plaintiffs allege that the defendants "made actual material representations of fact that were false, namely that Plaintiffs and the class would receive SHP and [sic] and/or SSWT payments for so long as they remained production occupation employees of AT & T." This language tracks the language in the collective bargaining agreements, *see* Plaintiffs' Exs. 5, 6A, 7A-C, not the language in the Allen letter, which refers to payments being made "to employees for as long as they're employed by the company." In Count VI, fraud in the omission, the plaintiffs allege that AT & T did not inform them of a material fact, namely, that they would not receive SSWT and SHP benefits if they transferred to an IBEW location, in either the Allen letter or the joint collective bargaining agreement summary, before they voted to ratify the MFG-3 Agreement. Second Amended Complaint, ¶¶ 96-98.

According to the second amended complaint, any rights which the plaintiffs have to the SSWT and SHP payments are based on the MFG-3 Agreement and subsequent agreements. However, even assuming that the source of the plaintiffs' rights in the fraud claim is the Allen letter, whether the plaintiffs were defrauded would require an interpretation of the MFG-3 Agreement to determine what benefits the plaintiffs are actually entitled to under that agreement, and whether those benefits differed from those promised in the Allen letter. Likewise, to determine whether the fact that benefits would not be paid to employees who transferred to an IBEW facility was a material omission, it would be necessary to interpret the MFG-3 Agreement to ascertain what benefits are provided for under that agreement.

This case is similar to the situation in *Adkins v. General Motors Corp.,* 946 F.2d 1201, 1208-10 (6th Cir.1991), where the plaintiffs argued that they were induced by false representations to ratify a collective bargaining agreement which allegedly eliminated certain entitlements under a separate interim or "bridge" agreement. The court concluded that the plaintiffs' fraud claims were pre-empted because adjudication of the fraud claims would require a determination as to whether the "bridge" agreement conferred rights on plaintiffs which were not included in a subsequently ratified collective bargaining agreement, and whether the plaintiffs agreed to ratify the collective bargaining agreement due to a misrepresentation of those rights. *Id.* at 1208-10. The court concluded that the fraud claims would require an analysis of both the bridge agreement and the collective bargaining agreement, and that the fraud claims were "so intertwined with the terms of the collective-bargaining agreements present in the case that they may not be separated." *Id.* at 1209-1210. *See also Fox,* 914 F.2d at 802 (state law fraud claim pre-empted); *Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033, 1038 (6th Cir.1989) (fraud claim requiring construction of terms of collective bargaining agreement was pre-empted).

**\*5** In order to prove their state law claims of fraud,

the plaintiffs must show that any representations contained in the Allen letter were not superseded or contradicted by the terms of the collective bargaining agreement. Thus, the fraud claims are pre-empted under § 301 because their resolution is inextricably intertwined with and substantially dependent upon analysis of the terms of the collective bargaining agreement. *See Schuver v. MidAmerican Energy Co., 154 F.3d 795, 799 (8th Cir.1998).*

*D. Breach of Strike Settlement Agreement--Count V*

In Count V of the second amended complaint, the plaintiffs allege that the Allen letter constituted an offer of benefits which was accepted by the CWA when it entered into the MFG-3 Agreement, thereby resulting in the formation of a binding strike settlement agreement.

The Supreme Court held in *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 25-28, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962),* that a § 301 action need not be based on a collective bargaining agreement, but instead is broad enough to encompass suits based on other contracts, such as strike agreements, between an employer and a labor organization representing employees. *See also In re General Motors Corp., 3 F.3d 980, 983 (6th Cir.1993)* (("The term 'contract' as used in section 301 of the LMRA is not limited to collective bargaining agreements, but can embrace understandings other than those usually understood as collective bargaining agreements.")).

If the Allen letter constituted a strike agreement between AT & T and the CWA, as alleged by the plaintiffs, a violation of such an agreement could be challenged under § 301. Thus, any rights asserted through such a breach of contract claim would arise from a § 301 contract, and any state law claim for breach of contract would be pre-empted. Even if the Allen letter is not a § 301 contract, an analysis of this claim would require interpreting the terms of the Allen letter and the MFG-3 Agreement to determine what was actually agreed to between AT & T and the CWA. Further, "it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a [labor contract]." *Jones v. General Motors Corp., 939 F.2d 380, 382-83 (6th Cir.1991).* Any state law claim for breach of a strike settlement agreement is pre-empted in this case.

*II. Garmon Pre-emption*

The defendants further argue that the plaintiffs' claims of promissory estoppel, fraud, and fraud in the omission are preempted under *San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Garmon* pre-emption forbids state regulation of activities which would constitute unfair labor practices under § 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158 within the jurisdiction of the National Labor Relations Board ("the Board").

