**Westlaw Attached Printing Summary Report**
for
**NETSOLUTIONS 3857996 Thursday, November 13, 2003 19:50:33 Central**

(C) 2003. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2003 West, a Thomson business. No claim to orig. U.S. govt. works."Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN.  WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.

| | |
|---|---|
| Request Created Date/Time: | Thursday, November 13, 2003 19:50:00 Central |
| Client Identifier: | 00000#060000-0010 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 282 |
| Documents: | 1 |
| Images: | 0 |

Not Reported in F.Supp.2d  
RICO Bus.Disp.Guide 10,149  
**(Cite as: 2001 WL 1169106 (E.D.Pa.))**

Page 1

United States District Court, E.D. Pennsylvania.

Leroy J. SMITH, et al.,  
v.  
John G. BERG, et al.

**No. CIV. A. 99-CV-2133.**

Oct. 1, 2001.

MEMORANDUM

O'Neill, J.

### I. INTRODUCTION

**\*1** This suit is a putative class action consisting of Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law claims. Before me is plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23. Because plaintiffs failed to demonstrate that joinder was impracticable pursuant to Rule 23(a)(1) and that common questions would predominate as required by Rule 23(b)(3), I will deny plaintiff's motion for class certification.

### II. BACKGROUND

Plaintiffs allege that defendant John G. Berg, acting through the corporate entities New Century Homes, Inc. and Affordable Residences, Inc., engaged in fraudulent and deceptive practices during the sale, financing and settlement of at least nine residential developments in Philadelphia from 1994 to 1997. *See* Amended Compl. ¶¶ 1-2. Berg allegedly used misleading and fraudulent financial incentives, such as tax abatements and mortgage credit certificates, to induce plaintiffs' purchase of homes which they otherwise could not afford. *Id.* ¶ 3. In furtherance of this scheme, Berg allegedly used misleading mailings and radio and television advertisements. *Id.* ¶ 99. Plaintiffs assert that the misrepresentations in these advertisements constituted mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, constituting the necessary predicate acts to the RICO claims.

Plaintiffs further allege that defendants Fidelity National Title Insurance Company, Columbia National Inc., First Town Mortgage Corp., and Countrywide Credit Industries, Inc. (collectively the "non-Berg defendants") conspired with Berg to defraud the plaintiffs and "realize maximum profits from the sale and financing of each transaction." *Id.* ¶ 9. Specifically, plaintiffs allege that the Fidelity defendants cooperated with Berg by "allowing him to assume many of [Fidelity's] normal functions during settlements" and by recording false information on HUD-1 Settlement Statements. *Id.* ¶ 109. Plaintiffs also allege that the defendant lending companies cooperated with Berg by contacting prospective buyers to encourage them to make the purchases, by communicating and negotiating with Berg rather than directly with the plaintiffs, by failing to make Truth-In-Lending Law disclosures, and by granting mortgages for which the lenders knew plaintiffs were unqualified. *Id.* ¶ 118.

Count I of the Amended Complaint claims that defendant Berg engaged in a RICO enterprise in violation of 18 U.S.C. § 1962(c). Count II claims that defendant Fidelity National Title Insurance Company participated in a RICO conspiracy with Berg in violation of 18 U.S.C. § 1962(d). Count III claims that defendants Columbia National, Inc., First Town Mortgage Corp. and Countrywide Credit Industries, Inc. also participated in a RICO conspiracy with Berg in violation of 18 U.S.C. § 1962(d). The remaining counts state claims solely against defendant Berg for common law fraud (Count IV), breach of fiduciary duties (Count V), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VII). [FN1]

> FN1. Count VI, claiming negligence, was previously dismissed as to all defendants. *See Smith v. Berg,* No. Civ. A. 99-2133, 2000 WL 365949, at \*6 (E.D.Pa. April 10, 2000), *aff'd,* 247 F.3d 532, 539 (3d Cir.2001).

