**Westlaw Attached Printing Summary Report**
**for**
**NETSOLUTIONS 3857996 Thursday, November 13, 2003 19:55:12 Central**

(C) 2003. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2003 West, a Thomson business. No claim to orig. U.S. govt. works."Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN.  WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.

| | |
|---|---|
| Request Created Date/Time: | Thursday, November 13, 2003 19:55:00 Central |
| Client Identifier: | 00000#060000-0010 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 553 |
| Documents: | 1 |
| Images: | 0 |

Not Reported in F.Supp.2d  Page 1
**(Cite as: 2002 WL 84603 (N.D.Ill.))**

H Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

James LILLY and Terrance J. Shaughnessy, individually and on behalf of all others similarly situated, Plaintiffs,
v.
FORD MOTOR COMPANY, a Delaware Corporation, Defendant.

**No. 00 C 7372.**

Jan. 22, 2002.

MEMORANDUM OPINION AND ORDER

DARRAH, J.

**\*1** Defendant, Ford Motor Company ("Ford"), moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs', James Lilly ("Lilly") and Terrance J. Shaughnessy's ("Shaughnessy"), complaint. For the reasons stated herein, Defendant's, Ford Motor Company's, Motion to Dismiss is granted in part and denied in part.

LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power,* 111 F.3d 1312, 1319 (7th Cir.1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir.1998). Dismissal is proper only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Weatherly v. Ill. Bell Tel.,* 856 F.Supp. 1301, 1303 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim' ' [citation omitted], he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." ' *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein,* 939 F.2d 463, 467 (7th Cir.1991).

BACKGROUND

Plaintiffs, Lilly and Shaughnessy, have filed a complaint against Ford. Lilly and Shaughnessy are the owners of 1989 Ford Mustangs with 5.0-liter engines. They are both citizens and residents of Chicago, Illinois. The complaint alleges six "Claims for Relief": a request for a declaratory judgment or equitable and injunctive relief ("Claim I"), claims for restitution or disgorgement for unjust enrichment ("Claim II"), violation of all states' consumer protection statutes ("Claim III"), breach of express warranty ("Claim IV"), breach of implied warranty ("Claim V"), and negligence ("Claim VI"). For purposes of this Motion to Dismiss, the following allegations are taken as true.

This action was originally filed in the Circuit Court of Cook County, Illinois. On November 22, 2000, Ford removed the case to this Court pursuant to 28 U.S.C. § § 1332, 1441, 1446(b). Ford asserted diversity jurisdiction, stating that there was complete diversity of citizenship between plaintiffs and defendant and an amount in controversy in excess of $75,000.

Ford is a Delaware corporation with its principal place of business in and around Detroit, Michigan. Ford is the world's largest producer of trucks and the second largest producer of cars and trucks combined.

Due to pressure from Congress and various states, Ford designed more precise ignition-firing devices to combust gasoline more efficiently. These ignition-firing devices use less gasoline and produce less emissions. In the early 1980's, Ford created the Thick Film Ignition ("TFI") module. TFI modules are electronic devices that control the spark of electricity that ignites the gas and air mixture in the engine's cylinders.

**\*2** In 1983, Ford began installing TFI modules on all Ford vehicles. The TFI module was mounted below the distributor cap, over the engine, from 1983 until 1987 and, in some vehicles, as late as 1995. The distributor cap area is one of the hottest parts of the engine. The high heat causes the TFI to malfunction and results in stalling of the engine. This leaves the driver without the use of power brakes or steering. The continued stalling requires repeated servicing. Approximately 23,000,000 Ford vehicles of twenty-nine makes and 300 different models sold between 1983 and 1985 in the United States have the TFI module and require repeated service.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 84603 (N.D.Ill.))

Most of Ford's competitors mounted their ignition modules away from the engine, remote mounting. But mounting over the distributor cap has its advantages: ease of assembly, less complicated wiring, and reduced cost of assembly and installation. However, failure of the TFI module at cruising speeds can cause drivers to lose control of the vehicle due to the sudden reduction in speed when the engine stalls.

The National Highway Transportation Safety Administration ("NHTSA") investigated complaints of engine stalling in Ford vehicles in 1984 and 1985. Ford represented to the NHTSA that there was no single causal factor for engine stalling. During these investigations, Ford withheld documents from the NHTSA that indicated that TFI modules caused engine stalling.

