THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICIA DAFFIN,<br><br>           Plaintiff,<br><br>     v.<br><br>FORD MOTOR COMPANY,<br><br>           Defendant. | Case No. C-1-00 458<br><br>Judge Dlott<br><br>**DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFF'S MEMORANDUM AS TO CLASS ISSUES** |

**INTRODUCTION**

Plaintiff's Memorandum as to Class Issues ("Pl.'s Class Issues Mem.") in response to this Court's questions simply reinforces why a statewide class cannot be certified in this case.

    A.    **The Proposed Voluntary Settlement in *Meyer v. Nissan North America Inc.***

Aware that her proposed class cannot withstand the "rigorous analysis" required under Fed. R. Civ. P. 23(b), *In re American Medical Sys. Inc,* 75 F.3d 1069, 1078 (1997), plaintiff suggests that this Court nonetheless should certify an Ohio only class in light of the order granting preliminary approval to a nationwide class settlement in *Meyer v. Nissan North America, Inc.,* No. BC 263136 (Cal. Super. Ct., Aug. 14 2003) ("*Meyer* Order"). *See* Pl.'s Class Issues Mem. at 1-2.[1] To the extent the proposed settlement in *Meyer* is relevant at all, it undermines plaintiff's argument for class certification in this case.

*First,* because the *Meyer* court was asked to preliminarily approve a ***settlement-only*** class under California class actions procedures, it was not required to address the complex issues this

---

[1] The *Meyer* Order is attached to Pl.'s Class Issues Mem., Tab A, Exh. 1. The actual settlement agreement involved in that case is attached hereto at Tab 1 to the accompanying Declaration of Thomas A. Kuczajda ("*Meyer* Settlement Agreement").

Court faces in determining whether federal law permits Ms. Daffin's claims to be certified as a class action for trial. *See Meyer* Order at 1 (proposed settlement "eliminate[es] any potential manageability issue, ascertainability issue, and individualized issues of fact and law that could have had a bearing on certification of a nationwide class for trial"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ( "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").[2]

***Second***, plaintiff's counsel is well aware – though they chose not to inform this Court – that the facts in *Meyer* differ significantly from those in this case. The *Meyer* settlement agreement indicates that the defendant – unlike Ford – did not consistently clean or replace throttle body assemblies under warranty when a customer complained of increased pedal resistance. *See Meyer* Settlement Agreement at 14. Accordingly, the primary relief offered under the *Meyer* settlement is reimbursement to customers who had to pay for their own part replacement or cleaning during the applicable warranty period. *See Meyer* Order at 3. The relief provided by the defendant in *Meyer* is unnecessary in this case, because Ford's practice was to clean or replace throttle body assemblies under the terms of its warranties.

***Third***, the proposed settlement in *Meyer* is far from an admission that the throttle body in question is defective,[3] or that the problem Ms. Daffin complains of is manifest class-wide. The settlement acknowledges only that build-up of deposits in the throttle chamber "may result" in "increased accelerator resistance." *Meyer* Order at 4, 5. It does not presuppose that ***all*** Quest

---

[2] *See also, e.g., Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ( "[C]ertification issues raised by class action litigation that is resolved short of a decision on the merits must be viewed in a different light.").

[3] *See Meyer* Order at 3 ("[Nissan] has at all times disputed, and continues to dispute, Plaintiff's allegations in this lawsuit and to deny any liability for any of the claims that have or could have been alleged by Plaintiff or other members of the Settlement Class.").

2

owners will experience accelerator resistance. Indeed, only those Quest owners who actually experience "increased pedal resistance" during the applicable warranty period are entitled to any relief under the proposed *Meyer* settlement.[4]  *Meyer* Order at 6. That relief consists of "throttle-chamber cleansing," not a replacement, as Ms. Daffin seeks from Ford. *Id*. at 3-4, 6. Not surprisingly, Quest owners whose vehicles do not manifest any accelerator sticking, and thus who experience no injury during the applicable warranty period, receive nothing under the settlement. The proposed settlement in *Meyer* offers no support for Ms. Daffin's argument that vehicle owners who have never experienced any increased accelerator resistance have nonetheless suffered an injury and are entitled to relief.[5]

    B.    <u>**Class Certification Issues**</u>

        1.    **Whether the unnamed putative class members have a cause of action if they have not yet experienced an injury.**

