Not Reported in N.E.2d                                                                                                                   Page 1
**(Cite as: 1999 WL 809808 (Ohio App. 8 Dist.))**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District, Cuyahoga County.

Louise LABONTE, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.

**No. 74855.**

Oct. 7, 1999.

Civil appeal from Court of Common Pleas, Case No. CV-340006.

Craig A. Kahn, Esq., Kahn & Associates, Cleveland, OH, for Plaintiff-Appellant.

Eric F. Spade, Esq., Porter, Wright, Morris & Arthur, Cleveland, OH, and Karen E. Sheffer, Esq., Baker & Hostetler, Columbus, OH, for Defendant-Appellee.

JOURNAL ENTRY AND OPINION

SWEENEY.

**\*1** Plaintiff-appellant Louise LaBonte ("LaBonte") appeals from the granting of summary judgment in favor of defendant-appellee-movant Ford Motor Company ("Ford") in this case which is premised upon the application of the following: (1) Ohio's Lemon Law (see R.C. 1345.71 *et seq.*); (2) Consumer Sales Practices Act (see R.C. 1345.01 *et seq.*); (3) implied warranty of merchantability under Ohio's Uniform Commercial Code (see R.C. 1302.27); and, (4) the Magnuson-Moss Warranty Act (see 15 U.S.C. 2301 *et seq.*). For the reasons adduced below, we affirm.

A review of the record on appeal indicates that LaBonte purchased a new 1996 Ford Probe automobile from T.E. Clarke Ford ("Clarke Ford") in Hudson, Ohio, on September 15, 1995. A written express limited warranty accompanied the new vehicle purchase from the manufacturer, which warranty provided in part that an authorized Ford dealer would "repair, replace or adjust all parts on your vehicle (except tires) that are defective in factory-supplied materials or workmanship for 3 years or 36,000 miles (whichever occurs first)." See 1996 Warranty at page 5; R.C. 1302.26 and 1302.93(A). This warranty further expressly limited liability of Ford for consequential and incidental damages of the purchaser, but did permit implied warranties of fitness and merchantability to the extent permitted by law. See 1996 Warranty at 4.

During the term of the limited warranty, LaBonte took her vehicle to Clarke Ford for repair on only two occasions. The first visit was on March 26, 1996, at which time the vehicle's odometer reflected 17,784 miles. The complaint at that visit was that the "check engine" warning light on the instrument display was illuminated. The "check engine" warning light is part of the system which monitors the vehicle's emission system. See Affidavit of Rodney Coleman, at paragraph 9. [FN1] A diagnostic check of the vehicle by a mechanic at the dealership failed to indicate a problem with the engine or emission control system, but the mechanic did make an adjustment (cleaned and regapped the spark plugs and removed an oxygen sensor) which turned the "check engine" light off. The vehicle was returned to LaBonte that same day at which time she was told by a service representative that the vehicle was safe to drive and that no problems had been discovered with the engine or emissions control system. The total time for servicing on that date was two hours and eight minutes.

> FN1. Coleman is a mechanic at Clarke Ford who worked on the vehicle in question and has knowledge of the "check engine" warning light problem.

LaBonte's second visit to Clarke Ford occurred on April 25, 1996, at which time the vehicle's odometer reflected 21,158 miles. The complaint at this visit was the same as the first visit; the "check engine" warning light was illuminated. A mechanic at the dealership reprogrammed the "check engine" light, replaced an oxygen sensor, and cleaned and regapped the vehicle's spark plugs after finding a miss in the ignition system. After these repairs were made the offending light was no longer illuminated. The dealership returned the vehicle to LaBonte that same day. The total time for servicing on that date was fifty-nine minutes.

**\*2** The limited warranty on the new vehicle expired

Not Reported in N.E.2d                                                              Page 2
**(Cite as: 1999 WL 809808 (Ohio App. 8 Dist.))**

in September of 1996 because the mileage had exceeded 36,000 miles. See LaBonte deposition, at 46, 75.

