IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. DAFFIN, | : | Case No. C-1-00-458 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | |
| | : | **RESPONSE OF PLAINTIFF** |
| FORD MOTOR COMPANY, INC., | : | **TO DEFENDANT'S MEMORANDUM** |
| | : | **PURSUANT TO ORDER OF THE** |
| Defendant. | : | **COURT DATED NOVEMBER 6, 2003** |
| | : | **(DOC. #81)** |

Plaintiff submits this response to Defendant Ford's memorandum (Doc. #82) pursuant to the November 6, 2003 Order of the Court (Doc. #81). This response specifically addresses only the class action related issues argued by Defendant.[1]

**I.   Response to Defendant's argument regarding whether the unnamed putative class members have a cause of action if they have not yet experienced an injury as discussed in *In the Matter of Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002).**

In response to this query, Ford merely invokes its prior mantra that "no injury, no tort" prevents certification here per *In the Matter of Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1017 (7th Cir. 2002). For Ford, however, it seems that the mantra itself -- not the reality of what the Seventh Circuit actually states – anchors its misplaced reliance. *Bridgestone/Firestone* does not hold, nor can it ever be tortured to hold, that a lack of physical injury in tort, or an "incident/non-incident" distinction, bars the class claims brought under Ohio law here. *Id.* at 1017. Instead, the Seventh Circuit determined, without ever citing or referencing Ohio law, that a national class

---

[1] Plaintiff finds it unnecessary to address differences in Ford's reasoning and analysis regarding subject matter jurisdiction since, like Ms. Daffin, it has concluded that the Court has jurisdiction. While there are variances in analysis, Plaintiff believes that this issue is ripe for consideration, thus further briefing is unnecessary.

was unmanageable under Rule 23 in light of what it found to be irreconcilable state law variations. *Id.* at 1017-18.

Although Ford does its artful best to selectively wade through Ohio law, as shown, Ms. Daffin's claims are fully viable in Ohio regardless of any imagined incident/non-incident distinction. See Pl's Response as to Class Issues at pp. 2-7, Doc #84, and State Class Mot. at pp. 13-17, Doc # 66. First, as a threshold consideration, since **all** the throttle bodies in the Ford Villagers do in fact fail, this case falls outside of the *Bridgestone/Firestone* distinction because the parts **fail** to "function properly" (*id.* at 1017) to begin with. Thus, at the outset, further inquiry is irrelevant. See Pl's Response as to Class Issues at pp. 2-4, Doc. #84; State Class Mem. at 1-2, Doc. #75; and National Class Mot. (detailed statement of facts incorporated in State Class Mot. at 1 n.2) at pp. 6-23, Doc #25.

As to Ford's review of Ohio law on this issue, it should not go unnoticed that Ford does nothing more than sprinkle unhelpful, generalized and conclusory snippets of case law while carefully avoiding authority that meaningfully addresses the issue. See, e.g., Def's Opp. Mem. to State Cert., at pp. 14-15, Doc. #73. On the other hand, Plaintiff cites to specific and definitive case law addressing when the claims arise, and whether the class can recover for the type of injuries complained of here. And the answer in each instance is the claims are valid, and Ohio law allows for a full recovery for the class. See Pl's Response as to Class Issues at pp. 2-7, Doc. #84; State Class Mem. at pp. 13-17, Doc. #75.

In addition, the Court should remain mindful that Judge Spiegel recognized the validity of Ohio law in this regard in the *Telectronics Pacing Systems* litigation. There, the trial court found that Rule 23 certification was suitable under Ohio law, **even** in instances where some, but not all, of the products have failed (which is not even the case here since the defective condition

in the throttle bodies results in **all** of them failing). In *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, 206-207 (S.D. Ohio 1996) Ohio-based plaintiffs brought claims for negligence, strict liability, fraud, misrepresentation and breach of warranty, claiming the defendants' pacemakers were defective because a "retention wire **could** fracture", thereby failing. In reversing a prior national class certification (which was later re-certified as reported at 172 F.R.D. 271 (S.D. Ohio 1997)), the court specifically found that under Ohio law the claims were viable even if the pacemakers were "functioning without failure". Importantly, the court noted that to certify nationally – as opposed to an Ohio only class -- "the plaintiffs must show that all jurisdictions, *not just Ohio*, recognize viable causes of action for persons who have not suffered a physical injury." *Id*. at 215 (emphasis added). Notably, the court later granted national certification even though the pacemaker failure rate was in the range of 12 to 25 percent. *Id*. 172 F.R.D. at 277, and 289 n. 11. The court found that the failure rate "would seem to indicate that a common failure likely befalls all of the [pacemaker] devices" as a result of the "sheer magnitude of the rate of [the pacemaker wire] fracture." *Id*. at 289 n 11.

