IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN CHAMBERLAN; BRIAN CHAMPINE; and HENRY FOK, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>   Plaintiffs,<br><br>   v.<br><br>FORD MOTOR COMPANY, and DOES 1 through 100, inclusive,<br><br>   Defendants.<br>_____/ | No. C 03-2628 CW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Defendant Ford Motor Company has filed a motion to dismiss Plaintiffs' claims on the ground of preemption. Plaintiffs oppose this motion. The matter was heard on October 17, 2003. Having considered all of the papers filed by the parties and oral argument on the motion, the Court denies Defendant's motion.

BACKGROUND

Plaintiffs bring this action on behalf of themselves and all similarly situated persons residing in California who

purchased certain automobiles (Subject Automobiles)[1] manufactured by Defendant. In relevant part, the complaint alleges that, beginning in 1996, Defendant manufactured, sold, and distributed Subject Automobiles containing defective intake manifolds. Compl. at ¶ 2. Plaintiffs allege that no later than January 1, 1997, and possibly earlier, Defendant became aware that a large number of intake manifolds in the Subject Automobiles were cracking prematurely, exposing drivers and their passengers to serious risk of injury. Id. at ¶ 4. Plaintiffs allege that Defendant's testing and records showed that the intake manifolds failed at a "much higher rate than was to be expected from a properly functioning manifold, and was occurring much more quickly than the expected life of the part." Id. at ¶ 5.

Starting in January, 1998, Defendant began to offer several extended warranty protection, or "recall," programs for free replacement or repair of the defective intake manifolds for some of the Subject Automobiles. Id. at ¶ 6. Plaintiffs allege, however, that Defendant extended this offer almost exclusively to fleet purchasers of Subject Automobiles such as taxi cab companies, limousine companies, and police forces. Id. Plaintiffs allege that by failing to send the recall letter or offer the recall program to the vast majority of consumer purchasers of Subject Automobiles, Defendant "concealed from and/or failed to disclose to Plaintiffs and the Class the

---

[1] Subject Automobiles include Mercury Grand Marquis (1996-2001), Ford Mustang (1996-2001), Ford Explorer (2002), Ford Crown Victoria (1996-2001), Lincoln Town Car (1996-2001), Mercury Cougar (1996-1997), and Ford Thunderbird (1996-1997).

2

defective nature of the intake manifolds contained in the Subject Automobiles." Id. at ¶ 7. As a result of these defective intake manifolds, the Subject Automobiles purchased by Plaintiffs and the Class "did not perform in accordance with the reasonable expectations of Plaintiffs and the Class-namely, that the automobiles were suitable for normal use as a passenger vehicle." Id. at ¶ 8.

The complaint alleges that Plaintiff Brian Champine bought a 1996 Ford Thunderbird on September 13, 2000 and the intake manifold cracked on March 28, 2002 at about 88,000 miles. Id. at ¶ 12. Plaintiff Susan Chamberlan bought a used 1997 Mercury Grand Marquis. In June, 2002, the intake manifold in her car cracked at about 60,000 miles. Id. at ¶ 13. Plaintiff Henry Fok bought a used 1998 Mustang GT convertible, and in March, 2003, the car's intake manifold cracked at 70,000 miles. Id. at ¶ 14. Plaintiffs allege that Defendant, "through its own efforts and through its network of authorized dealerships acting as its agents . . . warranted, advertised, distributed, and sold its automobiles throughout the state of California." Id. at ¶ 16.

Plaintiffs' claim under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq. alleges that Defendant engaged in "unfair competition or unlawful, unfair or fraudulent business practices in violation of the Unfair Business Practices Act when [it] omitted to disclose that the Subject Automobiles have defective intake manifolds." Id. at ¶ 34.

PROCEDURAL HISTORY

On August 6, 2003, this Court granted Defendant's motion to dismiss Plaintiffs' UCL claim because the restitutionary relief requested was unavailable under the facts as alleged in the complaint and granted Plaintiffs leave to amend their UCL claim. In their amended UCL claim, Plaintiffs seek "[a]n order temporarily and permanently enjoining Defendants from continuing the unfair business practices alleged" in their complaint. Defendant now seeks to dismiss Plaintiffs' amended UCL claim on the ground that it is preempted.

## LEGAL STANDARD

I.  Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). Where a State law claim is preempted by federal law, that claim must be dismissed for failure to state a claim because the claimant cannot prove any set of facts that will support the claim for relief. <u>Kent v. Daimlerchrysler Corp.</u>, 200 F. Supp. 2d 1208, 1212 (N.D. Cal. 2002).

