United States District Court

For the Northern District of California

1  areas of traditional State regulatory primacy.  <u>Locke</u> is

2  therefore inapposite.

3      Defendant's reliance on <u>In re Bridgestone/Firestone, Inc.</u>

4  <u>Tires Products Liability Litigation</u>, 153 F. Supp. 2d 935, 943

5  (S.D. Ind. 2001)(<u>Bridgestone I</u>), in support of its field

6  preemption argument mischaracterizes the holding of that case.

7  In clarifying its earlier dismissal of recall claims, the court

8  in <u>In re Bridgestone/Firestone, Inc., Tires Products Liability</u>

9  <u>Litigation</u>, 256 F. Supp. 2d 884, 899 (S.D. Ind.

10 2003)(<u>Bridgestone II</u>), explained that it had dismissed the

11 plaintiffs' claims in <u>Bridgestone I</u> on the basis of conflict,

12 not field, preemption.  In the words of the court, "[n]othing in

13 the [MVSA] demonstrates a Congressional intent to completely

14 preempt all claims relating to motor vehicle safety."

15 <u>Bridgestone II</u>, 256 F. Supp. 2d at 899.

16     The Court therefore denies Defendant's motion to dismiss on

17 the ground of field preemption.

18     D.  Conflict Preemption

19     Defendant argues for conflict preemption of State

20 injunctive remedies to avoid frustration of Congress'

21 objectives.  In support of its argument, Defendant first asserts

22 that Congress' main goal in enacting the MVSA was to ensure

23 uniform federal oversight of motor vehicle defect notification

24 and correction and then argues that the comprehensiveness of the

25 MVSA and the absence of explicit provision of judicial remedies

26 therein indicates Congressional intent to preclude such

27 remedies.

28                                 16

**United States District Court**
For the Northern District of California

1    Again, because a presumption against preemption applies in

2  this case, Defendant bears the burden of showing that it was

3  Congress' "clear and manifest" intent to preempt State law.  ARC

4  Am. Corp., 490 U.S. at 101.  Were there no presumption against

5  preemption in this case, Defendant would still need to

6  demonstrate "clear evidence of conflict" to support its theory

7  that State law is preempted.  Geier, 529 U.S. at 885.

8    1.  Frustration of Congressional Objective of Uniformity

9    Defendant's first argument for conflict preemption, that

10  allowing Plaintiffs to pursue their State law claims would

11  frustrate the Congressional objective of uniform administration

12  of recalls, mischaracterizes Congress' intent in enacting the

13  MVSA.  As the Second Circuit pointed out in Chrysler Corp. v.

14  Tofany, 419 F.2d 499, 508 (2d Cir. 1969), "[t]he clearest

15  possible expression of legislative purpose is provided in the

16  first section of the Act itself:  'the purpose of this chapter

17  is to reduce traffic accidents and deaths and injuries to

18  persons resulting from traffic accidents.'  15 U.S.C. § 1381."

19  Congressional reports support the conclusion that safety is the

20  primary purpose of the MVSA.

21      In discussing the promulgation of standards, the Senate
        Commerce Committee stated that it intended 'that safety
22      shall be the overriding consideration in the issuance
        of standards under this bill.' [S. Rep. No. 1301 at
23      2714].  The Conference Report which accompanied the
        final version of the Senate bill describes the Act as
24      one 'to provide for a coordinated national safety
        program and establishment of safety standards for motor
25      vehicles in interstate commerce to reduce accidents
        involving motor vehicles and to reduce the deaths and
26      injuries occurring in such accidents.'  Conf. Rep. No.
        1919 at 2731.

27

28                                    17

United States District Court

For the Northern District of California

1   <u>Tofany</u>, 419 F.2d at 508.   "Although Chrysler stresses that

2   Congress decreed uniformity, the clear expression of purpose in

3   section 1381 and the other evidence of legislative intent

4   indicate that the reduction of traffic accidents was the

5   overriding concern of Congress."   <u>Id.</u>

6       Similarly, in <u>Buzzard v. Roadrunner Trucking</u>, 966 F.2d 777,

7   783 (3d Cir. 1992), the Third Circuit held that State common-law

8   tort claims for defective design of an illumination system were

9   not preempted by the MVSA.   The court rejected the defendant's

10  argument that the common law action was preempted because it

11  would frustrate the MVSA's goal of uniformity.   <u>Id.</u>   The court

12  explained:

13          It remains our view, as it was in <u>Pokorny [v. Ford
            Motor Co.</u>, 902 F.2d 116 (3d Cir.), <u>cert. denied</u>, 498
14          U.S. 853 (1990)], that uniformity was merely a
            secondary concern to Congress when it enacted the
15          Safety Act.   Accordingly, uniformity cannot take
            precedence over Congress's primary goal of safety, nor
16          can it defeat Congress's intent, as set out in section
            1397(k) of the Act to permit state common law to
17          develop more stringent design requirements in the
            interest of increased safety.   Strict uniformity may
18          even interfere with the safety goal, thus frustrating
            the Act's purpose.   Because of the differences in
19          geography and population among the states, varying
            standards and requirements may be necessary to achieve
20          the same level of safety in different states.   See
            <u>Tofany</u>, 419 F.2d at 511.   The common law development of
21          those standards is properly left to the courts of those
            states.   Therefore, even though state common law may
22          have some negative effect on uniformity, it is not
            preempted.

23  <u>Buzzard</u>, 966 F.2d 783-84.

24      Thus, the primary congressional objective behind the MVSA

25  is safety.   While legislative history demonstrates a federal

26  interest in uniformity of motor vehicle safety regulation and

27

28                                  18

administration of recalls, uniformity is at best a secondary goal. Allowing consumers to pursue State remedies for a dangerous manifold defect would likely advance the federal interest in highway safety. Under such circumstances, "some negative effect on uniformity," Buzzard, 966 F.2d 783-84, is not sufficient to constitute the "clear evidence of conflict" with congressional goals required by Geier for conflict preemption, much less to overcome the presumption against preemption by demonstrating Congress' "clear and manifest" intent to preempt State law. ARC Am. Corp., 490 U.S. at 101.

Airbag cases, such as Geier, do not support an assertion of conflict preemption due to frustration of the Congressional intent to achieve uniformity because they hold State claims preempted on the basis of an actual conflict with specific, explicitly enunciated safety standards. Instead, "Geier teaches that the implied preemption question requires careful analysis of whether a particular common law claim would conflict with, or stand as an obstacle to accomplishing the purposes of, a particular Safety Act standard. . ." Harris v. Great Dane Trailers, Inc., 234 F.3d. at 400. The Supreme Court's holding in Geier that State airbag claims were preempted was based on a detailed analysis of actual conflict between the claims at issue and a specific federal safety regulation promulgated thereunder. 569 U.S. at 883.

The plaintiffs in Geier claimed that "to be safe, a car must have an airbag." This claim conflicted with the express purpose of a federal regulation authorized by the MVSA, Federal Motor

19

United States District Court
For the Northern District of California

1  Vehicle Safety Standard (FMVSS) 208, which "sought a gradually
2  developing mix of alternative passive restraint devices."  529
3  U.S. at 886.  The <u>Geier</u> Court examined the legislative and
4  regulatory history of FMVSS 208 and concluded that the choice of
5  safety equipment the regulation provided was the result of the
6  Department of Transportation's carefully considered policy
7  decision to allow gradual introduction of safety devices better
8  to meet safety needs and accommodate manufacturers and the
9  public.  <u>Id.</u> at 875-81.  As the result of a considered policy
10 choice, under FMVSS 208, manufacturers had no duty to install
11 airbags at the time they manufactured the plaintiffs' car, yet
12 the <u>Geier</u> plaintiffs' tort claims relied upon precisely such a
13 duty.  <u>Id.</u> at 881.  The Court held that allowing a State law
14 tort claim to proceed under these circumstances would in effect
15 impose a safety standard upon manufacturers different than that
16 imposed by the Department of Transportation's well-considered
17 regulation.  <u>Id.</u>  <u>Geier</u> is distinguishable because there is no
18 substantive regulation at issue in the instant case nor is there
19 language in the MVSA or its legislative history demonstrating
20 that exclusive federal agency administration of injunctive
21 remedies in the field of motor vehicle safety was the considered
22 policy choice of Congress.
23        2.  Interference with the Goal of Providing an Exclusive
              Federal Remedy
24
25     Defendant contends that State law remedies for motor vehicle
26 defects are conflict-preempted because the discretion vested in
27 the Secretary of Transportation under the MVSA and the scope and
28
                                  20

1  detail of the Act's recall provisions demonstrate Congress'
2  intent that these provisions be the exclusive avenue to a recall
3  or equivalent remedy.  Defendant asserts that, by not including
4  a judicially administered remedial scheme under the MVSA,
5  Congress indicated its intent that agency action should be
6  mandatory in the first instance and that judicial intervention
7  into the administrative scheme should not be allowed.  Defendant
8  argues that Plaintiffs' claim, which it characterizes as a claim
9  for a recall, frustrates congressional objectives because it
10 conflicts with the methods established in the recall provisions
11 of the MVSA.