The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in *Garner [v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953)* ] ) or different from (as in *Farmer [v. United Brotherhood of Carpenters and Joiners of Am., Local 25, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977)* ] ) that which could have been, but was not presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

**\*6** *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters, 436 U.S. 180, 197, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).*

In *Serrano v. Jones & Laughlin Steel Co., 790 F.2d 1279 (6th Cir.1986),* the Sixth Circuit addressed the issue of whether the plaintiffs' fraud claims were subject to *Garmon* pre-emption. The court found that the district court properly held that the fraud claims concerned conduct arguably prohibited by § 8(d) of the NLRA, 29 U.S.C. § 158(d), which requires an employer to bargain in good faith with respect to "wages, hours and other terms and conditions of employment[.]" *Id. at 1286* (noting that the fraud charges, which alleged that the employer did not bargain in good faith in obtaining concessions from the union in a labor agreement and fraudulently misled employees concerning the closing of plants, constituted violations of the employer's § 158(d) duty). The court went on state that the "[f]ailure of an employer to bargain in good faith about terms and conditions of employment is not peripheral to the concerns of federal labor law; rather, it strikes at the heart of one of the basic concerns of that law." *Id. at 1287* (holding that the conduct at issue was not "a mere peripheral concern of the Act," quoting *Local*

Not Reported in F.Supp.2d                                                                                                   Page 5
168 L.R.R.M. (BNA) 2456
**(Cite as: 2000 WL 33592869 (S.D.Ohio))**

926, Int'l Union of Operating Engineers v. Jones, 460 U.S. 669, 676, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983)).

The conduct of AT & T alleges in Counts II, IV and VI of the second amended complaint arguably violates the duty to bargain in good faith as required under § 158(d). The conduct presented to the state court to support the promissory estoppel and fraud claims would be the same conduct which would have been presented to the NLRB to establish a violation of § 158(d). As in *Serrano,* such conduct would not be a "mere peripheral concern" of the NLRA.

The plaintiffs argue that *Garmon* pre-emption should not be applied in this case because they are currently represented by the IBEW, and the IBEW would not be able to assert claims on their behalf before the Board which were based on a CWA contract. It is true that *Garmon* pre-emption should be applied only in situations in which an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or to induce his adversary to do so. Parker v. Connors Steel Co., 855 F.2d 1510, 1517 (11th Cir.1988). However, the defendants correctly argue that the plaintiffs as individual employees could have filed a charge of unfair labor practice against AT & T with the Board. *See* 29 C.F.R. § 102.9 ("A charge that any person has engaged in or is engaging in any unfair labor practice affecting commerce may be made by any person.")

The court concludes that, insofar as the second amended complaint may be construed as asserting state law claims of promissory estoppel, fraud and fraud in the omission, such claims would be barred by the doctrine of *Garmon* pre-emption.

*III. Federal Common Law Claims*

The plaintiffs argue that they should be permitted to pursue their claims of promissory estoppel, breach of fiduciary duty, and breach of an alleged strike agreement as federal common law claims under § 301. The defendants argue that the plaintiffs have pleaded no more than state law claims in Counts II, III and V of their complaint, and that they should not now be permitted to switch theories and pursue these claims as federal common law claims. However, at no place in the second amended complaint do the plaintiffs refer to their claims as being state law claims under Ohio law.

**\*7** The only reference to these claims as state law claims noted by the defendants occurs in the "Order Regarding Class Certification", Doc. No. 52, which the defendants contend was a joint submission prepared by the parties and submitted to the court for approval. It is noted at page 6, footnote 3, that only Count I is included within the class certification, and that "the Court is not certifying plaintiffs' state-law claims for class treatment at this time." However, this language does not specify what these "state-law claims" are.

The legal theories pleaded in Counts II, III and V are theories which could be advanced under either state or federal law. The language in those counts gives the defendants notice of the general nature of the claims being asserted. The defendants particularly should have anticipated that the plaintiffs would seek to assert an estoppel theory in connection with their § 301 claim because similarly situated employees did so against defendant AT & T in *Anderson v. AT & T Corp.,* 147 F.3d 467 (6th Cir.1998), relying on the same Allen letter at issue in this case. The problem here is that the defendants simply assumed that the claims in those counts were state law claims, when in fact the complaint does not so specify. The defendants could have filed a motion for more definite statement pursuant to Fed.R.Civ.P. 12(e), seeking to have the plaintiffs specify whether they were relying on federal or state law in asserting these claims, but they did not do so.