### III. DISCUSSION
A. Standard For Class Certification

**\*2** Plaintiffs must establish all four elements of Federal Rule of Civil Procedure 23(a) and meet one provision of Rule 23(b) to obtain class certification. *Johnston v. HBO Film Mgmt., Inc.,* No. 00-8070, 2001 WL 1077913, at \*3 (3d Cir. Sept.14, 2001), *citing Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 624 (3d Cir.1996). Rule 23(a) requires a demonstration of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.* If plaintiffs satisfy these requirements, I must determine if the action is maintainable under Rule 23(b). *Id.* at 8. Here, plaintiffs seek certification under Rule 23(b)(3), "which requires that 'questions of law or fact common to the members of the class

Not Reported in F.Supp.2d  
RICO Bus.Disp.Guide 10,149  
**(Cite as: 2001 WL 1169106 (E.D.Pa.))**

Page 2

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' " *Id.,* quoting Fed.R.Civ.P. 23(b)(3). I find plaintiffs have failed to demonstrate numerosity under Rule 23(a). Moreover, their action is not certifiable as a class under Rule 23(b)(3) because common questions do not predominate.

B. Numerosity

Plaintiffs' action does not meet the numerosity requirement of Rule 23(a). "Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable.' " Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182 (3d Cir.2001), quoting Fed.R.Civ.P. 23(a). "No magic number exists satisfying the numerosity requirement...." Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D.Pa.1989); *but see* Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105, 109 (E.D.Pa.1992) (" 'While the absolute number of class members is not the sole determining factor, generally the courts have found the numerosity requirement fulfilled where the class exceeds 100' "), quoting Fox v. Prudent Resources Trust, 69 F.R.D. 74, 78 (E.D.Pa.1975). "Rather, 'when class size is small, factors other than number will be significant.' " Browne v. Sabatina, Civ. A. No. 89-1228, 1990 WL 895, at *1 (E.D.Pa. Jan.5, 1990) (applying additional factors to 57-member putative class), *quoting* 1 H. Newberg, *Newberg on Class Actions* § 1105 at 171-72 (1977). Under such conditions, courts generally consider three factors in evaluating impracticality of joinder: 1) the size of the putative class, 2) the distribution of class members over a large geographic area, and 3) the difficulty in identifying members of the class for the purpose of joinder. *Horizon Unlimited, Inc. v. Silva,* No. Civ. A 97-7430, 1998 WL 238468, at *5 (E.D.Pa. May 12, 1998); *Calhoun v. Horn,* No. Civ. A. 96-350, 1997 WL 633682, at *2 (E.D.Pa. Oct.8, 1997); Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105, 110 (E.D.Pa.1992). Because the plaintiffs putative class is relatively small (less than 100), I will evaluate certification in light of these additional factors.

Under the first criterion, the size of plaintiffs' putative class appears adequate. "A potential class of 65 members is sufficiently large to satisfy the first step in the numerosity requirement." Horizon Unlimited, 1998 WL 238468, at *3; *but see* Minersville Coal Co. v. Anthracite Export Ass'n, 55 F.R.D. 426, 428 (M.D.Pa.1971) (concluding joinder of 330 plaintiffs not impractical). Here, over seventy potential members of the class have signed affidavits supporting the claims of the complaint. Although defendant Berg contests the standing of many of these individuals to be class members, for the purposes of this numerosity inquiry I will assume that plaintiffs meet the standard for class size.

**\*3** The plaintiffs, however, clearly do not meet the other considerations for numerosity. "Class actions are appropriate 'when members of the class are from disparate geographical areas and where members cannot easily be identified." Horizon Unlimited, 1998 WL 238468, at *3, quoting Wilcox v. Petit, 117 F.R.D. 314, 317 (D.Me.1987); *see also Pleasant v. Evers,* No. Civ. A. 97-4124, 1998 WL 98975, at *1 (E.D.Pa. Mar.5, 1998) ("Joinder is practicable ... where all members of the class are from the same geographic area, or where class members can be easily identified."), *citing* Andrews v. Bechtle Power Corp., 780 F.2d 124, 131-32 (1st Cir.1985); Browne, 1990 WL 895, at *2 (denying certification to 57 member class because all potential members lived on only 13 streets in Philadelphia).