An "Executive Summary" prepared in 1986 noted that remote mounting would reduce temperature effects on module performance and life and that twenty-nine percent of Ford vehicles returned to the dealer experienced a failure of the TFI module that caused the engine to quit while the vehicle was in motion. However, Ford continued to mount the TFI module over the distributor cap.

In May 1987, Ford announced a recall of 1984 and 1985 model-year vehicles equipped with 1.6- and 2.3-liter engines due to possible ignition problems. During this recall, dealers would inspect the vehicle and replace the TFI module if necessary. However, 3.8- and 5.0-liter engines in post-1985 model-year vehicles were the most prone to failure of the TFI module but were not recalled. This was done to prevent tarnishing of the image of these new models. Ford knew that the recall would not address the problem of mounting the TFI module too close to the engine.

Despite its knowledge that the TFI module caused engine stalling, Ford continued advertising campaigns that assured the public that its vehicles were in accordance with rigid quality and safety standards, such as "Quality is Job 1" and "ONLY your mother is more OBSESSED with your SAFETY," to induce the public to buy its vehicles.

Lilly's Ford Mustang suffers from continuous stalling while driving. Once his Mustang stalled, he would have to wait for a long period of time for the engine to cool off before he could attempt to restart it.

DISCUSSION

Ford moves to dismiss the complaint, arguing that: (1) Claim I should be dismissed because Plaintiffs fail to state a cognizable legal theory and the relief demanded is preempted by federal law; (2) Claim II should be dismissed because the complaint fails to allege all the elements of a claim for unjust enrichment; (3) Claim III should be dismissed because the elements of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") have not been pled, such a claim is barred by the three-year statute of limitations, and fraud has not been pled with particularity; (4) Claim IV should be dismissed because Plaintiffs have failed to allege privity and the claim is time barred; (5) Claim V should be dismissed because Plaintiffs have failed to allege privity or pre-suit notification and the claim is time barred; and (6) Claim VI should be dismissed because the complaint fails to allege that Plaintiffs have suffered any cognizable damages.

*Claim I*

***3** Claim I seeks: (1) a declaration that TFI modules are unreasonably dangerous and defective; (2) a nationwide recall, buy back and or repair of Ford vehicles equipped with TFI modules; and (3) an order requiring Ford to stop representing to the public that TFI modules are safe, institute a public awareness campaign on the dangers of TFI modules, research safer alternative designs and retrofit the vehicles, and use available safer alternative designs in the manufacture of ignition systems to eliminate stalling.

Ford argues that Claim I should be dismissed because it states no legally cognizable theory and because such relief is preempted by federal law.

Claim I seeks a declaration that TFI modules are unreasonably dangerous and defective. Plaintiffs then pray for an order requiring Ford to: (1) recall up to 23,000,000 vehicles; (2) cease and desist from misrepresenting that there is no defect in those vehicles; (3) institute, at Ford's own expense, a public awareness campaign to alert the public of the alleged defects and dangers associated with TFI modules; (4) complete, at Ford's cost, all research and testing necessary to make safer alternative designs available and/or retrofit the vehicles; and (5) use available safer designs in the future to eliminate stalling.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2001). A declaratory judgment is appropriate when it "will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues". *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 578 (7th Cir.1994) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749 (7th Cir.1987)). A court should address the following five considerations:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata* ";
(4) whether the use of a declaratory judgment action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*Nucor Corp.,* 28 F.3d at 579 (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink,* 924 F.2d 104, 105 (6th Cir.1991) (citations omitted)).

Clearly, in the instant case, there is an actual controversy among the parties, Lilly and Shaughnessy and Ford. This claim does not appear to be pled for purposes of "procedural fencing". There would be no friction between this Court and state court because there is no pending state action.

*4 A declaratory judgment would settle the controversy among the parties to the action, whether the TFI module is unreasonably dangerous and defective. Plaintiffs have no better or more effective alternative remedy. An investigation by the NHTSA would not be faster or more conclusive than proceedings before this Court. Two investigations by the NHTSA have not resolved the matter thus far. Moreover, under the Declaratory Judgment Act, it does not matter that Plaintiffs may not be able to seek further relief. 28 U.S.C. § 2201. The complaint, when read as a whole, sets out allegations in the first seventy paragraphs alleging actionable misconduct by Ford. These allegations are incorporated by reference into the allegations of Claim I. Therefore, dismissal of Claim I on the grounds of failure to state a cognizable legal theory is not appropriate.