Ms. Daffin unsuccessfully attempts to sweep under the rug the overwhelming body of cases holding that plaintiffs must experience a cognizable injury before they are entitled to relief. *See In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.,* 288 F.3d 1012, 1017 (7th Cir. 2002) ("no injury, no tort, is an ingredient of every state's law").[6] Plaintiff's argument that all Villager owners have been "injured" because they bought vehicles whose throttle bodies may (or may not) work properly at some point in the future has been rejected repeatedly. *See, e.g., Briehl v. General Motors Corp.,* 172 F.3d 623, 627-28 (8th Cir. 1999) (citing cases holding that plaintiffs whose products have not actually failed can have no cause of action); *Gilmore v.*

---

[4] The *Meyer* Settlement Agreement defines the "applicable warranty period" as 5-year/60,000-miles for non-California residents, 7-year/70,000-miles for California residents, or the time and mileage specified in the extended service plans purchased by some owners. *Meyer* Settlement Agreement at 3-4.

[5] In fact, the class-wide relief proposed in *Meyer* would offer **no benefit** whatsoever to an owner who, like Ms. Daffin, has never paid to have her throttle body replaced, and who has driven her vehicle well beyond any applicable warranty period -- 132,000 miles and counting as of October 2003.

[6] *See* cases cited in Defendant Ford Motor Company's Memorandum In Response To The Court's Order Directing Parties To Address Certain Specific Issues ("Def.'s Issues Mem.") at 2, n.1.

3

*General Motors Corp.*, 300 N.E.2d 259 (Ohio Ct. Com. Pl.'s 1973) (denying certification of class of Ohio residents seeking mandatory inspection and repair of allegedly defective heaters, where only some class members were alleged to have been exposed to harmful vapors).

          a.      <u>Ohio Consumer Sales Practices Act</u>

Ms. Daffin relies on *Delahunt v. Cytodyne Technologies*, 241 F.Supp.2d 827 (S.D. Ohio 2003), to argue incorrectly that the Ohio Consumer Sales Practices Act (CSPA) Rev. Code § 1345.01 *et seq.* provides a cause of action to vehicle owners who have never experienced any incident of accelerator pedal resistance. In *Delahunt,* the court held that a cause of action accrues under the CSPA "as soon as the allegedly unfair or deceptive transaction occurs." 241 F. Supp. 2d at 835. Here, plaintiff argues that she "intends to pursue her CSPA claim" on two separate grounds: 1) Ford's alleged "failure to abide by its express Bumper-to-Bumper warranty to correct the [alleged] defect"; and 2) Ford's alleged "evasive conduct towards the class intentionally crafted to dodge its express warranty obligations." Pl.'s Class Issues Mem. at 5. According to plaintiff, the "class claims arose, and the injury occurred, as a result of this conduct." *Id.*

Even under plaintiff's own theory, not every putative class member would have a cause of action under the CSPA. A vehicle owner who never experienced accelerator sticking and who never took her vehicle in for repair during the warranty period could not possibly have suffered any "evasive conduct" or "failure" on the part of Ford to honor its warranty obligations. If Ford was never asked to perform on its warranty, it could not have engaged in any "deceptive" conduct giving rise to a cognizable injury under the CSPA.

Moreover, the court in *Delahunt* was careful to point out that class treatment is only justified if the defendant has been put on notice that the specific conduct at issue clearly violates the CSPA. *Delahunt*, 241 F.Supp.2d at 837 ("a class action may not be asserted under the Sales

4

Act unless the alleged conduct was publicly found to violate the Sales Act before the consumer transaction at issue. … For class certification to be proper, the prior decision or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated that Sales Act.").[7]  Here, there is no Ohio case law or rule that put Ford on notice that it is illegal to sell vehicles with parts that can get dirty and that may need to be periodically cleaned or replaced, or that Ford is under an obligation to repair or replace defective parts after the applicable warranty has expired.  In fact, Ohio law holds just the opposite. *See, e.g., LaBonte v. Ford Motor Co.*, No. 74855, 1999 WL 809808 at * 1 (Ohio Ct. App. Oct. 7, 1999) (barring express and implied warranty claims because Ford twice "adjusted" the alleged defect by cleaning parts during warranty period, even when problem recurred after warranty expired); *Vahalik v. Jeep Corp.*, No. Civ. A. WMN-00-3676, 1983 WL 6736, *4 (Ohio Ct. App. Jan. 12, 1983) (under express warranty, "defendant is not obligated to pay for the repair of defects which occur after [the expiration of the warranty term].")[8]