Subsequent to the expiration of the limited warranty, LaBonte took the vehicle to Clarke Ford six documented times complaining of the illuminated "check engine" light. These visits occurred on the following dates, with the following mileage: (1) September 12, 1996, with 36,608 miles; (2) October 9, 1996, with 39,315 miles; (3) November 20, 1996, with 43,287 miles; (4) February 5, 1997, with 50,488 miles; (5) May 17, 1997, with 61,754 miles; and, (6) May 20, 1997, with 62,127 miles. Each time, a mechanic would make adjustments or repairs which caused the light to turn off. Apparently, the problem with the light was caused by faulty computer software controlling the light's microprocessor. This software problem was known to Ford in 1996 and the company was working to resolve the software problem at the time, but the software problem was not resolved until October of 1997 when Ford issued a Technical Service Bulletin to its dealerships with instructions on how to make permanent repairs to the warning light illumination malfunction. This Bulletin was supplemented several months later through a Ford Special Service Message. According to LaBonte's own deposition testimony, the vehicle never experienced a break down (see deposition at 5, 70), that the "check engine" light illumination never caused her to fear for bodily harm or her life because she understood that the vehicle was safe to drive and that the illumination would not harm the vehicle (see deposition at 72), and that the vehicle's only problem was the illumination of the "check engine" light (see deposition at 70-71). Coleman also averred, see affidavit at paragraph 14, that the illumination of the "check engine" warning light did not affect the safety or driveability of the vehicle.

LaBonte's counsel sent a letter to Ford, dated July 14, 1997, informing Ford that she was revoking acceptance of the vehicle and demanded that the funds paid for the vehicle be returned and that Ford compensate her for incidental damages including attorney fees. The vehicle's mileage at that time (twenty-two months after the purchase) was in excess of 63,000 miles. See Complaint, Exhibit J.

LaBonte's Complaint was filed on September 8, 1997.

Without opinion or elucidation, the trial court granted Ford's motion for summary judgment on June 16, 1998. This appeal from that ruling presents the following lone assignment of error:

THE TRIAL COURT ERRED IN GRANTING DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT.

The standard of review for a motion for summary judgment was generally stated in *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448-449, 663 N.E.2d 639, as follows:

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to *any* material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

* * *

**\*3** Summary judgment is appropriate where the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 513, 651 N.E.2d 937, 940. When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031. (Emphasis added.)

Also see *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

Subsequent to *Tompkins,* in the case of *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 144-145, 677 N.E.2d 308, the Ohio Supreme Court limited the third paragraph of the syllabus of *Wing, supra,* by reasserting reliance on *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its

Not Reported in N.E.2d                                                                                                         Page 3
**(Cite as: 1999 WL 809808 (Ohio App. 8 Dist.))**

case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, *the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.* However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Footnote omitted; Italicization in original.)

We also note that our review of the granting of the motion for summary judgment ruling is *de novo.* Didier v. Johns (1996), 114 Ohio App.3d 746, 684 N.E.2d 337; Koos v. Cent. Ohio Cellular Inc. (1994), 94 Ohio App.3d 579, 641 N.E.2d 265.

In presenting this assignment, appellant divides her argument into a number of sub-arguments. These sub-arguments will be addressed in the order presented in appellant's brief.

A

The first sub-argument posits that genuine issues of material fact exist as to whether the appellant's vehicle is a non-conforming vehicle under the Ohio Lemon Law. Appellant relies upon the following provisions contained in the Lemon Law: R.C. 1345.71(E), .72(A) and (B), and .73.

**\*4** R.C. 1345.72(A) and (B) provides:

§ 1345.72. Duty to repair nonconforming new motor vehicles; consumer's options when repairs unsuccessful.