Two recent district court decisions granting Rule 23 class certification based on automobile defects support this conclusion. In *Samuel-Bassett v. Kia Motors Am., Inc.*, 212 F.R.D. 271, 275 (E.D. Pa. 2002), a Pennsylvania class was certified for claims including the Pennsylvania consumer protection statute (73 P.S. § 201-1, *et. seq*), and breach of express and implied warranties. Similar to this case where Ms. Daffin is on her fifth consecutive throttle body, *Kia Motors* involved a repetitively failing braking system, which the court explained as follows:

> Plaintiff alleges that her car suffers from a braking defect which causes it to shudder, vibrate, make grinding and groaning noises upon application of the brakes and that it often is unable to stop. At least five attempts were made to

repair Ms. Bassett's Sephia within the first 17,000 miles by replacing the brake rotors and pads, apparently without lasting success.

Since the braking failure occurred repetitively, the *Kia Motors* court was clear that any imagined distinction between incident/non-incident was irrelevant:

> [W]e note that although it may be true that the defendant's expert did not find anything wrong with the braking system in the plaintiff's Sephia [the car], there is also ample evidence that Plaintiff had the brake pads and rotors repaired and/or replaced more than twelve times by the time the odometer read 45,000 miles and some four times by the 12,000-mile mark. ***Thus, while we do not doubt that the vehicle's brakes properly function with new pads and rotors and that the vehicle's brakes may have been fully operational when inspected by Defendant's expert,*** <u>***the vehicle's repair history nevertheless strongly suggests that the brake pads and rotors could again wear out in an unusually short period of time***</u>***.***

*Id.* at 279 (emphasis added).

Just earlier this year, in *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 271 (E.D. Pa. 2003), the district court certified (and approved for settlement) a national class action based on claims including state consumer protection statutes, as well express and implied warranties. Strikingly similar to the carbonized sludge buildup that causes the accelerator to lock in the Ford Villager, the basis of the claim in *O'Keefe* was explained as follows:

> [T]hrough a common and uniform course of conduct utilizing common documents, defendant manufactured, supplied, promoted, sold and leased vehicles when it knew or should have known that its vehicles equipped with the FSS [the Flexible Service System] ***would experience premature and/or abnormal rod bearings wear, excessive oil consumption,*** <u>***sludge buildup, and other internal defects***</u>***,*** if the FSS oil service intervals recommended by defendant utilizing Mercedes-Benz approved conventional motor oils were strictly followed by the owners and lessees of the vehicles.

*Id.* at 271 (emphasis added).

In closing, the factual showing to the Court here establishes that the throttle body assemblies uniformly fail for the same reason, and thus all the class members' Villagers suffer the same defect. *Bridgestone/Firestone* is therefore irrelevant. But even if the Court delved

further, Ohio law nevertheless recognizes that Ms. Daffin and the class have ripe claims regardless of any perceived incident/non-incident distinction, a conclusion further supported by recent decisions of district courts certifying similar automobile defect classes based on like claims in other states.

**II.    Response to Defendant's argument as to how the individualized issues of reliance of the putative class members impact the commonality of warranty claims.**

Review of Ford's argument concerning express warranty reliance (see Def's Response Mem. at pp. 2-3, Doc. #82) reveals Ford's penchant to obfuscate the obvious: the claim is based on Ford's undeniable express, written and uniform Bumper-to-Bumper warranty made to the class to "repair, replace, or adjust all parts on [the] vehicle (except tires) that are defective in factory-supplied materials or workmanship."   And though Ford fully knows this (see, e.g, First Amended Complaint at ¶¶48-53, p. 10, Doc # 31; State Class Mot. at p. 13, Doc #66), it consistently omits any mention of its warranty, hoping to confuse the Court, feigning that it has no idea the claim is based on its Bumper-to-Bumper warranty. Remarkably, Ford states: "the Court could not even begin to address individual issues of reliance, *until it first determined the statements from Ford to which each individual had been exposed*." *Id.* at 3 (emphasis added). Such ploys are indicative of Ford's lack of candor, and confirms, yet again, its pattern of deception towards the class designed to avoid its warranty promise.