## II. California's UCL

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1[2] (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Cal. Bus. & Prof. Code § 17200.

The UCL provides for monetary relief in the form of restitution as well as injunctive relief:

> "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

Cal. Bus. & Prof. Code § 17203.

## III. Preemption

Under the Supremacy Clause, State law that conflicts with federal law has no effect.  <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S 504, 516 (1992)(citing U.S. Const. art. VI, cl. 2). Federal preemption of State law may be express or implied.  <u>Shaw v. Delta Airlines, Inc.</u>, 463 U.S. 85, 95 (1983).  "[W]ithin Constitutional limits Congress may preempt state authority by so stating in express terms."  <u>Pac. Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n</u>, 461 U.S. 190, 203 (1983).

---

[2] Chapter 1 prohibits false advertising for a variety of businesses.

5

Absent explicit preemptive language, there are two types of implied preemption, field preemption and conflict preemption. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000).

Courts will find a State law field-preempted if one of three circumstances exist. First, State law is preempted where "Congress' intent to supercede state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it." Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n, 461 U.S. 190, 204 (1983)(internal quotations omitted). Second, courts will find State law field-preempted if "the Act of Congress [] touch[es] a field in which the federal interest is so dominant that the federal system [can] be assumed to preclude enforcement of state laws on the same subject." Id. Finally, State law will be field-preempted where "the object sought to be obtained by the federal law and the character of the obligations imposed by it may reveal" that the purpose of the law is to occupy the field entirely. Id.

"[W]here Congress has not entirely displaced State regulation in a specific area, State law will still be preempted to the extent that it actually conflicts with federal law." Id. Thus, "[C]onflict pre-emption . . . turns on the identification of [an] actual conflict." Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 884 (2000)(internal quotations and citation omitted)

There are two reasons courts will find State law conflict-preempted. First, State law will be conflict-preempted where it

is "impossible for a private party to comply with both state and federal requirements." English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). Second, State law will be conflict-preempted where that law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941). There must be "clear evidence" of such a conflict. Geier, 529 U.S. at 885. Speculative or hypothetical conflict is not sufficient: only State law that "actually conflicts" with federal law is preempted. Cipollone, 505 U.S. at 516.

Congressional intent is the "ultimate touchstone" of any preemption analysis, express or implied. Gade v. Nat'l Solid Wastes Management Ass'n, 505 U.S. 88, 96, 98 (1992). In determining Congressional intent to preempt, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose," Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992), because "[t]he first and most important step in construing a statute is the statutory language itself." Royal Foods Co., Inc. v. RJR Holdings, Inc., 252 F.3d 1102, 1106 (9th Cir. 2001) (citing Chevron USA v. Natural Resources Defense Council, 467 U.S. 837, 842-44 (1984)). As the Court explained in Sprietsma v. Mercury Marine, 537 U.S. 51 (2002), the "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." 537 U.S. at 62-63.

There is a presumption against implied preemption of State law in areas traditionally regulated by the States. <u>California v. ARC Am. Corp.</u>, 490 U.S. 93, 101 (1989). In addressing the question of preemption in a field traditionally occupied by the States, a court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." <u>Id.</u> (quoting <u>Rice v. Santa Fe Elevator Corp.</u>, 331 U.S. 218, 230 (1947)); <u>Hillsborough County Florida v. Automated Med. Lab, Inc.</u>, 471 U.S. 707, 715 (1985)(quoting <u>Jones</u>, 430 U.S. at 525). "In other words, we are not to conclude that Congress legislated ouster of [a State] statute . . . in the absence of an unambiguous congressional mandate to that effect." <u>Florida Lime and Avocado Growers, Inc. v. Paul</u>, 373 U.S. 132, 146-47 (1963). The presumption against preemption "is not triggered when the State regulates in an area where there has been a history of significant federal presence." <u>United States v. Locke</u>, 529 U.S. 89, 108 (2000)(internal quotations omitted).

## DISCUSSION

I. Presumption Against Preemption

The parties disagree as to whether a presumption against preemption applies in this case. Their disagreement arises from their differing definitions of the field in question. Defendant defines the field as that of recalls and argues that States have not, and the federal government has, played a significant role in administering safety-related motor vehicle recalls.

8

Defendant argues that such a remedy did not exist prior to the 1974 amendments which added recall provisions to the Motor Vehicle Safety Act (MVSA), 49 U.S.C. §§ 30101, et seq. so this could not be an area of traditional State police power in which the presumption against preemption applies.