12     As discussed previously, Plaintiffs do not necessarily seek
13 a court-initiated recall.  The plain language of Plaintiffs'
14 complaint indicates that they seek an unspecified injunctive
15 remedy possibly consisting of uniform notification or inclusion
16 of individual California vehicle owners in Defendant's voluntary
17 fleet recall already underway.  The scope of the remedy that
18 Plaintiffs seek is also limited by the reach of the UCL in that
19 they purport to represent only California owners of the subject
20 vehicles.

21     Defendant argues that § 30162 of the MVSA supports conflict
22 preemption on the basis of exclusive delegation.  Section §
23 30162 provides in relevant part:

24        (a) . . . any interested person may file a petition
          with the Secretary of transportation requesting the
25        Secretary to begin a proceeding . . . (2) to decide
          whether to issue an order under section 30118(b) of
26        this title.

27

28                                 21

United States District Court

For the Northern District of California

Section 30118(b) authorizes the Secretary to decide, after any interested persons have had the opportunity to present information and express their views, whether a defect exists. If the Secretary decides there is a defect, he or she is authorized to order manufacturers to notify consumers and remedy it.  49 U.S.C. § 30118 (b).  Neither of these sections contains mandatory language to the effect that a petition to the Secretary is a consumer's only means to seek remedies for defective equipment, nor does Defendant point to any such language elsewhere in the MVSA.  The plain language of the MVSA indicates the opposite.

As discussed previously, the savings clause at 49 U.S.C. § 30103(d) specifically states that a remedy under § 30118 "is in addition to other rights and remedies under other laws of the United States or a State."  Defendant argues that this savings clause cannot preserve the remedy of recalls because that remedy did not exist prior to the 1974 amendments to the MVSA. Contrary to Defendant's assertion, however, case law shows that, prior to enactment of the 1974 recall amendments to the MVSA, courts enforced State-law-based injunctive remedies similar to recalls in the field of vehicle safety.  <u>Noel</u>, 342 F. 2d at 237, 242; <u>Braniff</u>, 411 F.2d at 453.  As discussed above, the plain meaning of the language in the savings clause at 49 U.S.C. § 30103(d) is that such State law remedies are preserved.

The cases Defendant cites in support of its conflict preemption arguments do not withstand scrutiny.

22

United States District Court
For the Northern District of California

1   <u>Bridgestone I</u> is distinguishable on its facts.  <u>Bridgestone</u>
2   <u>I</u> found conflict preemption on the basis of frustration of
3   Congress' purpose under the MVSA of providing exclusive
4   administration of recalls through the NHSTA.  In <u>Bridgestone I</u>,
5   the plaintiffs purported to represent "[a]ll persons and
6   entities in the United States who own or lease or owned or
7   leased vehicles that are or were equipped with" certain
8   Firestone tires.  <u>Bridgestone I</u>, 153 F. Supp. 2d at 938.  Thus,
9   any injunctive remedy the <u>Bridgestone I</u> court might have
10  provided would have affected a nationwide group of vehicle
11  owners.  As discussed above, Plaintiffs in the instant case
12  represent only California owners of the subject vehicles.  If
13  this Court granted some form of injunctive relief to Plaintiffs,
14  that relief would be limited in scope to California vehicle
15  owners.  Further, the <u>Bridgestone I</u> plaintiffs asked the court
16  to make an initial declaration that the tires in question were
17  "unreasonably dangerous and defective."  The <u>Bridgestone I</u> court
18  based its decision in part on what it stated was Congress'
19  intent to grant exclusive discretion to the NHSTA to determine
20  when a defect is dangerous enough to warrant notification or a
21  remedy.  <u>Bridgestone I</u>, 153 F. Supp. 2d at 945.

22      Plaintiffs in the instant case do not request the Court to
23  make such a declaration regarding the manifolds in question.
24  Presumably, this is in part because Defendant allegedly has
25  already conceded the danger of the manifold defect and
26  instituted a partial recall.  In <u>Bridgestone I</u>, there was no
27  recall underway; the plaintiffs asked the court to initiate one.
28

                                   23

United States District Court
For the Northern District of California

1    <u>Id.</u>  Here, the gravamen of Plaintiffs' complaint is that the

2    recall Defendant has already initiated simply is not broad

3    enough because it does not include individual consumers.  Should

4    Plaintiffs' allegations be borne out, Defendant's failure to

5    include individual consumers in its recall may be enjoined as

6    unfair and fraudulent concealment and an exclusionary practice.