This court concludes that the fact that the plaintiffs did not specifically identify the claims in Counts II, III and V as federal common law claims does not preclude them from proceeding on those theories now. The court will now address the defendants' arguments as to whether they are entitled to judgment on the pleadings on those claims as federal common law claims.

*A. Promissory Estoppel--Count II*

The first issue is whether the plaintiffs may advance the promissory estoppel theory contained in Count II under federal common law. The plaintiffs rely on the Sixth Circuit's decision in *Anderson.,* 147 F.3d at 477, where that court concluded that the "federal common law of contract applicable under the LMRA includes the doctrine of promissory estoppel." The defendants argue that this language is merely *dicta*. While this discussion may have been unnecessary to the resolution of the issues presented in *Anderson,* that case relied on *Apponi v. Sunshine Biscuits, Inc. .,* 809 F.2d 1210, 1217 (6th Cir.1987), where the Sixth Circuit had previously held that "[t]he equitable doctrines of estoppel and waiver are applicable in a

section 301 action to enforce a labor contract." *See also* Frech v. Pensacola S.S. Ass'n, 903 F.2d 1471, 1475-76 (11th Cir.1990) (plaintiffs entitled to recover on estoppel theory even if representations relied on did not constitute a § 301 contract which was independently enforceable).

This court concludes that in the Sixth Circuit, the theory of estoppel may be asserted in support of a § 301 contract claim. As the court in *Anderson* observed, "there is nothing in our cases that excludes the various doctrines of estoppel from the federal common law of contract [that] governs suits brought under the LMRA." Anderson, 147 F.3d at 477. However, the *Anderson* court also noted that the plaintiffs in that case did not seek to assert estoppel as an independent claim for relief, but rather that AT & T should be " 'estopped from denying' that it is liable for future wage-supplement payments to plaintiffs" for purposes of the plaintiffs' breach of contract claim under § 301. *Id.*

**\*8** Thus, while an estoppel theory may be advanced in support of a § 301 breach of contract claim, estoppel may not be asserted as an independent claim for relief. To the extent that the plaintiffs have attempted to do so by pleading their estoppel theory in a separate count, that count must be dismissed.

The opinion in *Anderson* indicates that a promissory estoppel theory may be argued in support of a § 301 breach of contract claim. Count I, the plaintiffs' § 301 breach of contract claim, has been certified as a class action by the court. However, the plaintiffs pleaded their promissory estoppel claim as a separate count, Count II, and did not seek class certification on that count. Thus, the propriety of certifying the promissory estoppel claim for class action treatment has never been briefed by the parties.

Significant legal issues would need to be addressed in determining whether to certify the promissory estoppel theory as a part of the class action. The Sixth Circuit has stated that "[b]ecause of their focus on individualized proof, estoppel claims are typically inappropriate for class treatment." Sprague v. General Motors Corp., 133 F.3d 388, 398 (6th Cir.1998). *See also,* Jensen v. SIPCO, Inc., 38 F.3d 945, 953 (8th Cir.1994) ("[I]f estoppel is an available doctrine, it must be applied with factual precision and therefore is not a suitable basis for class-wide relief.") One element of estoppel is that the party asserting the estoppel must detrimentally and justifiably rely on the representation. Anderson, 147 F.3d at 477. Courts have held that commonality is not established where proof of reliance is an element of the claim. *See* Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 341 (4th Cir.1998) (reliance element not readily susceptible to class-wide proof); Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 457 (11th Cir.1996) (even where uniform message communicated to retirees, reliance element required highly individualized proof).

Thus, while the court holds that the individual named plaintiffs are free to assert the promissory estoppel theory in support of their § 301 breach of contract claim in Count I, the court notes that this theory is not currently a part of the Count I class action. If the plaintiffs decide to seek class certification on the promissory estoppel theory, the court will address the propriety of such certification at that time.

*B. Breach of Fiduciary Duty--Count III*

The plaintiffs also assert a claim of breach of fiduciary duty which they assert arose because "[t]he collective bargaining agreement between Plaintiffs and Defendant established a relationship creating a fiduciary duty owed by Defendant to Plaintiffs." Second Amended Complaint, ¶ 77. The plaintiffs have cited no authority for the proposition that a fiduciary duty is imposed upon an employer by reason of the mere signing of any collective bargaining agreement, regardless of its terms.