In the present case, the putative class members all live within the Philadelphia region. In fact, by the very nature of the action, almost every potential member lives on one of a handful of streets in the Philadelphia area. Moreover, because all members live on these same streets and dealt with defendant Berg during the years of 1994 to 1997, they are known or easily ascertainable. Although the number of the plaintiffs maybe somewhat larger in this case than in most non-class actions, joinder in this action is "feasible and not unduly burdensome." Browne, 1990 WL 895, at *2. Accordingly, the plaintiffs have failed to demonstrate numerosity under Rule 23(a). [FN2] Beyond this, it also appears plaintiffs' action is not certifiable as a class under Rule 23(b)(3) because common questions do not predominate.

> FN2. As such, I need not address the other requirements of Rule 23(a): commonality, typicality, or adequacy of representation. *See* Newton, 259 F.3d at 182 ("If the class does not satisfy each of the 23(a) criteria, the suit cannot be maintained as a class action.").

C. Predominance

For the plaintiffs to maintain a class action under

Not Reported in F.Supp.2d  
RICO Bus.Disp.Guide 10,149  
**(Cite as: 2001 WL 1169106 (E.D.Pa.))**

Page 3

Rule 23(b)(3), I must determine that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." [FN3] "Predominance measures whether the class is sufficiently cohesive to warrant certification." Newton, 259 F.3d at 185, citing Achem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). To determine whether the claims alleged by the proposed class meet the requirements of predominance under Rule 23(b)(3), I must examine the underlying causes of action. See Johnston, 2001 WL 1077913, at *6, citing Newton, 259 F.3d at 172.

> FN3. Because I find common questions do not predominate, I do not address the second requirement of Rule 23(b)(3), "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Common questions do not predominate because plaintiffs' RICO claims require proof of individual reliance. [FN4] RICO provides a civil cause of action for any person injured in his business or property as a result of a violation of criminal section 1962 by the defendant. 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962, plaintiffs claim a "racketeering activity" occurred. Pursuant to 18 U.S.C. § 1961(1), plaintiffs allege the racketeering activity consisted of mail and wire fraud as predicate acts. Although reliance is not an element of mail fraud, "most courts now agree that reliance must be shown when mail fraud is a predicate act in a civil RICO [case]." *Allen Neurological Assocs., Inc. v. Lehigh Valley Health Network,* No. Civ. A. 99-4653, 2001 WL 41143, at *4 (E.D.Pa. Jan.18, 2001), citing Summit Properties, Inc. v. Hoechst Celanese Corp., 214 F.3d 556, 559 (5th Cir.2000); see also Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 337 (4th Cir.1996); Appletree Square I v. W.R. Grace & Co., 29 F.3d 1283, 1286 (8th Cir.1994); Central Distribs. of Beer, Inc. v. Conn., 5 F.3d 181, 184 (6th Cir.1993); Pelletier v. Zweifel, 921 F.2d 1465, 1499-1500 (11th Cir.1991); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2d Cir.1990).

> FN4. Plaintiffs' claims involving all defendants stem from the alleged RICO violations. Therefore, I will analyze predominance under the rubric of RICO.

**\*4** Questions of individual reliance on oral and non-uniform written misrepresentations make class treatment inappropriate. See Johnston, 2001 WL 1077913, at *12 (recognizing oral and varied representations require individual treatment); In re LifeUSA Holding Inc., 242 F.3d 136, 146 (3d Cir.2001) (determining individual reliance on sales presentations that were not standard, uniform, or scripted precluded class certification); see also Newton, 259 F.3d at 172 ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."). In Johnston, 2001 WL 1077913, at *15, a putative RICO class action predicated on securities fraud, the plaintiffs alleged the defendant motion picture production company defrauded investor by oral and written statements that the movie star, Michael Douglas, would promote the production company's products. *Id.* at *9-10. The Court of Appeals recognized that plaintiffs were not entitled to a presumption of reliance and, therefore, each plaintiff had to demonstrate individual reliance upon the defendant's affirmative misrepresentations. *Id.* at *14. Moreover, the Court determined that without proof of uniformity [FN5] in the alleged oral and written misrepresentations, it would be difficult to determine whether or to what extent the alleged misrepresentation facilitated or influenced the fraud. *Id.* at *14. The *Johnston* Court concluded, "[A]djudication of plaintiffs' claims necessarily would require an individualized analysis of each claim, including the form of the misrepresentation, whether it was relied upon, and the availability of any defenses." *Id.* at *15. Consequently, the Court of Appeals affirmed the denial of class certification under Rule 23(b)(3).