Ford moves to dismiss Claim I's prayer for a recall of TFI modules, arguing that such relief is preempted by federal law and that the relief sought is not based on any cognizable theory. As stated above, the relief sought in Claim I includes a nationwide recall of up to 23,000,000 vehicles, as well as other remedies involving nationwide public disclosures, and extensive research and automotive engineering by Ford regarding future production.

Whether a federal law preempts a state law-based action is a question of law. *Moran v. Rush Prudential HMO, Inc.,* 230 F.3d 959, 966 (7th Cir.2000) (citations omitted). Preemption occurs when a federal law expressly removes the subject matter from regulation by the states, "[w]hen Congress intends federal law to 'occupy the field" ', or if state law conflicts with federal law, that is, "it is impossible for a private party to comply with both state and federal law... and where 'under the circumstances of [a] particular case, [the challenged law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372-73 (2000) (citations omitted).

Ford argues that when Congress enacted the recall provisions to the National Highway Traffic and Motor Vehicle Safety Act ("the Safety Act"), 49 U.S.C. § 30162 (2001), it expressly opted for mandatory agency, not judicial, action.

Section 30162 provides that "[a]ny interested person may file a petition with the Secretary of Transportation requesting the Secretary to begin a proceeding" to decide whether to issue a recall order under § 30118. 49 U.S.C. § 30162(a)(2). Section 30118 provides that if the Secretary of Transportation "decides ... that the vehicle or equipment contains the defect or does not comply, the Secretary shall order the manufacturer" to recall the vehicle or equipment. 49 U.S.C. § 30118(b)(2)(A).

The Safety Act also contains a preemption provision and a savings clause. The preemption provision provides that "[w]hen a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or ... equipment only if the standard is identical to the standard prescribed under this chapter." 49 U.S.C. § 30103(b)(1). Section 30103(e) provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law."

Not Reported in F.Supp.2d                                                                                                         Page 4
**(Cite as: 2002 WL 84603 (N.D.Ill.))**

**\*5** "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 288 (1995) (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517 (1992)). However, conflict preemption is still appropriate when there is a preemption provision. *Freightliner,* 514 U.S. at 289.

A nationwide court-ordered recall would conflict directly with and frustrate the Safety Act. While the recall provisions of the Safety Act do not expressly state that *only* the Secretary of Transportation may order a motor vehicle recall, "the comprehensive nature of the federal administrative scheme" suggests that it was Congress's intent that only the Secretary of Transportation may do so. *In re Bridgestone/Firestone, Inc., Tires Products Liab. Litig.,* 153 F.Supp.2d 935, 944 (S.D.Ind.2001); *see also International Paper Co. v. Ouellette,* 479 U.S. 481, 492 (1987) (holding that the great detail in which the Clean Water Act provides for obtaining a permit to emit possible pollution preempted application of Vermont common law to a New York polluter); *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 321-22 (1981) ("The Act in fact spells out with considerable precision the remedies available to a shipper who is injured by [a decision of the Interstate Commerce Commission].").

Section 30119 sets forth in great detail the notification procedures the Secretary of Transportation will use in a recall. "The detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work." *In re Bridgestone/Firestone,* 153 F.Supp.2d at 945 (citing *Kalo Brick & Tile Co.,* 450 U.S.at 321-22).

The discretion given the Secretary of Transportation also indicates that Congress intended to limit the authority to recall motor vehicles to the Secretary. *In re Bridgestone/Firestone,* 153 F.Supp. at 945 (citing *Kalo Brick,* 450 U.S. at 321.) The Secretary of Transportation can decide the time and way in which the manufacturer must notify the public, 49 U.S.C. § 30119(c), (d)(2), or that notification is not required at all because the "defect or noncompliance is inconsequential to motor vehicle safety." 49 U.S.C. § 30118(d).

Furthermore, the Safety Act charges the Secretary of Transportation with identifying risk-generating factors, making informed assessments of the potential for failure in a class of motor vehicles, implementing preventative and prophylactic remedies, and policing manufacturers' compliance with chosen directions. 49 U.S.C. § § 30118, 30120, 30166. It is clear that Congress did not intend for the federal courts to have authority to order recalls of motor vehicles on a nationwide basis for several model years. Thus, this Claim I is preempted by federal law. In addition, the allegations regarding the dispute among the present parties, Lilly, Shaughnessy, and Ford, do not state a cause of action for the broad, nationwide declaratory relief prayed for as to the other several million automobile owners allegedly involved. Therefore, Defendant's Motion to Dismiss Claim I is granted.