---

[7] As Ford has previously noted, in addition to the absence of any injury to non-incident class members, a number of other individualized, disparate factual issues preclude certification of the CSPA claims. For example: (1) Villager owners who purchased their vehicles used from third parties after the applicable warranty period have no standing to sue Ford under the CSPA; (2) commercial purchasers (such as Ms. Daffin appears to be) have no cause of action under the CSPA; (3) as Ms. Daffin herself alleges, individualized representations affecting the scope of any applicable warranties may have been made at the time of purchase; (4) whether or to what extent Ford may have failed to honor its warranty as to any putative class member, by refusing to clean or replace a throttle body assembly, is necessarily individualized; and (5) any damages suffered by putative class members are individualized, including out-of-pocket expenses and the like.  *See, e.g., Stout v. J.D. Byridet,* 228 F.3d 709, 717 (6th Cir. 2000) (denying certification of Ohio CSPA class action because "plaintiffs' claims rest on their understanding of the purchasing transaction and each buyer's understanding of the terms, and because some buyers did not purchase the extended service agreement.").

[8] A recent decision of U.S. District Court in the Southern District of Texas has reconfirmed that the mere fact that an automobile part needs repair, replacement or maintenance, sooner than the owner would like, does not evidence a defect under the U.C.C., holding that "[a] product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could." *Bauske v. Ford Motor Co.*, Civ. A. No. H-01-2717 at 14-15 (S.D. Tex. Mar. 11, 2003) (citing, *Carlson v. General Motors*, 883 F.2d 287, 294 (4th Cir. 1989); *General Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998)).

b. <u>Breach of Warranty</u>

Plaintiff avoids addressing whether unnamed putative class members have a cause of action under Ohio law if they have suffered no injury, but the answer is clear. A breach of warranty claim, whether express or implied, requires a showing of some injury. *See, e.g., McDonald v. Ford Motor Co.*, 326 N.E.2d 252, 253 (Ohio 1975) (elements for "breach of implied warranty, as stated by this court … consists of alleging and proving, by a preponderance of the evidence, that: … the defect was the direct and proximate cause of the plaintiff's ***injuries or loss***." (internal quotations omitted) (emphasis added)); *White v. DePuy, Inc.*, 718 N.E.2d 450 (Ohio Ct. App. 1998) (same); *Wolf v. Lakewood Hosp.*, 598 N.E.2d 160, 164 (Ohio Ct. App. 1991) (contract claims require "actual damages," not prospective harm).

With regard to her express warranty claims, Ms. Daffin argues that "the cause of action and injury to the class arose when Ford breached its . . . warranty, by failing to repair, replace or adjust" the allegedly defective throttle body assembly. Pl.'s Class Issues Mem. at 5. By Ms. Daffin's own definition, if a putative class member never experienced any accelerator sticking or never brought his or her vehicle in for repair under the warranty, Ford would have had no reason, much less opportunity or obligation, to repair, replace or adjust a defect; and the owner of such a vehicle would have no injury and no cause of action.[9]

Conceding that injury is required for her claims, plaintiff grasps at the theory of economic loss to save her implied warranty action. While economic loss is, under some circumstances, a cognizable injury, it is not recoverable under an implied warranty theory for all putative class members here. Commercial purchasers, for example, cannot assert implied warranty claims in tort for purely economic losses. *See, e.g., Sun Ref. and Mktg. Co. v. Crosby*

---

[9] Likewise, any Villager owner whose throttle has been repaired under warranty has no claim, as Ford has not left those owners with a defective product.