(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer *shall make any repairs as are necessary to conform the vehicle to such express warranty,* notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by *repairing or correcting any defect or condition that substantially impairs the use, safety, or value of the motor vehicle to the consumer after a reasonable number of repair attempts,* the manufacturer shall, at the consumer's option, and subject to division (D) of this section replace the motor vehicle with a new motor vehicle acceptable to the consumer or accept return of the vehicle from the consumer and refund each of the following:

(1) The full purchase price including, but not limited to, charges for undercoating, transportation, and installed options;

(2) All collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges;

(3) All finance charges incurred by the consumer;

(4) All incidental damages, including any reasonable fees charged by the lender for making or canceling the loan. (Italicization added.)

The definitions section provides at R.C. 1345.71(E) the following:

(E) "Nonconformity" means any defect or condition which *substantially impairs the use, value, or safety of a motor vehicle* and does not conform to the express warranty of the manufacturer or distributor. (Italicization added.)

R.C. 1345.73 provides:

§ 1345.73 PRESUMPTION OF REASONABLE NUMBER OF ATTEMPTS TO CONFORM VEHICLE TO WARRANTY

It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following

Not Reported in N.E.2d                                                                                         Page 4
**(Cite as: 1999 WL 809808 (Ohio App. 8 Dist.))**

apply:

(A) Substantially the same nonconformity has been subject to repair three or more times and continues to exist;

(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

(C) There have been eight or more attempts to repair any nonconformity that substantially impairs the use and value of the motor vehicle to the consumer;

(D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity continues to exist.

**\*5** This court is also aware that Ohio's Lemon Law is a remedial "consumer protection statute which should be liberally construed in favor of the consumer." [General Motors Acceptance Corp. v. Hollanshead (1995), 105 Ohio App.3d 17, 22, 663 N.E.2d 663.]

In the case *sub judice,* there is no genuine issue of fact as to whether the problematic "check engine" warning light "substantially impairs the use, value, or safety of a motor vehicle." The undisputed facts demonstrate that the appellant was driving the subject vehicle approximately 3,000 miles per month on average during the period of her ownership. There is no doubt that this degree of use on a continuing basis is considerable. In addition, the appellant testified that the vehicle never broke down during her ownership, which by April of 1998 (approximately 31 months after LaBonte took delivery of the vehicle) had placed 90,400 miles on the vehicle's odometer. The warning light problem in no way affected the operation of the engine, drivetrain, or mechanical functioning of any system of the vehicle. *Id.* These facts, when viewed in a light most favorable to the appellant, demonstrate that the use of the vehicle was not "substantially" impaired. As to the value of the vehicle being "substantially impaired" by the warning light problem, we conclude that this, too, is not demonstrated. The only evidence with regard to a monetary amount indicates that a non-functioning "check engine" warning light would lessen the $4,000 resale value of the 1996 vehicle (with 90,400 miles on the odometer) by "not more than $200." See the April 23, 1998, affidavit of Craig Clarke's Used Car Manager, Craig Hecker, attached as Exhibit F to Ford's motion for summary judgment. In other words, the greatest reduction in resale price the vehicle would sustain as a result of a non-functioning warning light was 5%. This percentage is not substantial in kind or degree. As to appellant's argument that the intrinsic, or psychic, value of the vehicle was substantially impaired due to the warning light problem, the facts demonstrate the opposite when one considers the fact that the vehicle never broke down even after 90,000 miles and that LaBonte never feared for her safety. See LaBonte's deposition at 72. Finally, the evidence does not support a showing that the warning light problem substantially impaired the safety of the vehicle. Appellant's own deposition testimony indicated that the vehicle never broke down during her ownership and that she never feared for her physical safety because of the warning light problem. *Id.* This is so because she was repeatedly assured by Clarke's service representatives that the warning light problem posed no threat to her or the driveability of the vehicle. *Id.* at 30, 42, 72; Affidavit of Rodney Coleman.

Absent a "substantial impairment" of the use, value or safety of the vehicle, summary judgment was properly granted on the alleged violation of Ohio's Lemon Law.