As shown, in Ohio reliance is not at issue for an express warranty claim under §1302.26(A)(1) when it is undeniable that the warranty exists in writing. *See Norcold, Inc. v. Gateway Supply Co.*, 2003 Ohio 4252, 2003 Ohio App. LEXIS 3772 (Shelby Cty., Aug. 11, 2003)(Exh. A); Pl's Response as to Class Issues at pp. 7-9, Doc. #84.  Moreover, Plaintiff has shown *Amato v. General Motors Corp.,* 111 Ohio App.3d 124, syllabus, 127-128, 463 N.E.2d 625, 629 (8th Dist. 1982)(upholding an Ohio CSPA and breach of warranty class action against

an automobile manufacturer) holds that even where the claims are based on the class' exposure to "extensive advertising" propagated through mass media, it was still proper to infer that the entire class was exposed to the advertising *and* then subsequently relied upon it. (See State Class Reply Mem. at p. 42, Doc. #75.) Thus, in view of Ford's standard issue Bumper to Bumper warranty here, this is an easy case because its existence is undeniable, it is uniform and in writing, and was made by Ford in connection with the sale of each Villager.

While Ohio law is settled that reliance is not at issue where a written warranty exists, at any rate, when Ford deposed Ms. Daffin, the record is clear that she relied on Ford's Bumper-to-Bumper warranty. Ms. Daffin testified (the relevant portions are attached as Exh. B) as follows:

> Q: [Ford] Did you discuss <u>the warranty</u> with Mr. Burdett [sales person] prior to purchasing the vehicle?
>
> A: Yes.
>
> Q: And what did he tell you about that?
>
> A: He gave us a brochure that listed everything that a warranty covers and does not cover. <u>Was a three-year 36,000 mile bumper to bumper warranty that covered everything</u> and we also discussed the extended plan, which we purchased.
>
> Q: <u>Did you read the warranty brochure</u> before you purchased the vehicle?
>
> A: <u>Very definitely</u>.

(Daffin Depo., page 37, line 17 through page 38, line 5)(emphasis added).

\* \* \* \*

> Q: [Ford] I'm sorry if I have already asked this question, I apologize, but you said you reviewed the warranty information that Mr. Burdett gave you prior to purchasing the vehicle. <u>Was that warranty an important consideration</u> for you in purchasing the vehicle?
>
> A: <u>Yes. I would say so</u>.

(Daffin Depo., page 40, line 22 through page 41, line 2)(emphasis added).

\* \* \* \*

    Q: [Ford] Ms. Daffin, what <u>express warranties do you contend that Ford gave you</u> regarding your Villager?

    A: That the vehicle was free of defects from bumper to bumper.

    Q: Can you point to anything in the written warranty that says the vehicle would be free of defects from bumper to bumper?

    A: <u>I believe it's contained in the materials of which there are copies of here</u>.

    Q: Okay.

    A: <u>Where they talk about their warranty and the fact that you have bumper to bumper coverage for everything in between. They are warranting everything that's on there.</u>

    Q: Why don't we turn to DAAF DPI0072.

    Mr. Murdock: What page?

    Q: It starts at 0072 the warranty itself. I was trying to pull the whole thing out, it's all stapled, all right. If I could ask you to turn to page DPI0078 there's a the middle paragraph there says, "<u>During this coverage period authorized Ford Motor Company dealers will repair, replace or adjust all parts on your vehicle except tires that are defective in factory supplied materials or workmanship." Is that the statement that you're relying on when you say that Ford promised that you would be given a defect free vehicle?</u>

    A: I don't know that that's the only place it's referred to. I wouldn't be able to say specifically without going back through a number of these things. There's more than one place where they refer to the warranty. <u>They are saying that are defective in factory supplied materials or workmanship.</u> I don't know what you're inferring, <u>I mean, that tells me everything is supposed to be warranted.</u>

(Daffin Depo., page 117, line 3 through page 118, line 10.)(Emphasis added).