Plaintiffs define the field in question more generally as motor vehicle safety. They point out that the remedy they seek may fall short of a recall. In support of a presumption against preemption, Plaintiffs cite Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996) for the proposition that a presumption against preemption applies to cases dealing with motor vehicle safety because of the historical primacy of the States in regulating health and safety. Plaintiffs' opposition also may be read to argue that the field in question is fraudulent business practices.

The claim for which Plaintiffs seek relief arises in the fields of motor vehicle safety and fraudulent or unfair business practices. Motor vehicle safety is an area of traditional State police power. City of Columbus v. Ours Garage and Wrecker Serv., 536 U.S. 424, 439 (2002). In fact, "[i]n no field has . . . deference to state regulation been greater than that of highway safety regulation." Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 443 (1978). Even if the injunctive relief Plaintiffs request constitutes a recall, it is a remedy rather than a substantive field of regulation. In Locke, the Court drew a distinction between remedies and substantive regulation in the context of deciding a preemption question. 529 U.S. at

1  108-09.

2  In <u>Kent</u>, the court applied the presumption against
3  preemption in a case involving a motor vehicle recall, stating
4  that the field in question was one "which the States have
5  traditionally occupied." <u>Kent</u>, 200 F. Supp. 2d at 1213 (citing
6  <u>Medtronic</u>, 518 U.S. at 485).  There is authority in other
7  circuits which supports <u>Kent</u>'s conclusion by indicating that
8  States historically have provided injunctive remedies in the
9  field of vehicle safety.  <u>See</u>, <u>e.g.</u>, <u>Noel v. United Aircraft</u>
10 <u>Corp.</u>, 342 F.2d 232, 242 (3d Cir. 1964); <u>Braniff Airways Inc. v.</u>
11 <u>Curtiss-Wright Corp.</u>, 411 F.2d 451, 453 (2d Cir. 1969).

12 Fraud and unfair business practices are also areas
13 traditionally regulated by the States.  <u>Florida Lime and Avocado</u>
14 <u>Growers, Inc.</u>, 373 U.S. at 145-46; <u>ARC Am. Corp.</u>, 490 U.S. at
15 101.

16 The Court therefore finds that a presumption against
17 preemption applies in this case.

18 II. Field Preemption

19 Defendant concedes that there is no express preemption at
20 issue in this case but argues for implied preemption through
21 federal occupation of the field.  As noted above, Defendant
22 defines the field in question as motor vehicle recalls.
23 Defendant asserts that the level of detail in the recall
24 provisions of the MVSA and the lack of a provision for any
25 private right of action leading to a judicial recall remedy in
26 the statutory scheme show Congress' intent to occupy the field
27 so as to preclude alternative State remedies.

28

10

This Court has found that the fields at issue in this case are motor vehicle safety and fraudulent business practices, and that the presumption against preemption applies. To meet its burden of showing that State law in these areas is field-preempted, Defendant must demonstrate clear and manifest Congressional intent to this effect. Defendant has failed to carry its burden.

As the Supreme Court instructed in Morales and Sprietsma, the Court must first examine the plain language of the MVSA to determine if Congress had preemptive intent. Morales, 504 U.S. at 383; Sprietsma, 537 U.S. at 62-63. The preemption and savings clauses of the MVSA provide:

> (b)(1) . . . When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this Chapter.
>
> . . . .
>
> . . . (d) . . . [a] remedy under those sections [that deal with notification requirements and enforcement thereof] and sections 30161 [providing judicial recourse for manufacturers to challenge an adverse agency decision] and 30162 [dealing with petitions for new standards and investigations] of this title is in addition to other rights and remedies under other laws of the United States or a State.
>
> (e) . . . Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

(b)(1), (d), (e).

The plain language of 49 U.S.C. § 30103(b)(1) indicates that States are not precluded from enforcing motor vehicle

11

safety laws, so long as those laws do not impose a standard different from one explicitly provided in the MVSA. Nonetheless, Defendant argues that Plaintiffs can pursue only the administrative remedy of petitioning the Secretary with regard to the manifold defect they allege. However, 49 U.S.C. § 30103(d) states that State law remedies remain for a manufacturer or consumer in addition to the administrative proceedings at the National Highway and Traffic Safety Administration (NHTSA) provided for in the MVSA. That section specifically notes, as a non-exclusive remedy, § 30162, which states the administrative procedure through which interested persons may file petitions with the Secretary of Transportation requesting that the Secretary investigate whether to issue an order requiring notice of and a remedy for defective equipment. Thus, it is clear that Congress intended to leave open to consumers State remedies in addition to the administrative petition process. Even if the relevant field were recalls, because this savings clause also makes particular reference to notification and recall provisions as non-exclusive remedies, Defendant's argument that State law in this area is field-preempted runs contrary to the plain language of the statute.