7    Such an order would not constitute a court-initiated recall.

8        In addition to being distinguishable on its facts,

9    <u>Bridgestone I</u> is based upon reasoning this Court finds

10   unpersuasive.  The court in <u>Bridgestone I</u> defined the field in

11   question narrowly as recalls and found that the presumption

12   against preemption did not apply because "States have never

13   assumed a significant role in <u>recalls</u> related to vehicle

14   safety."  <u>Id.</u> at 942.  On this basis, the <u>Bridgestone I</u> court

15   analogized to <u>Chicago & N.W. Transp. Co. v. Kalo Brick & Tile

16   Co.</u>, 450 U.S. 311, 331-32 (1981), and <u>Int'l Paper Co. v.

17   Ouellette</u>, 479 U.S. 481, 500 (1987), cases which held laws

18   conflict-preempted because "the administrative systems in place

19   for managing the matters at issue  . . . were sufficiently

20   comprehensive that any state law purporting to act in the area

21   was a serious interference with the achievement of the full

22   purposes and objectives of Congress."  <u>Bridgestone I</u>, 153 F.

23   Supp. 2d. at 944.  The <u>Bridgestone I</u> court applied too broadly

24   the conflict preemption analysis in these cases.

25       Although <u>Int'l Paper</u> and <u>Chicago & N.W. Transp. Co.</u>

26   concluded that a comprehensive administrative scheme and the

27   granting of significant authority to a federal agency were

28                                24

United States District Court

For the Northern District of California

1  sufficient evidence of congressional intent upon which to base a
2  holding of conflict preemption, neither case addressed a
3  situation in which the presumption against preemption applied.
4  The Supreme Court in those cases, thus, did not require "clear
5  evidence of conflict" in order to hold the State laws in
6  question preempted.  Both Int'l Paper and Chicago & N.W. Transp.
7  Co. dealt with substantive areas of law historically subject to
8  federal control and this fact was key to the Court's finding of
9  preemption in both instances.

10      Int'l Paper dealt with a Vermont common law nuisance claim
11 brought against a polluting paper company in New York.  479 U.S.
12 at 481.  The Court held the claim preempted due to its conflict
13 with the Clean Water Act (CWA).  Int'l Paper, 479 U.S. at 500.
14 That interstate pollution is inherently a realm in which federal
15 authority controls was crucial to the Int'l Paper Court's
16 preemption holding.  As the Court stated, "[i]n light of this
17 pervasive regulation and the fact that the control of interstate
18 pollution is primarily a matter of federal law,[] it is clear
19 that the only state suits that remain available are those
20 specifically preserved by the Act."  Int'l Paper, 479 U.S. at
21 492 (citation omitted).  The Court did not look at the
22 comprehensiveness of the regulatory scheme in isolation, but
23 rather evaluated its significance in light of traditional
24 federal control over the substantive area of law in question.

25      Chicago & N.W. Transp. Co. dealt with interstate commerce,
26 also an area of traditional federal authority, and addressed
27 conflict preemption of a shipper's State law claim against a

28

United States District Court

For the Northern District of California

railroad for inadequate service.  450 U.S. at 313-14.  In that case, the Interstate Commerce Commission (ICC) had approved the defendant railroad's application for abandonment of the rail line in question.  Id.  In holding the State law claim conflict-preempted, the Court stated that

> There can be no divided authority over interstate commerce, and . . . the acts of Congress on that subject are supreme and exclusive. . . . Consequently, state efforts to regulate commerce must fall when they conflict with or interfere with federal authority over the same activity.

Id. at 318-19 (internal quotations and citations omitted). Chicago & N.W. Transp. Co. is thus inapposite to this case, in which an area of historical State primacy is at issue and no agency action has been alleged.

Int'l Paper, and Chicago & N.W. Transp. Co. demonstrate that whether the area in question is traditionally an area of State or federal regulation affects the weight to be given to factors such as comprehensiveness or delegation of authority in determining whether a State law is conflict-preempted because it interferes with a congressional goal.  In Int'l Paper, where no presumption against preemption applied, comprehensiveness of the regulatory scheme weighed heavily.  This Court disagrees with the Bridgestone I court's assignment of such weight to the comprehensiveness of the MVSA.  Because motor vehicle safety is an area of traditional State regulation, the comprehensiveness of a federal regulatory scheme in this area does not weigh as heavily as it did in Int'l Paper and Chicago & N.W. Transp. Co.