**\*9** It is conceivable that the breach of fiduciary relationship theory might apply under appropriate circumstances in connection with a § 301 breach of contract claim. For example, such a claim might arise where the collective bargaining agreement establishes a special pension fund for the employees and delegates the responsibility for administering this fund to the employer, thereby placing the employer in a special fiduciary or trust capacity, and the employer later violates some provision of the collective bargaining agreement concerning this fund. However, the plaintiffs here do not identify or quote any language in the MFG-3 Agreement which could reasonably be construed as giving rise to a fiduciary relationship.

The term "fiduciary relationship" has been defined as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." In re Termination of Employment of Pratt, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). *See also*

Not Reported in F.Supp.2d  
168 L.R.R.M. (BNA) 2456  
**(Cite as: 2000 WL 33592869 (S.D.Ohio))**

Page 7

*State ex rel. Charlton v. Corrigan,* 36 Ohio St.3d 68, 71, 521 N.E.2d 804 (1988). A fiduciary relationship is more than the ordinary relationship of employer and employee. *In re Termination of Employment,* 40 Ohio St.2d at 114, 321 N.E.2d 603; *Olander v. Ohio Environmental Protection Agency,* 134 Ohio App.3d 723, 402, 732 N.E.2d 400 (1999).

Here, the plaintiffs have alleged no facts in the second amended complaint which would indicate that a relationship of special confidence or trust was created by any provision of the collective bargaining agreement. There is no allegation, for example, that the SSWT or SHP payments were to be paid from a special fund which the defendants, as trustees of the fund, mismanaged. The mere alleged contractual duty of AT & T under the terms of the MFG-3 Agreement to pay the SSWT and SHP sums as wages would not create a fiduciary relationship. *Cf. Umbaugh Pole Bldg. Co., Inc. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320, syllabus paragraph one (1979) (relationship of debtor and creditor without more is not a fiduciary relationship). Assuming *arguendo* that AT & T has such a contractual obligation under the MFG-3 Agreement to pay these sums as additional wages, the pleadings indicate that the failure to pay these benefits amounts to no more than a breach of contract. The defendants are entitled to judgment on Count III.

*C. Breach of Strike Agreement--Count V*

The plaintiffs assert a claim for breach of a strike agreement in Count V of the complaint. As noted previously, the Supreme Court held in *Retail Clerks Int'l Ass'n* that a § 301 action need not be based on a collective bargaining agreement, but instead § 301 is broad enough to encompass suits based on other contracts between an employer and a labor organization representing employees. *See also In re General Motors Corp.,* 3 F.3d at 983. However, § 301 authorizes actions for "violation of contracts between an employer and a labor organization representing employees[.]" 29 U.S.C. § 185. Thus, to assert a separate claim under § 301 for violation of a strike settlement agreement in Count V, the plaintiffs would be required to plead sufficient facts indicating that such a strike settlement agreement was arrived at between the CWA and AT & T.

*10 The plaintiffs allege in ¶ 89 of the second amended complaint that the Allen letter, which stated, "These payments will be made to employees for as long as they're employed by the company[,]" constituted a strike settlement agreement. The plaintiffs further assert that "Robert Allen in his letter promised all of the union members that if they ratified the MFG-3 Agreement, "no one will lose money" and the plugs would be payable until they retired, quit or were terminated and the pension [l]adders would be paid upon retirement." Second Amended Complaint, ¶ 90. The plaintiffs further allege in ¶ 91 of the second amended complaint that the "CWA accepted Allen's offer by ratifying the agreement as he requested."

The Allen letter is attached as Exhibit 3 to the second amended complaint. The language of this letter speaks for itself. This letter, addressed to AT & T employees, states that "you've heard a great deal about the contract offer we've made to your union" and that the "company believes it's a fair deal [.]" Allen remarks in his letter that if the employees "look at the details of the offer, I think you'll conclude that it's in the interests of everyone ... for AT & T and the CWA to come to an agreement so you can return to work." The letter notes that "on May 31 [the union] rejected our offer on the national bargaining table in Washington, D.C." and that contract talks had been suspended. The letter goes on to "highlight the national offer" by summarizing its features. [FN1] The letter concludes by stating:

> FN1. The portions of the letter relevant to this case are as follows:
> In our manufacturing locations, we plan to consolidate the current nine- grade level of work into two or three grades, depending on location. Again, no one will lose money under this plan. In fact, more than half of you affected by this plan--52 percent--would earn more money and have greater headroom while the remaining 48 percent would suffer no loss in wages. And, nearly half of all production workers will earn pension increases ranging from 3.3 percent to 12.7 percent as a result of this grade-level consolidation.
> We also plan to replace wage incentives in all of our factories. The incentive payments will be replaced with additional increases of 2 or 3 percent in the base wage, depending on location. That increase is in addition to the 8 percent increase called for in our offer. In addition, wage-incentive employees will receive special monthly payments, based on their wage incentive earnings history. These payments will be made to employees for as long as they're employed by the company.