> FN5. The Court of Appeals noted that lack of uniformity distinguished *Johnson* from prior precedent granting class certification where the misrepresentations were "standard or scripted". See Johnston, 2001 WL 1077913, at *11-12, distinguishing In re Prudential Ins. Co. of America Sales Practices Litig., 148 F.3d 283, 315 (3d Cir.1998); LifeUSA, 242 F.3d at 146 (same).

The instant action poses analogous factual questions regarding varied oral and written misrepresentations and individual reliance. [FN6] Here, even among the three representatives of putative class, there exists a variety of allegations constituting the alleged mail

Not Reported in F.Supp.2d  
RICO Bus.Disp.Guide 10,149  
**(Cite as: 2001 WL 1169106 (E.D.Pa.))**

Page 4

and wire fraud. For instance, among the putative class' representatives only plaintiff Marcia Smith apparently claims to have fallen victim to wire fraud by defendant Berg's alleged misrepresentations in a radio advertisement. *See* Amended Complaint ¶ 73. A question that naturally follows a claim grounded in oral misrepresentation is whether the class members that plaintiff Marcia Smith represents also heard the advertisements and similarly relied on the misrepresentations in deciding to deal with defendant Berg. *See* Johnston, 2001 WL 1077913, at 10 ("[I]t has become well-settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action."). Similarly, although some of the written material given to each class representative to induce purchase was uniform, it is clear that potential class members did not rely upon such material. [FN7] More importantly, much of the written material was not uniform. [FN8] Consequently, the presence of oral misrepresentations and the lack of uniformity in written misrepresentations demonstrate that common questions of fact will not predominate over individual issues of reliance in this action. Therefore, certification will be denied.

FN6. Plaintiffs contend that the present case is similar to *McMahon Books, Inc. v. Willow Grove Associates,* 108 F.R.D. 32 (E.D.Pa.1985) (granting class certification to 125 lessees store space who were defrauded by mall owner). Although the *McMahon* court concluded that common questions would predominate despite the need for proof of individualized reliance, the court noted that the documents containing the core business terms contained representations that were common "across-the-board" and that "oral representations made to the individual tenants were all essentially the same...." *Id.* at 37.

FN7. For example, the initial brochure containing testimonials by previous satisfied customers, which plaintiff Matthews received through the mail from defendant Berg, presumably was one of the few uniform document sent to other putative class members. *See* Matthews Dep. at 66. In the amended complaint, Matthews alleged this same document contained the promise of a three year tax abatement, upon which she relied. *See* Amended Compl. ¶ ¶ 27, 54-55; *see also* Matthews Dep. at 63 (identifying Matthews Exhibit 2 as the brochure referenced in the amended complaint). However, as evidenced by plaintiff Matthews' deposition and accompanying copy of the brochure, there was no claim of a tax abatement in the advertisement. *See* Matthews Dep. at 68; Matthews Ex. 2. Consequently, although this was a document possibly sent to other class members, Matthews could not have relied upon it because it contained no information regarding a tax abatement.

FN8. Many of the documents allegedly created to induce the plaintiffs to buy homes were specifically tailored to the individual plaintiffs' financial needs. For instance, the home purchase agreements contained varying amounts for the mortgages, the down payments, and the monthly mortgage payments.

**\*5** An appropriate order follows.

*ORDER*

AND NOW, this __ day of October, 2001, after considering the plaintiffs' motion for class certification, and the defendants' responses thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that plaintiffs' motion is DENIED.

2001 WL 1169106 (E.D.Pa.), RICO Bus.Disp.Guide 10,149

END OF DOCUMENT