*Claim II*

**\*6** Defendant argues that Claim II should be dismissed because, under Illinois law, (1) the complaint does not adequately plead a claim for unjust enrichment and (2) claims for unjust enrichment are barred when a contract governs the parties' relationship. Plaintiffs argue that dismissal is inappropriate because (1) Michigan, and not Illinois, law applies and (2) under Michigan law, the complaint adequately states a claim for unjust enrichment.

Under Illinois law, "[a] claim for unjust enrichment exists when a defendant (1) receives a benefit, (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit would be unjust." *TRW Title Ins. Co. v. Security Union Title Ins. Co.,* 153 F.3d 822, 828 (7th Cir.1998) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160 (1989)).

The complaint alleges that Plaintiffs are owners of 1989 Ford Mustangs. This allegation is sufficient to support the inference that the cars were purchased from Ford and that Ford received a benefit from these sales to the extent that the sales generated profits for Ford. The complaint further alleges that Ford received these benefits through its alleged misconduct in NHTSA investigations, advertising, and designing and manufacturing TFI modules. These allegations support the inference that Ford received a benefit to Plaintiffs' detriment and that retention of the benefit would be unjust. Therefore, the complaint adequately states a claim for unjust enrichment.

Ford next contends that Claim II should be dismissed because, under Illinois law, when a contract governs the parties' relationship, a claim for unjust enrichment is barred.

Not Reported in F.Supp.2d                                                                                                            Page 5
**(Cite as: 2002 WL 84603 (N.D.Ill.))**

Under Illinois law, a party cannot "state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985). Therefore, Ford argues, an unjust enrichment claim is futile because Plaintiffs have pled that Ford breached express warranties. However, in *Heinold Commodities,* there was no dispute that a contract existed. Here, there is a good faith dispute as to whether an express warranty exists. In *Quadion Corp. v. Mache,* 738 F.Supp. 270, 278 (N.D.Ill.1990), the court declined to dismiss the plaintiff's claim for equitable relief, even though the relationship between the parties was contractual, because "[u]nder Rule 8(e)(2) [of the Federal Rules of Civil Procedure] ... plaintiffs may raise alternative claims of breach of contract and unjust enrichment despite the inconsistency of these claims." Furthermore, the *Mache* court reasoned that *Heinold Commodities* did not apply at the pleading stage. *Mache,* 738 F.Supp. at 278. Thus, Plaintiffs' claim of unjust enrichment is not barred. Therefore, Defendant's Motion to Dismiss Claim II is denied.

*Claim III*

Ford argues that Claim III should be dismissed because Plaintiffs fail to state a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (2001) ("ICFA"). Plaintiffs did not respond to this argument in their response to Ford's Motion to Dismiss. Therefore, Plaintiffs are deemed to have conceded that the ICFA applies to Claim III.

**\*7** The Consumer Fraud Act provides:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act, approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.
815 Ill. Comp. Stat. 505/2 (2001). To plead a violation of this section of the Consumer Fraud Act, Plaintiffs must plead that: (1) Ford engaged in a deceptive act or practice, (2) Ford intended that they rely on the act or practice, (3) the act or practice occurred in the course of conduct involving a trade or commerce, and (4) the consumer fraud proximately caused their injuries. *Perona v. Volkswagon of America, Inc.,* 292 Ill.App.3d 59, 65 (1997).

Ford argues that Claim III should be dismissed because Plaintiffs have not alleged which alleged representations provide the basis for Claim III.

Plaintiffs allege that Ford: "represented, through its advertising, warranties, and other express representations, that the motor vehicles equipped with TFI modules had benefits or characteristics that they did not actually have"; "falsely represented that the motor vehicles equipped with TFI modules were of a particular standard or quality when they were not"; "advertised the motor vehicles equipped with TFI modules with the intent not to sell them as advertised"; and "concealed and suppressed facts material to the true characteristics, standards and qualities of these products." (Am.Compl.¶ 80.)

"[P]laintiffs can state a valid claim for consumer fraud only where premised upon statements made prior to their dates of purchase ." *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill.2d 482, 502 (1996). Defendant argues that Claim III fails to state a claim for violation of the ICFA because specific representations are not alleged and it is not alleged that the statements were made prior to Plaintiffs' purchase.

Because this case is in federal court, Claim III must meet the pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Fed.R.Civ.P. 9(b). This means that persons alleging fraud must state " 'the who, what, when, where, and how." ' *Boyd Mach. & Repair Co. v. American Int'l Homes, Ltd.,* 100 F.Supp.2d 898, 900 (N.D.Ill.2000) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 628 (7th Cir.1990)). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330, 347 (N.D.Ill.1997) (citations omitted).