6

*Valve & Gage Co.,* 627 N.E.2d 552, 554 (Ohio 1994).[10] As such, the Court would still be required to make individualized factual findings, especially with respect to owners who, like Ms. Daffin, utilize their vehicles for commercial purposes.  Moreover, purchasers must have privity with Ford to assert implied warranty claims at all.  *See, e.g., St. Paul Fire & Marine Ins. Co. v. R.V. World, Inc.*, 577 N.E.2d 72, 75 (Ohio Ct. App. 1989) ("a long line of cases has developed the principle that absent privity, a plaintiff cannot bring a contract action for breach of implied warranty").  Even assuming that this Court were to conclude (contrary to prevailing case law) that Ford is in privity with owners who purchased vehicles new from Ford dealers, the Court would still be faced with putative class members who purchased their vehicles used or from non-Ford dealers, and thus have no standing to assert implied warranty claims.  *Id.*

        c.    <u>Negligence</u>

Ms. Daffin's reliance on *City of Cincinnati v. Beretta USA Corp.*, 768 N.E.2d 1136 (Ohio 2002), for the proposition that negligence claims need not be based on injury or incident is clearly misplaced.  In *Beretta*, the court found that the plaintiff, the City of Cincinnati, alleged "'actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections and other services.'"  *Id.* at 1148.  The existence of damages was critical, because a claim for negligence requires actual injury.  *Id.* at 1144 ("In order to maintain a negligence action, the plaintiff must show the existence of a duty, a breach of that duty, and that the breach of that duty proximately ***caused the plaintiff's injury***.") (emphasis added)); *see also, e.g., Vasu v. Kohlers*, *Inc.,* 61 N.E.2d 707 (Ohio 1945) ("The very gist of an action for negligence is the damages to person or property.").  Ms. Daffin's failure to explain

---

[10] *See* Memorandum In Opposition To Plaintiff's Motion For Certification Of A Statewide Class ("Def. Mem. Opp.") at pages 39-40.

how putative class members who never have experienced problems with their vehicles or suffered any damages is fatal to her negligence-based class claims.[11]

### d. Ms. Daffin's Problems Are Not Shared Classwide

Plaintiff makes an alternative argument that there are no "non-incident" class members because the fact that she has had repetitive throttle body replacements "is proof by itself that the defect is manifest" for the entire class. Pl.'s Class Issues Mem. at 3. This is preposterous. Ms. Daffin has a pattern of requesting throttle body replacements shortly before hearings in this case. Ford has agreed to replace Ms. Daffin's throttle body assembly at her request to insure that evidence is preserved in this case. If this case were ever to go to trial, Plaintiff's claims that she has experienced increased accelerator pedal resistance on a repeated basis will be subject to rigorous cross examination. And, as this Court has previously noted in denying Ms. Daffin's motion to certify a nationwide class, "Plaintiff and Defendant agree that not every owner of a 1999-2000 Mercury Villager has experienced the accelerator sticking; indeed most have not." (Order Denying Motion for Class Certification, (July 24, 2002) at 4.)

### 2. **How the individualized issues of reliance of the putative class members impact the commonality of warranty claims.**

A long line of cases establishes that reliance is a necessary element for a breach of express warranty claim under Ohio law. *See* Def. Mem. Opp. at 32-33; *Wagner v. Roche Lab.*, 709 N.E.2d 162, 166 (Ohio 1999); *Jones v. Kellner*, 451 N.E.2d 548, 549 (Ohio Ct. App. 1982); *Duran v. AT&T Corp.*, No. Civ. A. WMN-00-3676, 2000 WL 33592869, *8 (S.D. Ohio Aug. 31,

---

[11] Contrary to plaintiff's suggestion, Ohio negligence claims require proof of injury beyond purely economic loss. *See, e.g., Chemtrol Adhesives, Inc. v. American Mfg. Mutual Insur. Co.*, 537 N.E.2d 624 (Ohio 1989) ("Numerous jurisdictions … [deny] recovery in negligence for purely economic loss. … The law in Ohio has been in accord with this majority view.") (internal citations omitted); *Inglis v. Am. Motors Corp.*, 209 N.E.2d 583, 591 (Ohio 1965) ("in an action involving product liability based on negligence against the manufacturer of a product by a buyer of a product … there is no liability for pecuniary loss of bargain.").

2000) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.* 155 F.3d 331, 341 (4th Cir. 1998)). Plaintiff tries to avoid these authorities by citing *Norcold, Inc. v. Gateway Supply Co.*, No. 17-03-02, 2003 WL 21904789 (Ohio Ct. App. Aug. 11, 2003) for the proposition that reliance is unnecessary in an express warranty claim. The decision in *Norcold,* which runs counter to controlling precedent, is suspect.[12] Even so, as plaintiff admits, the holding in *Norcold* is limited to situations in which there is no dispute about the content of an express warranty. *Norcold* at * 3. Here, by contrast, there is a fundamental dispute about Ford's express warranty. Plaintiff insists that she was guaranteed a "defect-free" car while Ford maintains that it has promised only to repair, replace or adjust parts when and if they manifest a defect while under warranty.[13] Other Villager purchasers, however, have testified that they did not believe they were getting a "defect free" vehicle.[14] It is this distinction which requires each individual putative class members, and especially Ms. Daffin, to establish the affirmations or promises Ford or others made about her vehicle upon which she relied.[15] Without this proof, the express warranty claims will fail. *See* Def. Mem. Opp. at 32-33.