B

**\*6** The second sub-argument presented by appellant is that summary judgment was improperly granted on her claim for breach of express warranty and breach of the implied warranty of merchantability. This sub-argument is premised on the express limited warranty provision regarding repair, replacement or adjustment of defective parts from the manufacturer during the first thirty-six months or 36,000 miles (whichever occurs first), and appellant's belief that the express limited warranty provision was intended to be a limitation provision of buyer's remedies. If the express limited warranty is intended to be the exclusive remedy, and the express warranty fails of its essential purpose due to circumstances, the purchaser could then pursue the other remedies provided by the Uniform Commercial Code (see [R.C. 1302.93[B]]) including pursuit of consequential or incidental damages (which damages the express limited warranty sought to preclude).

Appellant argues that a genuine issue of fact exists as to whether Ford breached its written express limited warranty because the warning light problem, which had been reported to Ford on two occasions during the warranty period, was not resolved within a reasonable amount of time. Therefore, appellant claims the existence of a factual issue as to whether Ford repaired or replaced the defective warning indicator according to its duty under the express warranty. Appellant's attempt to limit the express

warranty provision to solely instances of repair or replacement is not supported by the record; appellant fails to account for the term "adjust" as that term is used in the limited express warranty with regard to defective parts. The facts demonstrate that Ford complied with the terms of its limited warranty by making repairs and/or adjustments to affect the warning light on two occasions (at 17,784 miles and 21,185 miles) and that the problem did not reoccur until approximately 36,608 miles (15,623 after the second repair/adjustment attempt and 608 miles past the expiration of the warranty period). At no point did the warning light problem negatively affect the driveability or mechanical operation of the vehicle. The repair records reflect that the vehicle was serviced for a total of approximately three hours during the entire period of the express limited warranty. This situation is not indicative of the vehicle being so riddled with defects that it fails its intended purpose (i.e., reasonably safe and reliable personal transportation) by virtue of the intermittent, minor engine warning light problem. See *Goddard v. General Motors Corp.* (1979), 60 Ohio St.2d 41, 396 N.E.2d 761. On this basis, there was no breach of the express limited warranty by Ford.

Appellant also argues that Ford breached its implied warranty of merchantability with respect to LaBonte's vehicle. To be "merchantable," the vehicle must be fit for the ordinary purpose for which the vehicle is used. See R.C. 1302.27(B)(3). As detailed above, the facts demonstrate that LaBonte's vehicle was fit for its intended purpose of personal transportation despite the presence of a minor engine warning light problem which was intermittent in nature and did not affect the driveability or mechanical operation of the vehicle; no reasonable jury could conclude otherwise. [FN2]

> FN2. Having concluded that Ford did not breach its express or implied warranty, appellant's sub-argument pertaining to limitation of remedies is rendered irrelevant.

**\*7** Accordingly, the trial court properly granted the motion for summary judgment on these two breach of warranty claims.

C

Appellant next argues that a genuine issue of fact exists as to whether Ford breached the Federal Magnuson-Moss Warranty Act ("the Act"). Applicability of the Act is dependent upon a sustainable claim for breach of express and/or implied warranties. Since the warranty claims in this case were determined to not be actionable, the claim based on the Act is similarly not actionable. Accordingly, the trial court properly granted summary judgment on LaBonte's claim based on the Act.

D

In her final sub-argument, appellant claims that there exist genuine issues of material fact as to whether Ford violated Ohio's Consumer Sales Practices Act. Appellant claims that Ford committed a deceptive and/or unconscionable act and trade practice by breaching the express limited warranty and/or the implied warranty of merchantability. Since these breach of warranty claims have been determined to have been not actionable, the cause of action based upon the Consumer Sales Practices Act necessarily fails and the trial court did not err in granting summary judgment thereon.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

DYKE, P.J., and CORRIGAN, J., concur.

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).

1999 WL 809808 (Ohio App. 8 Dist.)

Not Reported in N.E.2d  Page 6
**(Cite as: 1999 WL 809808 (Ohio App. 8 Dist.))**

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works