\* \* \* \*

    Q: <u>Were there any other expressed warranties that were made to you other than the warranty booklet we looked at earlier than DPI003 and DPI008?</u>

{00009032; 1}    7

> A: <u>Not that I can recall</u> or know at this moment that I can say yes, I mean, I don't know that there was.
>
> Q: Are you basing your express warranty claims on any statements that were made to you?
>
> Mr. Murdock: Objection as to form, vague. Go ahead and answer.
>
> The Deponent: Only to the extent that it was presented to me that <u>the warranty that was all spelled out that was handed to me</u>, explained by the salesman what it covered and what it did and the term used repeatedly bumper to bumper warranty that I was inexplicitly convinced that I had an expressed warranty on the vehicle to be without defect and if there were a defect it would be re – taken care of.
>
> Q: <u>And did Ford breach its expressed warranty to you</u>?
>
> A: <u>Yes.</u>

(Daffin Depo., page 121, line 11 through page 122, line 9.)(Emphasis added).

As much as Ford hopes to confuse the obvious, the Ms. Daffin's testimony establishes that she fully relied upon the Bumper-to-Bumper warranty in making her decision to purchase the Villager.

Finally, Ford's authority regarding reliance is irrelevant. Unlike here, reliance was at issue in *Wagner v. Roche Lab.,* 85 Ohio St.3d 457, 459, 709 N.E.2d 162, 164 (1999), because the parties disputed whether the express warranty even existed. The same is true for *Jones v. Kellner*, 5 Ohio App.3d 242, 451 N.E.2d 548, 549 (Cuyahoga Cty., Dec. 9, 1982), as the parties disputed whether a warranty was created by a newspaper ad stating that a used car was in "mechanically A-1 condition." *Duran v. AT&T Corp.*, 2000 U.S. Dist. LEXIS 21814, *21-*25 (S.D. Ohio, Aug. 31, 2000)(Exh. C) is irrelevant: reliance is discussed in the context of a promissory estoppel theory arising under federal common law. Ford also points out that *Duran* relies on *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998),

but there, reliance is discussed under fraud and negligent misrepresentation claims brought under North Carolina state law. These cases, of course, have nothing to do with Ms. Daffin's claim based on Ford's written warranty brought under Ohio's Rev. Code §1302.26(A)(1).

Finally, the law is settled that even if Ms. Daffin's reliance on Ford's Bumper-to-Bumper warranty could be at issue, her reliance should be inferred to the rest of the class, and thus there are no individual reliance issues within the class. See Pl's Response as to Class Issues at pp. 8-9, Doc. #84. Knowing this, Ford scrambles, citing to distant, inapplicable decisions of the Eleventh Circuit, see Def's Mem. at 2-3, Doc. #82. Ford, however, avoids the Sixth Circuit's backyard where, in the context of certifying a class action based on Ohio claims, the district court in *Ironworkers' Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 535 (N.D. Ohio 1998), followed Ohio law and held that an element of reliance "will not defeat class certification * * * * where the claims arise from standardized forms or routinized procedures, not withstanding the need to prove reliance." *Id.* (following *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 84, 694 N.E.2d 442 (1998)).

**III.     Response to Defendant's argument as to whether Plaintiff's tailoring of her claims has a preclusive effect on putative class members later asserting claims for personal injury or putative class members with both personal injury and property damage claims.**

Acting as the proverbial fox guarding the hen house, and piously decrying Ms. Daffin's "cynical attempt to win certification", Ford feigns concern for the class, claiming that Plaintiff's "tailoring" of her claims will have a preclusive effect on putative class members later asserting claims for personal injury. See, Def's Mem. at p. 4, Doc. #82. Ford's motive, of course, is not derived from any concern towards a class that it continues to deceive and dodge. Rather, Ford seeks to scuttle the only realistic mechanism for relief – a class action.

Ford urges the Court to follow dicta in ***Feinstein v. Firestone Tire & Rubber Co.***, 535 F. Supp. 595, 606 (S.D.N.Y. 1982).[2] But Ford omits mentioning that ***Feinstein*** has been rendered a nullity by virtue of the Supreme Court ruling in *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 104 S. Ct. 2794 (1984). There, the Court held that a prior judgment on the merits in a 23(b)(2) class action, where the employer was found not to have engaged in a general pattern or practice of race discrimination against the class members, did ***not*** later preclude those same class members from later bringing individual discrimination claims against the employer. Newberg on Class Actions agrees: "*Cooper* modified the rule barring a splitting of the cause of action in separate litigation in particular circumstances." A. Conte & H. Newberg on Class Actions, § 1.7 at pp. 17-20 (3d. ed. 1992).