The language of the MVSA thus supports the holding that Congress did not intend the Act to occupy the entire field of motor vehicle safety, much less that of fraudulent business practices, so as to invalidate all State law in these fields.

The weight of authority also supports the conclusion that the MVSA does not occupy the field so as to preempt State motor

vehicle safety law. In Harris v. Great Dane Trailers, Inc., 234 F.3d 398, 400 (8th Cir. 2000), the Eighth Circuit held that "Congress in the Safety Act plainly did not intend to occupy the field of motor vehicle safety." Similarly, in Richards v. Michelin Tire Corp., 786 F. Supp. 959, 963 (S.D. Ala. 1992), the court held that the statutory scheme of the MVSA "does not evince an intent to reserve the entire field of automotive safety regulation to the federal government." 786 F. Supp. at 963. The Richards court noted, "Lawsuits involving automotive defects are common in modern tort law. [But] in the nearly twenty-six years since its enactment, the [MVSA] has never been held to completely occupy the field of [automotive safety] regulation." Id. Likewise in Amrhein v. Quaker Oats Co., 752 F. Supp. 894, 896-97 (E.D. Mo. 1990), the court held that neither the plain language nor the legislative history of the MVSA supported a holding that the Act completely occupied the field of motor vehicle safety.

Legislative history also demonstrates that Congress did not intend to supplant all other law in the motor vehicle safety field: "[W]e have preserved every single common law remedy that exists against a manufacturer for the benefit of a motor vehicle purchaser." 112 Cong. Rec. 19,663 (1966). The Senate Report addressing the MVSA stated that a role would remain for State enforcement after enactment. Under a section entitled "effect on state law," Senate Report No. 89-1301 explained the impetus behind the MVSA and the legislation's impact on other laws:

> State standards are preempted only if they differ

13

> from Federal standards applicable to the particular aspect of the vehicle or item of vehicle equipment (sec. 104). . . . Moreover, the Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law.

1966 U.S.C.C.A.N. 2709, 2720 (1966).

Legislative history shows that Congress did not intend the MVSA to be a pervasive scheme, but rather intentionally left certain areas of safety regulation to the States. For example, the MVSA only addresses defect notification procedures for first-time purchasers and warranty transferees, 49 U.S.C. §§ 30117, 30118, and these purchasers and transferees are protected only for a limited time: manufacturers need only provide free repair or replacement of a defective part if the vehicle or equipment "was bought by the first purchaser more than 10 calendar years . . . before notice is given under section 30118(c) or an order is issued under section 30118(b) whichever is earlier." 49 U.S.C. § 30120(g). The MVSA's scope within the field of motor vehicle safety is thus limited because it leaves to State regulation the protection of indirect purchasers and those holding a vehicle beyond the time limitations in the Act. Through this scheme, Congress expressed its intent that "States . . . play a significant role in the vehicle safety field by applying and enforcing standards over the life of the car." Senate Report No. 89-1301, 1966 U.S.C.C.A.N. 2709, 2720 (1966).

Thus the plain language of the MVSA, case law, and legislative history all support the conclusion that Congress did

14

not intend to supplant all State regulation of motor vehicle safety.

Defendant argues for Congressional preemptive intent on the basis of the level of detail and "comprehensiveness" of the MVSA's provisions. In support of its argument, Defendant cites the warning in <u>Locke</u>, 529 U.S. at 106, against giving broad effect to a savings clause where doing so would upset a careful federal regulatory scheme. This argument is insufficient to demonstrate field preemption. In <u>Geier</u>, the Court explained that the weight of a "volume and complexity" argument differs when asserted in support of a claim of field preemption as opposed to conflict preemption. <u>Geier</u>, 529 U.S. at 884. When applied to the former, "the Court has looked for a specific statement of pre-emptive intent" as well. <u>Id.</u> (citing <u>Hillsborough</u>, 471 U.S. at 717). As the Court pointed out in <u>Hillsborough</u>, "the subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem." <u>Hillsborough</u>, 471 U.S. at 717 (citing <u>New York Dept. of Soc. Serv. v. Dublino</u>, 413 U.S. 405, 415 (1973)). Further, as Plaintiffs point out, <u>Locke</u>'s warning against giving broad effect to a savings clause comes in the context of a case involving interstate navigation, an area of long-standing federal primacy, whereas the fields at issue in the instant case are motor vehicle safety and fraudulent business practices, both

15