United States District Court

For the Northern District of California

1    _Locke_, as discussed above, is a conflict preemption case and

2    therefore inapposite Defendant's field preemption argument.  It

3    is equally inapposite to Defendant's conflict preemption

4    argument, however, because, like _Int'l Paper_ and _Chicago & N.W._

5    _Transp. Co._, it dealt with an area of traditional federal

6    primacy so the presumption against preemption did not apply.  As

7    the Court stated in _Locke_, in the field of maritime commerce,

8    "there is no beginning assumption that concurrent regulation by

9    the State is a valid exercise of its police powers" because the

10   federal law in question regulates an area which "Congress has

11   legislated . . . from the earliest days of the Republic."

12   _Locke_, 529 U.S. at 108-09.

13   _Crosby v. Nat'l Foreign Trade Council_, 530 U.S. 363 (2000)

14   is inapposite for much the same reason.  _Crosby_ dealt with

15   conflict between State and federal laws providing sanctions

16   against Burma.  530 U.S. 363, 370-71 (2000).  Foreign relations

17   is an area traditionally regulated by the federal government,

18   not the States.  _United States v. Belmont_, 301 U.S. 324, 331

19   (1937).  In _Crosby_, therefore, the Court did not find it

20   necessary to address the issue of the presumption against

21   preemption.  _Crosby_, 530 U.S. at 374 n. 8.

22   The remaining two recall cases that Defendant cites in

23   support of its conflict preemption argument are no more

24   persuasive.  _Lilly v. Ford Motor Co._, 2002 WL 84603 (N.D. Ill.

25   Jan. 22, 2002), followed _Bridgestone I_ and is distinguishable on

26   its facts and unpersuasive in its reasoning for the same reasons

27   as that case.  _Namovicz v. Cooper Tire & Rubber Co._, 2001 WL

28

27

United States District Court

For the Northern District of California

327886 (D. Md. 2001), is inapposite because it held claims for injunctive relief field-preempted, not conflict-preempted.

The remainder of Defendant's authority does not deal with recalls and is also distinguishable. <u>Nathan Kimmel, Inc. v. DowElanco</u>, 275 F. 3d. 1199 (9th Cir. 2002) and <u>Buckman Co. v. Plaintiff's Legal Comm.</u>, 531 U.S. 341 (2000) deal with fraud on regulatory agencies. In both cases, "the existence of . . . federal enactments [was] a critical element" of the plaintiffs' claims and therefore such claims should be dealt with under the relevant federal regulatory scheme. <u>Nathan Kimmel</u>, 275 F.3d at 1206 (quoting <u>Buckman</u>, 531 U.S. at 353). This analysis is inapposite to the instant case because Plaintiffs neither base their claims on the MVSA nor allege "fraud-on-the-agency" by Defendant.

<u>Heckler v. Chaney</u> does not deal with conflict preemption at all, but rather stands for the proposition that an agency's decision not to enforce a regulation is not subject to judicial review. 470 U.S. 821, 831 (1985). Plaintiff has not alleged that the NHTSA has considered any alleged violation of any federal regulation and decided not to pursue enforcement. Defendant makes an assertion to this effect in its reply, but provides no supporting information. At this stage of the proceeding, Defendant's unsupported allegation of an NHTSA decision is not a sufficient basis upon which to invoke the bar to judicial review discussed in <u>Heckler</u> as a basis for dismissal.

Defendant thus does not carry its burden to overcome the

28

United States District Court
For the Northern District of California

1  presumption against preemption with regard to its conflict

2  preemption arguments because it fails to demonstrate a

3  sufficiently specific "actual conflict" with MVSA provisions,

4  subsidiary regulations, or with congressional objectives for the

5  MVSA.  Neither Defendant's argument for preemption based on

6  frustration of the congressional objective of uniformity nor its

7  assertion of conflict due to interference with the comprehensive

8  scheme of the MVSA and its delegation of administrative

9  authority demonstrates the "clear and manifest" intent of

10  Congress as required where, as here, the presumption against

11  preemption applies.  ARC Am. Corp., 490 U.S. at 101.  Nor do

12  these claims meet the less stringent requirement of showing

13  "clear evidence of conflict" required under Geier to find

14  preemption.  The Court therefore denies Defendant's motion for

15  dismissal of Plaintiffs' UCL claim on the ground of conflict

16  preemption.

17                              CONCLUSION

18       For the foregoing reasons, Defendant's motion to dismiss

19  Plaintiffs' UCL claim is DENIED.

20       IT IS SO ORDERED.

21

22  Dated: 3/24/04                      /s/ CLAUDIA WILKEN
                                        CLAUDIA WILKEN
23                                      United States District Judge

24

25

26

27

28                                   29