> Special pension ladders, ranging from 16 to 24 per cent of current pension band values depending on location, will be applicable to all wage-incentive employees.

We think this offer contains a lot of benefits for you and we hope that you agree. It helps put the company in a position to compete in today's environment, a necessary step to assure work for our employees. It does that without taking anything away from you.
We think it's a good, fair offer--one that should not have prompted a strike.

The defendants argue that this letter is insufficient to constitute an offer, but rather at most discussed the features of an offer which had previously been rejected by the union. They note that even the plaintiffs, in their memorandum contra the defendants' motion for judgment on the pleadings on this count, state that the letter "explained the meaning and intent of the AT & T offer as to certain issues in the contract proposal." Plaintiffs' Memorandum Contra, p. 4. The defendants further argue that even if the Allen letter is construed as an offer, there are no pleaded facts indicating that the offer was accepted and incorporated into the subsequent MFG-3 Agreement.

This court agrees that the letter, by its own terms, is merely a discussion of a company offer which was previously rejected by the union at the bargaining table, as well as an expression of opinion by the company president-elect that the company's offer made to the union at the bargaining table was a good one. At most, it discusses terms which might be incorporated into a later collective bargaining agreement. There is no language in the letter to suggest that it was intended as a separate offer. The letter was for informational purposes, and was addressed to the employees, not to the union officials who were representing the union members at the collective bargaining table. It does not even specifically urge employees to contact their union representatives to express their support of the company's proposal.

*11 There is no language in the letter itself, nor are any other facts pleaded, which would indicate that the letter was sent for the purpose of communicating an offer to the union. Thus, even assuming that the letter could be construed as an offer, the facts pleaded fail to indicate that this offer was made to the bargaining agents for the union, or that the offer was accepted by the union, or that acceptance of that offer was relayed by the union to the company. *See* [Telephone Management Corp. v. Goodyear Tire & Rubber Co., 32 F.Supp.2d 960, 970 (N.D.Ohio 1998)](...) ("There can be no binding contract unless it first appears that acceptance of the offer proposed was received by the offeror.")

Further, in order to constitute a contract, the acceptance must meet and correspond with the offer in every respect. [Karas v. Brogan, 55 Ohio St.2d 128, 129, 378 N.E.2d 470 (1978)](...). Here, the Allen letter states that "payments will be made to employees for as long as they're employed by the company", whereas the actual language in the collective bargaining agreement states that the payments will continue "as long as the employee remains in a PRODUCTION OCCUPATION LEVEL." No facts are pleaded to explain why the MFG-3 language differs from the language of the Allen letter.

No facts have been pleaded indicating that the union ever formally accepted the terms of the Allen letter or signed a separate agreement containing those specific terms in exchange for ending the strike sufficient to constitute an enforceable § 301 contract. Even assuming the Allen letter constituted an offer to the union, that offer was subsumed in the collective bargaining process. The facts pleaded in the complaint indicate that it is the MFG-3 Agreement which constitutes the final agreement between the company and the union as the official bargaining agent for the employees, and the terms of the MFG-3 Agreement would supersede any other agreement previously reached concerning those same terms. *See, e.g.,* Second Amended Complaint, Introduction ("Plaintiffs' claim is that pursuant to a Master Collective Bargaining Agreement, known as the MFG-3 Agreement, negotiated between CWA and AT & T in 1986, subsequent to a strike, they are entitled to SSWT and/or SHP wage supplements for the remainder of their employment with AT & T in a production occupation level and pension bands upon retirement.") *See also* [Schuver, 154 F.3d at 799](...) (plaintiffs must show that terms of oral contract not superseded or contradicted by the terms of the collective bargaining agreement).

The court concludes that, based on the pleadings, the plaintiffs cannot establish the existence of a strike settlement agreement based on the Allen letter which would be independently enforceable as a § 301 labor contract, and defendants are entitled to judgment on the pleadings on Count V.

*IV. Conclusion*

Not Reported in F.Supp.2d  
168 L.R.R.M. (BNA) 2456  
**(Cite as: 2000 WL 33592869 (S.D.Ohio))**

Page 9

The defendants' motion for judgment on the pleadings in granted, with the exception that the individual named plaintiffs will be permitted to assert an estoppel argument in connection with their § 301 breach of contract claim in Count I.

**\*12** It is so ordered.

2000 WL 33592869 (S.D.Ohio), 168 L.R.R.M. (BNA) 2456

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works