**\*8** To determine whether Claim III is sufficient, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing,* 172

Not Reported in F.Supp.2d                                                                                         Page 6
**(Cite as: 2002 WL 84603 (N.D.Ill.))**

F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994)).

Here, Plaintiffs have alleged that a Ford spokesman denied reports that failures in ignition systems existed in nearly 100% of Ford vehicles with TFI modules or that it would cost $400,000,000 to correct those problems to the Los Angeles Times in April 1987. The complaint also alleges that Ford told the NHTSA, during investigations, that it did not know what caused stalling when Ford allegedly knew that the TFI module was the cause of the problem.

These allegations are sufficient to satisfy the requirements of who, what, where, when and how. Plaintiffs have alleged specifically when and where and to whom Ford made misrepresentations about the safety of the TFI module. Furthermore, they have alleged what the substance of the misrepresentation was, that the TFI module did not cause engine stalling. This is sufficient to state a general outline of the alleged fraud.

Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly,* 135 F.3d at 1205. The allegations in the complaint are sufficient to support the inference that the statements were made prior to the date of Plaintiffs' purchases.

Moreover, Claim III adequately states a claim for violation of the ICFA. The complaint alleges that Ford withheld information from the NHTSA and represented to the Los Angeles Times that not all Ford vehicles with TFI modules experienced failures in their ignition systems. This allegation supports the inference that Ford intended Plaintiffs to rely on its allegedly deceptive practice. The complaint alleges that Ford manufactures and sells automobiles. This allegation supports the inference that the act or practice occurred in the course of conduct involving trade or commerce. Finally, the complaint alleges that Plaintiffs have been injured.

Ford argues that Plaintiffs' claim for fraudulent concealment should be dismissed because the complaint fails to allege that Ford and Plaintiffs were in a fiduciary relationship.

"In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick,* 174 Ill.2d at 500 (citations omitted). Because Ford confines its arguments to whether Plaintiffs have adequately pled that it was under a duty to disclose, Ford appears to have conceded that the fact allegedly concealed was material.

A duty to disclose arises "if plaintiff and defendant are in a fiduciary or confidential relationship ... [or] out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.... This position of superiority may arise by reason of friendship, agency, or experience." *Connick,* 174 Ill.2d at 500 (internal citations omitted).

**\*9** The *Connick* court cited *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463, 473 (M.D.Pa.1985), in defining when a party has a duty to disclose. 174 Ill.2d at 500.

  In determining whether such a duty to speak exists, the following factors should be considered: the relationship between the plaintiff and the defendant, the parties' relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its ... decision, and defendant's role in initiating the purchase or sale.

*City of Harrisburg,* 621 F.Supp. at 473 (quoting *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977), *reh'g denied,* 564 F.2d 416 (5th Cir.1977), *cert. denied,* 435 U.S. 952 (1978) (citations omitted)). " 'The plaintiff must show that it reasonably relied on the information (or on the notion that it had received all mandated disclosure from the defendant), and exercise[d] due diligence in examining information otherwise available to it." ' *City of Harrisburg,* 621 F.Supp. at 473 (quoting *Benson,* 559 F.2d at 1314).

While Plaintiffs have not alleged that they were in a fiduciary relationship with Ford, they have adequately pled that they placed trust and confidence in Ford and that Ford was in a position of influence and superiority over them. *Connick,* 174 Ill.2d at 500. The complaint alleges that Ford designed and manufactured the TFI modules and made the decisions about their placement on the engine. Furthermore, the complaint alleges that Ford allegedly withheld information about the safety of the TFI modules from the NHTSA and denied reports that TFI modules failed to the Los Angeles Times. These allegations reasonably support the inference that Ford had the best access to the information and that Plaintiffs would not have been able to obtain this information through diligence. Moreover, the complaint alleges that Ford engaged in an advertising campaign that emphasized the safety of Ford

Not Reported in F.Supp.2d                                                                                                      Page 7
**(Cite as: 2002 WL 84603 (N.D.Ill.))**

vehicles. This allegation supports the inference that Ford was aware of Plaintiffs' reliance on it when they made their purchasing decision. Therefore, Claim III adequately states a claim for fraudulent concealment.

Ford's final argument in favor of dismissal of Claim III is that the ICFA claims are barred by the statute of limitations. The Consumer Fraud Act has a three-year statute of limitations. 815 Ill. Comp. Stat. 505/10a(e) (2001). Under Illinois law, a cause of action accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415 (Ill.1982).