---

[12] As previously cited and discussed, controlling Ohio authority establishes that reliance is a required element of a breach of express warranty claim. *See* Def. Opp. Mem. at 33 & n.50, Def. Issues Mem. at 2-3 & n.2, and cases cited therein. Other than *Norcold*, defendants are aware of no Ohio decision that eliminates the element of reliance, or carves out an express written warranty from other forms of express warranty claims. Courts outside this jurisdiction have been split on this issue to date. *Compare, e.g., Hendricks v. Callahan,* 972 F.2d 190 (8th Cir. 1992) (Minnesota law requires reliance to prove breach of express written warranties); *Land v. Roper Corp*., 531 F.2d 445 (10th Cir. 1976) (Kansas law requires reliance to prove breach of express written warranties) *with Wikoff v. Vanderveld*, 897 F.2d 232, 240-41 (7th Cir. 1990) (Illinois law does not require reliance to prove breach of express written warranties).

[13] Plaintiff has testified that during the negotiation leading up to her purchase, she was led by the salesman to believe that her vehicle came with an express warranty that the vehicle would be "without defect." *See* FAC ¶ 49; Deposition of Patricia Daffin at 121:23-122:5 (citied at, and attached to, Def. Opp. Mem. at 4 n.4).

[14] *See* Deposition of Mark Huff at 63:17-18 (Aug. 15, 2001) ("I don't believe they guaranteed a vehicle free of defects."); Deposition of Mary Huff Dep. at 80:8-10 (Aug. 15, 2001) ("Q. … Do you think [the warranty] guarantees a defect-free car? A. No.") (citied at, and attached to, Def. Opp. Mem. at 5 n.8 ).

[15] Likewise, these individual variances destroy the uniformity which some courts have found justify determining reliance on a class-wide basis. *See, e.g., Norcold*, 2003 Ohio at P14 ("cases [requiring reliance] deal with affirmations of fact or promise during contract negotiation").

3.  **Whether Plaintiff's tailoring of her claims has a preclusive effect on putative class members later asserting claims for personal injury or putative class members with both personal injury and property damage claims.**

None of the authorities cited by plaintiff suggest that if the proposed class is certified and judgment is entered in this case, class members who suffer personal injury or property damage could assert future claims arising from on the same alleged defect. Plaintiff utterly ignores Ohio principles of *res judicata,* issue preclusion and claim splitting. Plaintiffs argue that under *Bittenger v. Tecumseh Products Co.,* 123 F.3d 877 (6th Cir. 1997), the fact that the proposed class would seek only "injunctive relief and incidental damages" leaves the door open for class members to bring additional causes of action for personal injury and property damages based on the same alleged defect. Pl. Class. Issues Mem. at 10. But each of the elements of claim preclusion identified in *Bittinger* is satisfied in this case: "[t]he Ohio law *of res judicata*, or claim preclusion, requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it ." *Nilavar v. Mercy Health System-Western Ohio,* 142 F. Supp. 2d 859, 884 (2000) (internal quotations omitted).

To succeed on her claims, Ms. Daffin must prove that the throttle bodies installed in 1999 and 2000 Villagers are defective. The determination of that issue by this Court will be binding on all class members. Under the doctrine of collateral estoppel, that issue once decided can never be relitigated again by the class members. *See, e.g., Fort Frye Teachers Ass'n v. State Employment Relations Board*, 692 N.E.2d 140, 144 (Ohio 1998) (collateral estoppel precludes relitigation of the same issues "in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different"). As such, Ms. Daffin's proposed class litigation precludes any future claim by putative class members that a sticking or stuck throttle body on their Mercury Villager caused personal injury or property damage.