Moreover, ***Feinstein***, has been rejected within the Sixth Circuit. In *Gasperoni v. **Metabolife***, 2000 U.S. Dist. LEXIS 20879 (E.D. Mich. 2000) (Exh. D) the plaintiffs sought certification against Metabolife for improperly labeling a product in violation of state consumer protection laws due a failure to warn purchasers of the dangers of ephedrine, an ingredient in the product. The court, having diversity jurisdiction over state law claims, certified and defined the class to expressly exclude class members who had individual personal injury claims – just like Plaintiff proposes here. And just like Ford, Metabolife argued that the class representatives were in conflict with putative class members because any future personal injury claims could be subject to *res judicata* if the class was certified.[3] The *Gasperoni* court rejected this argument outright:

[2] In *Feinstein* the court said that the plaintiffs risked an impermissible split of their claims by limiting them to economic damages arising from breach of warranty and excluding consequential damages, including death, injury, and accident-related property damages. In reaching its decision, however, the court cited only non-class-action cases in which parties impermissibly split their claims or were precluded from asserting claims because of *res judicata*.

[3] Furthermore, Ford's argument is mere conjecture as it fails to demonstrate the existence of any actual conflict that would later bar claims for physical injury. To defeat class certification, "the conflict must be more than merely speculative or hypothetical." 5 Moore's Federal Practice, § 23.25[4][b][ii] at 23-119 (citing *In re Telectronics Pacing*

> [i]f those people with individual personal injury claims can opt out of the class, <u>*or are specifically excluded from the definition of the class, there is no danger of the class waiving any individual claims of its members*</u>. Moreover, the only legal issue to be certified is simply whether the label is materially misleading. Any personal injuries that develop in class members **after** the present suit, will **not** be subject to *res judicata* because their claim will not have been actually litigated, nor will it be one that 'might have been raised' in the previous suit.

*Id*. at *13. (emphasis added.) Similarly, the central legal issue to be certified against Ford is whether the throttle body assembly is defective, and any personal injury claims will not be subject to *res judicata* because they will not be litigated and are specifically excluded as stated in Plaintiff's proposed class definition.

*Gasperoni* determined that "adopting the plaintiffs' alternative suggestion to define the class so as to exclude persons who bring individual personal injury claims will alleviate most of Metabolife's *res judicata* concerns." *Id*. at *12. The court was also keenly aware of the defendant's motive in raising the issue: citing to the Seventh Circuit, the court agreed that, "[i]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified * * * * it is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house. *Id*. (citations omitted) Likewise, Ford's heretofore unknown "concern" for the class can be alleviated through the exclusion in the class definition. Taking Ford at face value, it can now rest content that it may be haled into court and held liable for personal injury claims due to the defect without the doctrine of *res judicata* barring the way.

Moreover, at any rate, it is simply not true that Ms. Daffin is "abandoning" or "tailoring" a claim that was initially part of the case, or was a claim that Ms. Daffin could have brought individually, as was the case *Feinstein* and in other authority cited by Ford, including *Western*

---

*Sys., Inc*., Accufix Atrial "J" Leads Prods. Liab. Litig., 164 F.R.D. 222, 229 (S.D. Ohio 1995)). In the absence of such proof by Ford, the alleged conflict is purely a hypothetical.

*States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271 9C.D. Cal. 2002), *Hoyte v. Stauffer Chem. Co.*, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)(Exh. E), and *Pearl v. Allied Corp.*, 102 F.R.D. 921 (E.D. Pa. 1984). Here, the class was initially defined to *exclude* personal injury claims and remains so, and it is equally clear that Ms. Daffin could not bring any such claims since she has not been physically injured herself.

IV. **Response to Defendant's argument as to whether injunctive relief, and thus class certification under Federal Rule of Civil Procedure 23(b)(2), is appropriate if remedies are available at law**.