Ford argues that Plaintiffs' claims are barred by the statute of limitations because Plaintiffs reasonably should have known of their alleged injury before 2000 and their injury was allegedly caused by Ford more than three years before they filed their lawsuit. If Plaintiffs purchased their Mustangs new in 1988 or 1989, Ford argues, more than three years have elapsed before the filing of this action. Moreover, Ford argues, the allegation of continuous stalling indicates that Plaintiffs were aware of their injury for more than three years.

**\*10** "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved," and this determination is a question of fact. *Knox College,* 88 Ill.2d at 416. Likewise, in this case, when Plaintiffs became possessed of sufficient information concerning their injury and its cause to put a reasonable person on inquiry is a question of fact and, therefore, not appropriate for consideration on a motion to dismiss.

Therefore, Defendant's Motion to Dismiss Claim III is denied.

*Claims IV & V*

Ford argues that Claims IV and V should be dismissed because (1) Plaintiffs do not allege sufficient facts to demonstrate that any implied or express warranties applied to their cars, (2) Plaintiffs did not notify Ford of the breach within a reasonable time, and (3) the claims are barred by the statute of limitations.

Claim IV alleges that "Ford expressly warranted the motor vehicles equipped with TFI modules to be free of defects at the time of delivery, which warranties are express warranties within the meaning of section 2-313 of the Uniform Commercial Code" and breached these express warranties "by offering for sale, and selling as safe, motor vehicles equipped with TFI modules that are, by design, defective in that they are unreasonably dangerous and likely to cause serious injury or death to Plaintiffs." (Am.Compl.¶ ¶ 85, 86.)

Claim V alleges that Ford impliedly warranted that the vehicles equipped with TFI modules were "fit and merchantable for their ordinary use" and breached that warranty. (Am. Compl. ¶ ¶ 91, 92 .)

"Privity of contract is a prerequisite in Illinois to a suit for breach of implied warranty alleging economic loss." *Szajna v. General Motors Corp.,* 115 Ill.2d 294, 300 (1987). Ford argues that because Plaintiffs did not allege that they purchased their cars from Ford or Ford dealerships, they have not alleged privity of contract. The complaint alleges that Plaintiffs are owners of 1989 Ford Mustangs. This allegation is sufficient to support the inference that the cars were purchased from Ford or a Ford dealership and that Plaintiffs were in privity with Ford.

Ford next argues that, because Plaintiffs never notified Ford of a breach of any of the alleged warranties, Claims IV and V should be dismissed. Section 2-607(3)(a) of the UCC provides that "[w]here a tender has been accepted ... the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 Ill. Comp. Stat. 5/2-607(3)(a) (2001).

Plaintiffs have not pled that they notified Ford of any breaches of any express or implied warranties. Therefore, Claims IV and V are dismissed because Plaintiffs have failed to allege that they complied with section 2- 607(3)(a). Because Claims IV and V are dismissed based on the absence of allegations in compliance with section 2-607(a)(3) of the UCC, the Court will not address whether these claims are barred by the statute of limitations.

*Claim VI*

**\*11** Ford argues that Claim VI should be dismissed because, under the economic loss doctrine, negligence claims cannot be maintained for damages to the product itself or the costs of repairs without a claim of personal injury.

The economic loss doctrine "bars a plaintiff from recovering in negligence for losses which are purely

economic, that is, do not involve personal injury or property damage." *Tolan & Son, Inc. v. KLLM Architects, Inc.,* 308 Ill.App.3d 18, 24 (1999) (quoting *Nepomoceno v. Knights of Columbus,* No. 96 C 4789, 1999 WL 66570 at *11 (N.D.Ill. Feb. 8, 1999)). " 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits--without any claim of personal injury or damage to other property' ... as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 82 (1982) (internal citation omitted).

The complaint alleges that Plaintiffs "have suffered economic damages and loss of value to their vehicles" due to Ford's negligence. (Am.Compl.¶ 99.) Plaintiffs also seek the costs to replace the allegedly defective TFI modules. (Am.Compl.¶ ¶ 9, 10.) The complaint does not allege any personal injuries. Therefore, Plaintiffs' claim for negligence is barred under the economic loss doctrine, and Claim VI is dismissed.

## CONCLUSION

For the reasons stated above, Defendant Ford Motor Company's Motion to Dismiss is denied with respect to Claims II and III and granted with respect to Claims I, IV, V, and VI.

IT IS SO ORDERED.

2002 WL 84603 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works