10

      4.      **Whether injunctive relief, and thus class certification under Federal Rule of Civil Procedure 23(b)(2), is appropriate if remedies are available at law.**

Plaintiff cannot rebut the clear legal rule that an equitable award under any of her claims is appropriate only where a remedy at law is unavailable. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945); *Haig v. Ohio State Bd. of Educ.*, 584 N.E.2d 704, 707 (Ohio 1992). Furthermore, she has made no effort to demonstrate that legal remedies are not available to her. In fact, as discussed in the next section, ***all*** of the remedies Ms. Daffin seeks are essentially legal.

Moreover, the primary "injunctive" relief that Ms. Daffin purports to seek is a "lifetime" warranty on her vehicle. Plaintiff cites no authority by which this Court could rewrite Ford's 3-year/36,000-mile limited written warranty into a lifetime warranty. Indeed, the Supreme Court has clearly prohibited federal courts from extending their equitable powers to shape such novel remedies. *See Grupo Mexicano de Desarrollo, S.A.,v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 333 (1999) (courts do not have power to create new equitable remedies). Simply put, Ms. Daffin is asking this Court to do something that no court has ever done before, and which Supreme Court precedent prohibits.

      5.      **Whether a class certification under 23(b)(2) is proper while compensatory damages are at issue, eliminating the opt-out and notice due process requirements of 23(b)(3).**

The Sixth Circuit has clearly established that where compensatory damages are available, a 23(b)(2) class is not appropriate unless the injunctive relief requested predominates. *Coleman v. General Motors Acceptance Corp.,* 296 F.3d 443, 447 (6th Cir. 2002). Plaintiff cannot credibly dispute that monetary remedies are appropriate and available for all of her claims. Even in the context of discussing "injunctive" relief, plaintiff is able to distill her claims to an easy to calculate "lump sum for future costs," and "straightforward calculation and proof"

of damages. *See* Pl.'s Class Issues Mem. at 15, 16. It is beyond dispute that the predominate relief Ms. Daffin seeks is – as it has been from the start – monetary, rather than injunctive.

> 6. **Whether class action treatment is the superior method for resolving this dispute given the availability of filing a complaint with the National Highway Traffic Safety Administration and its authority to remedy safety-related defects.**

Ford has identified a compendium of cases finding NHTSA a superior forum to class litigation. *See* Def. Opp. Mem. at 28-30, 44-47. By contrast, plaintiff offers virtually no support for her argument that in analyzing superiority under Rule 23(b)(3), the court should consider only "other forms of adjudication in the judicial system." Pl.'s Class Issues Mem. at 17. *Compare* 7A Wright & Miller § 1779 (2d ed. 1982) ("The court need not confine itself to other available 'judicial' methods of handling the controversy in deciding the superiority of the class action.").

Even more disingenuous is plaintiff's argument that NHTSA is not an superior forum because it has been "sadly" "inattent[ive]" to the alleged defect of which she complains. Although she has been litigating this case for years – claiming it involves a serious safety issue – by her own testimony, Ms. Daffin admits she has never made a report to NHTSA regarding her vehicle or the alleged defect. She has, instead, opted to sue for money damages in court. Plaintiff's own decision to seek money damages in court rather than notifying NHTSA of a the alleged safety issue is no reason to disparage the agency's credibility or effectiveness.

## II.    SUBJECT MATTER JURISDICTION

Ms. Daffin and Ford both agree that the Court properly exercised its jurisdiction upon removal, and further agree that federal jurisdiction remains appropriate today. For the reasons previously stated, this should alleviate any concerns this Court has over continuing to exercise its jurisdiction over this case.

November 21, 2003

                                                s/Gary M. Glass_____
Gary M. Glass (0042417)
THOMPSON HINE LLP
Suite 1400
312 Walnut Street
Cincinnati, Ohio  45404
Telephone:     (513) 352-6700

Brian C. Anderson  (pro hac vice)
John F. Niblock (pro hac vice)
Thomas Kuczajda (pro hac vice)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
Telephone:     (202) 383-5300
Facsimile:      (202) 383-5414

Attorneys for Defendant Ford Motor Company

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of foregoing was served via this Court's electronic filing system this **21st** day of November, 2003 upon:

  Jeffrey S. Goldenberg
  Mudock & Goldenberg, L.P.A.
  700 Walnut Street, Suite 400
  Cincinnati, Ohio 45202-2011
  jgoldenberg@mgslaw.com


                              s/ Gary M. Glass_____
                              Gary M. Glass

DC1:568311.1