Ford's generic and tired generalization that the Court is hide-bound to never consider injunctive relief unless all legal relief is found wanting is simply dead-wrong under the claims brought by Plaintiff. In particular, the statutory-based claims under the Ohio CSPA and breach of express warranty under Rev. Code §1302.26(A)(1) urge this Court to fashion the best and most complete relief – regardless of form. There is no ancient common law preference at work here where the Court must prefer legal relief. Rather, the CSPA was designed to specifically "provide[] consumers with additional remedies for the same conduct *that might not be available under other statutes or common law*." *Estate of Cattano v. High Touch Homes, Inc.*, 2002 Ohio 2631, 2002 Ohio App. LEXIS 2754, *18 (6th Dist. May 24, 2002) *cert denied* 96 Ohio St.3d 1513 (2002)(emphasis added)(Exh. F). "The CSPA is a remedial act, and its terms are to be interpreted liberally in favor of the consumer." *Ganson v. Vaughn*, 135 Ohio App.3d 689, 692, 735 N.E.2d 483, 485 (1st Dist. 1999).

The same holds true for Ford's breach of its express Bumper to Bumper warranty covered by R.C. §1326(A)(1). Here, R.C. § 1302.90, which provides the remedies for a breach under §1326(A)(1), expressly allows the Court to exercise its injunctive powers of specific performance, with the wide-open invocation that it should do so "under such terms and

{00009032; 1}                                             12

conditions * * * as the court may deem just." Here, "the modern approach is to compare remedies [legal or equitable] to determine which is more effective in serving the ends of justice. ***Such a comparison will often lead to the granting of equitable relief. Doubt should be in favor of granting of specific performance or injunction***." THE RESTATEMENT (SECOND) OF CONTRACTS § 359 cmt. a (1981)(emphasis added). See Pl's Response as to Class Issues at pp. 11-14, Doc #84, and State Class Reply Mem. at pp. 18-23, Doc # 75.

As noted, Defendant's authority on this issue is nothing more than generalized notions of common law, and is inapplicable here. See Def's Mem. at pp. 6-7, Doc. #82. *Haig v. Ohio State Bd. of Educ.*, 62 Ohio St.3d 507, 510, 584 N.E.2d 704, 707 (1992), does nothing more than state the general adage that "an equitable remedy will not lie where there is an adequate remedy at law" in the context of a dispute between parents and a school board regarding transportation of students from Kelley's Island, Ohio. The same is true for *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 482 N.E.2d 955 (10th Dist. 1983), which is concerned with the proper calculation of damages in an accountant malpractice action. These cases have nothing to do with a statutory warranty claim under Rev. Code §1302.26(A)(1) or the Ohio CSPA.

Finally, Ford makes a last ditch effort to re-cast the injunctive relief sought by Ms. Daffin as a "recall", from which it contends the "recall" is pre-empted by the National Traffic and Motor Vehicle Safety Act of 1966. See Def's Mem. at p. 7, Doc. #82. However, Plaintiff does ***not*** seek a court-ordered recall. And at any rate, it is hardly settled federal law that the Safety Act grants NHTSA exclusive powers to order a recall.

Plaintiff seeks relief in two alternative forms: to require Ford to extend its Bumper-to-Bumper warranty for the service life of the vehicle in order to replace the defective throttle-body assembly on a recurring basis; or, alternatively, to require Ford to pay the cost of the injunctive

relief directly to class members measured by the cost of regularly replacing the defective part based on specified intervals. See Mot. for State-wide Class at 9, n.46, Doc. #66. This relief is comprehensive and superior and thus the Court is empowered to craft this relief under the claims brought here. This relief is hardly a recall, but rather, it is designed to require Ford to honor its promise to the class made in the Bumper-to-Bumper warranty. Second, if the Court prefers the alternative relief, since the direct payment to class members is measured and based on the cost of the injunctive relief, it is not a form of monetary relief at law or "out of pocket" damages.[4]

In fact, other courts have considered similar relief and found it perfectly acceptable. In *Kent v. DaimlerChrysler Corp.*, 200 F.Supp.2d 1208, 1217, n.3 (N.D. Calif. 2002) -- rendered **after** In re Bridgestone/Firestone, Inc., 153 F. Supp. 2d 935 (S.D. Ind. 2001), on which Ford relies (see Def's Mem. at 7 (Doc. #82)) – the court found there was **no** conflict with NHTSA's recall powers since the plaintiffs sought to "'create a fund available to remedy the park-to-reverse defect and' to order the Defendant (Daimler Chrysler) 'to bear the cost of notice to Class Members, as approved by the Court, of the availability of funds to remedy the defect.'" *Id.* at n.3. *Kent* also correctly pointed out that the Third Circuit expressly approved that this type of relief by *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3rd Cir.), *cert. denied GMC v. French*, 516 U.S. 824 (1995). There, the Third Circuit overruled objections to a class action settlement concerning a fuel tank defect, instructing:

---

[4] See, e.g., Newberg, *supra*, § 4:14 p. 73 (4th ed. 2002): "The application of Rule 23(b)(2) to class actions requesting primarily declaratory or injunctive relief does not prevent the court from granting damages or other monetary relief to class members generally. Once the conduct of the defendant makes such injunctive or declaratory relief appropriate, ***the full panoply of the court's equitable powers is introduced.*** Accordingly, monetary relief has been granted on a classwide basis in Rule 23(b)(2) actions, provided that these awards are either (1) ***equitable in nature*** or (2) secondary or ancillary to the general scheme of injunctive or declaratory relief sought by the plaintiffs." (Emphasis added).

> *The district court could clearly have awarded relief that would require GM to set up a fund to finance retrofits initiated by the owners individually.* See, *Bloyed,* 881 S.W.2d at 443. The district court, therefore, did not lack the power to order a remedy that would have been more responsive to the classes' concern about leaving the trucks on the road.

*Id.* at 811, n.30 (emphasis added). In *Bloyed v. General Motors Corp.*, 881 S.W.2d 422, 433 (Ct. App. Tx. 1994), *aff'd* by 916 S.W.2d 949 (Tex. 1996), the appellate court specifically decertified a class action settlement because it found the trial court **should have** required the ***exact form of relief*** that Ms. Daffin seeks here now. The court instructed:

> **A more fair and reasonable settlement would be for GMC to pay for the repair of the vehicles or to make a cash payment to each class member, who could then make his own repair.** If GMC believes that the certificates represent a real monetary value, it should be willing to give that value in cash or repair costs. Such an arrangement would not only settle the real value issue, but it would ameliorate the safety problem as well, since it would promote the repair of at least some of the vehicles.

*Id.* (emphasis added).

Ms. Daffin does not seek any "recall." In fact, as shown above, the relief requested here has not only been approved by other federal courts, but is ***preferred***. There being no "recall", it is unnecessary to delve into a NHTSA pre-emption analysis. But even if the Court were to do so, the Court is referred to the comprehensive reply set forth in Plaintiff's Motion for State-wide Class Certification. See Pl's Mem. in Support of State-wide Class Cert. at pp. 24-31, Doc. #75.[5]

**V.    Response to Defendant's argument as to whether a class certification under 23(b)(2) is proper while compensatory damages are at issue, eliminating the opt-out and notice due process requirements of 23(b)(3).**

Plaintiff's opening memorandum comprehensively addresses this issue, and upon review of Ford's arguments, Plaintiff need only respond as follows. As Plaintiff explained previously,

---

[5] Further dousing Ford's pre-emption argument is the fact that in the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.*, Congress specifically allowed for injunctive relief under §2310(d), which allows private suits to request courts to order repairs***, replacement*** or refunds "***and other legal and equitable relief***." As Ms. Daffin also seeks injunctive relief here based upon Ford's replacement of the throttle bodies, Ford is hard pressed to re-cast the relief as a pre-empted "recall" under the Safety Act, because here Congress' intent is clearly otherwise. *See, e.g., Lieb v. Am. Motors Corp.,* 538 F.Supp.127, 135 and 135 n.2 (S.D.N.Y. 1982).

(at pp. 16-17, Doc # 84), for completeness of response to the Court's query, the Seventh Circuit recognizes a certification option where district courts may certify under Rule 23(b)(2) for both monetary and equitable remedies, yet still "exercise its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class were certified under Rule 23(b)(3)." *Lemon v. Int'l Union of Operating Engineers Local No. 139*, 216 F.3d 577, 582 (7th Cir. 2000)(citations omitted). Doing so would be "tantamount to the protections envisioned by Fed. R. Civ. P. 23(c)(2)." *Id.* (citations omitted). Plaintiff, however, does not believe that under the circumstances of this case, adopting this option is necessary. Rather, a straight Rule 23(b)(2) class should be certified because, in light of the very modest collateral monetary damages at issue, because these damages are truly secondary to the predominant injunction relief.

**VI.    Response to Defendant's argument as to whether class action treatment is the superior method for resolving this dispute given the availability of filing a complaint with the National Highway Safety Traffic Administration and its authority to remedy safety-related defects.**

Predictably, upon reading this query, Ford can hardly contain itself and consequently its response crosses the threshold to the absurd. It now hails almighty NHTSA, the omnipotent protector of consumers like Ms. Daffin, who should do nothing more than cling to NHTSA's war belt. Ford believes that Ms. Daffin should stand aside as the swift and mighty machinery of NHSTA with its "legion of technical engineers and experts who can make a clear determination of the potential safety risks involved" whirls into action. See Def's Mem. at p. 9, Doc #82. Ford, in its zeal to promote NHSTA to super-hero status must have forgotten that NHTSA's "legions" have done absolutely nothing with the complaints they received concerning this defect. See Pl's Response as to Class Issues at pp. 18-19, Doc. #84. Apparently, in the world according to Ford, NHTSA exists to act as an intermediary enforcing Ohio law and doing Ms. Daffin's

bidding when it breaks its promise to the class, when it deceives under the Ohio CSPA, or when it is liable in tort for negligent design and breach of common law warranty. Thankfully, this is not reality.

The notion that Ford should answer to NHSTA, a third-party federal regulatory bureaucracy, and not directly to the class upon whom Ford committed the wrongful acts, is facially absurd. Ms. Daffin seeks the most effective form of judicial relief right here, right now. She is exercising her rights and seeking maximum comprehensive relief as allowed under law to hold Ford accountable before this Court, not only for herself, but for everyone else in the class.

Moreover, Plaintiff's opening memorandum (pp. 17-18, Doc. #84) demonstrates that the Rule 23(b)(3) superiority analysis is concerned with forms of judicial adjudication, not regulatory action by NHTSA. As Judge Spiegel aptly noted in *In re Telectronics Pacing Systems*, where ordinary Ohio citizens, like the class members here, have modest claims and resources to seek redress, are widely disbursed geographically, and as a practical matter are unable to retain experienced counsel to pursue their individual claims, the class action device is superior to the other judicial alternatives, s*upra,* F.R.D. at 286-87. *See also, Georgine v. Amchem Prods.*, 83 F.3d 610, 633 (6th Cir. 1996), referring to Rule 23(b)(3) superiority, "[t]he rule asks us to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of ***adjudication***." (Citations omitted)(emphasis added). These factors have been widely recognized by federal courts. *See also, In re Copley Pharmaceutical, Inc.*, 161 F.R.D. 456, 466 (Dist. Wy. 1995)(decertifying "relatively small claims would 'slam' the courthouse doors shut for many plaintiffs"); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)(superiority satisfied in part since it would be uneconomical to pursue small claims individually); *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645

(N.D. Calif. 1987)(finding superiority to exist where "in practical terms plaintiffs * * * may be economically precluded from bringing separate law suits and thus be barred access to the judicial system."

In the context of automobile defect cases, as previously set forth in Plaintiff's state-wide class briefing (see Pl's Motion for State-wide Class, at 11, Doc. #66), superiority is routinely satisfied.

## VII.  Conclusion

Therefore, in consideration of the foregoing as well as Plaintiff's prior briefing on class certification, Ms. Daffin respectfully urges the Court to grant class certification.

Respectfully submitted,

    s/John C. Murdock
John C. Murdock (0063749)
Jeffrey S. Goldenberg (0063771)
Theresa L. Groh (0029806)
Murdock Goldenberg Schneider & Groh, LPA
700 Walnut Street, Suite 400
Cincinnati, Ohio  45202-2011
(513) 345-8291 Telephone
(513) 345-8294 Facsimile
**Counsel for Plaintiff**

Sean R. Matt, Esq.
Steve W. Berman, Esq.
Hagens Berman
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
(206) 224-9327 Telephone
(206) 623-0594
**Co-Counsel Admitted Pro Hac Vice for Plaintiff**

CERTIFICATE OF SERVICE

      I hereby certify that on November 21, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Gary M. Glass, Esq., Thompson Hine, LLP, 312 Walnut Street, Suite 1400, Cincinnati, Ohio 45202, and I hereby certify that I have served the following non CM/ECF participant via electronic and U.S. mail service: John F. Niblock, Esq., O'Melveny & Myers LLP, 555 13th Street, N.W., Suite 500, Washington, D.C. 20004-1109.

                                                   s/John C. Murdock