IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Patricia A. Daffin | : | |
| | : | Case No. C-1-00-458 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING |
| Ford Motor Co. | : | PLAINTIFF'S MOTION FOR |
| | : | CLASS CERTIFICATION |
| Defendant | : | |

This matter comes before the Court on Plaintiff's Motion for Certification of a State-Wide Class. (Doc. #66.)  Plaintiff Patricia Daffin seeks to certify a state-wide class of persons who own or lease 1999 or 2000 model Mercury Villagers.  She alleges that these vehicles contain a defective part, for which Defendant Ford Motor Company ("Ford") should be held accountable.  Having conducted a hearing on this matter on January 7, 2004 and considered the arguments of the parties, the Court **GRANTS** Plaintiff's motion for the reasons set forth below.

I.     FACTUAL BACKGROUND

Plaintiff Patricia Daffin owns a 1999 Mercury Villager.  In January of 2000 the gas pedal began to lock in place periodically.  To release the sticking pedal, Daffin had to strike it forcefully.  She took the vehicle to her Ford dealer, where a representative indicated that he believed the accelerator's throttle body assembly to be the problem.  The throttle body assembly is the device or series of devices that control the fuel/air mixture required upon depression of the

accelerator pedal.  For several months the dealership waited for a replacement part.  It arrived in

May of 2000, and the dealer replaced the part.  In March of 2001, however, Daffin began

experiencing the same sticking problem.  Daffin has taken her car to the dealer repeatedly and

has recently had her fifth throttle body assembly installed in the car.

Daffin alleges that the throttle body assembly in all 1999 and 2000 Mercury Villagers is

defective.  She further alleges that Ford is aware of this defect and the hazards it poses.  Finally,

she alleges that when persons complain to Ford about sticking accelerator pedals, which are

caused by the defective throttle body assembly, Ford either does nothing or replaces the throttle

body assembly with an identical, defective part.  Daffin brought suit against Ford in state court,

and Ford removed the action to this Court.

## II.   ANALYSIS

To maintain this suit as a class action, a plaintiff must satisfy each element of Federal

Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy – and one of

Rule 23(b).  Here, Daffin seeks to maintain this class under Rule 23(b)(2), which is appropriate

where "the party opposing the class has acted or refused to act on grounds generally applicable

to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief

with respect to the class as a whole."  Alternatively, she argues that certification is appropriate

under Rule 23(b)(3) because common legal or factual questions predominate and a class action is

the superior method for adjudicating claims.

### A.   Class Definition

Plaintiff seeks to certify the following class:

All Ohio residents who lease or own a model year 1999 or 2000 Villager,
excluding the defendant, any entity that has a controlling interest in defendant

along with defendant's employees, officers, directors, legal representatives and all of their respective heirs, successors, and assignees and any entity alleging a personal injury claim against Ford arising from the facts of this case.

(Doc. #66 at 2.)

### B.    Rule 23(a)

#### 1.    Numerosity

Numerosity is satisfied when the class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a).  The proposed class includes thousands of individuals. Ford disputes numerosity by arguing that Daffin's claims are not typical of other owners of Villagers and that the number of putative class members with claims like Daffin's is so small as to fail the numerosity requirement.  Ford's numerosity argument thereby hinges on Daffin's failure to satisfy the typicality requirement.  Assuming, arguendo, that typicality can be satisfied, Daffin has identified over a thousand putative class members.  Joinder of so many persons is clearly impracticable, and Daffin therefore satisfies the numerosity prerequisite to certification.

#### 2.    Commonality

There are questions of law or fact common to the class.  Common questions of fact include, for example, the manner in which Mercury Villager throttle bottle assemblies operate and whether the parts are defective.  Defendant does not dispute Plaintiff's satisfaction of the commonality criterion.

#### 3.    Typicality

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996) (internal

citation omitted).  The common course of conduct Daffin alleges is 1) installation of a defective

throttle body assembly and 2) Ford's refusal to fix the problem upon being alerted to the defect.

Daffin and Ford agree that not every owner of a 1999 or 2000 Mercury Villager has experienced

the accelerator sticking; indeed, most have not.  The "injury" suffered by owners who have not

experienced sticking must therefore be the economic injury of the diminution in value of the car

caused by a defective throttle body.  Daffin's claim is thus typical of owners who have

experienced sticking accelerators and owners who have not experienced sticking accelerators

only so long as Ohio law allows recovery for purely economic loss resulting from a defective

Villager being worth less than a defect-free Villager.

Daffin advances four theories of liability: negligent design and manufacture, breach of

implied warranty, breach of express warranty, and violation of the Ohio Consumer Sales

Practices Act ("CSPA").  Although the law is in a state of flux,[1] Ohio law currently allows tort

actions for breach of warranty between non-commercial consumers and product suppliers with

whom they are not in privity even where economic loss is the only injury alleged.  See LaPuma

v. Collingwood, 661 N.E.2d 714, 716 (Ohio 1996).  Likewise, under a contract claim for breach

---

[1]Inglis v. American Motors Corp., 209 N.E.2d 583, 3 Ohio St.2d 132 (Ohio 1965) and
Iacono v. Anderson Concrete Corp., 326 N.E.2d 267, 42 Ohio St.2d 88 (1975) are the two major
cases allowing tort recovery for economic loss absent privity.  In Chemtrol Adhesives, Inc. v.
American Mfrs. Mut. Ins. Co, 537 N.E.2d 624, 42 Ohio St.3d 40 (Ohio 1989), the Ohio Supreme
Court limited Inglis and Iacono by holding that if commercial parties have a contractual
relationship, they may not sue in strict liability or implied warranty for their economic damages
but must instead rely on UCC contractual remedies.  See Chemtrol 537 N.E.2d at 635.  The Sixth
Circuit has recently commented that as both Inglis and Iacono are based on Santor v. A & M
Karagheusian, Inc., 207 A.2d 305, 44 N.J. 52 (N.J. 1965), which has subsequently been
overruled, the Ohio Supreme Court has not explicitly overruled its decision to allow tort
recovery for economic loss absent privity but has cast doubt as to whether such decisions would
be upheld in the future.  See HDM Flugservice GmbH v. Parker Hannifin Corp., 332 F.3d 1025,
1028-29 (6th Cir. 2003).

of express warranty, a buyer may recover the difference in value of the goods as accepted and the goods as warranted.  Ohio Rev. Code § 1302.88.  Daffin brings claims under theories of both express and implied warranty.  However, "[w]here there are express warranties alleged as to a given subject matter, fact, or proposition there is no need for the law to imply a warranty." Inglis, 209 N.E.2d 583, 588 (Ohio 1965); Rogers v. Toni Home Permanent Co., 147 N.E.2d 612, 616, 167 Ohio St. 244 (Ohio 1958).  Since Daffin has an express warranty from Ford, she is not typical of plaintiffs who would require the Court to imply a warranty.

Although economic damages are available under an express warranty theory, Ford raises another typicality problem regarding Daffin's warranty claim.  Ford argues that Daffin's dealer may have made representations upon which Daffin relied that are not typical of representations made to other class members.  Since Daffin received the standard written warranty that accompanies Ford vehicles, however, her reliance on the representations contained in the warranty is typical of other class members.  With respect to her express warranty claim, Daffin has satisfied the typicality inquiry for a class of individuals who purchased vehicles new from dealers with Ford's written express "Bumper to Bumper" warranty or individuals who purchased used Villagers with remaining warranty coverage, who brought their vehicles in for Ford to repair, and whose vehicles Ford failed to repair according to warranty.

Daffin also brings a claim under the Ohio CSPA.  The CSPA applies only to transactions that are "for purposes that are primarily personal, family or household."  Ohio Rev. Code § 1345.01(A).  Ford disputes Daffin's typicality because some evidence exists that she purchased her Villager in connection with her fiancé's business; evidence also exists that Daffin purchased the Villager for personal use.  As this is a question of fact, the issue is not properly decided here.

Should Daffin be considered a non-commercial consumer, her CSPA claim would be typical of those who purchased their vehicles for personal use. Notwithstanding, as discussed above, Daffin has satisfied the typicality prerequisite for at least one of her claims.

### 4. Adequacy

To satisfy the adequacy requirement, "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." In re Am. Med. Sys., Inc., 75 F.3d at 1083 (citation omitted). Ford does not dispute that Daffin is represented by qualified counsel; instead Ford disputes that Daffin shares a common interest with unnamed putative class members. Ford argues that the internal conflict between potential class members who have experienced accelerator sticking and those who have not experienced accelerator sticking poses an adequacy as well as typicality problem. Ford argues that since most putative class members have not experienced accelerator sticking, Daffin does not have the same injury as most class members and is consequently an inadequate representative of the class under Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) ("class representative must . . . possess the same interest and suffer the same injury as the class members") (citation and internal quotation marks omitted).

A class representative cannot have interests that conflict with members of the class, and Ford asserts that by including in the class owners who have experienced no problem with the allegedly defective part, Daffin dilutes the potential of showing a manifest defect, thereby harming the putative class members who have experienced accelerator sticking. As discussed above, however, economic loss, the injury that Daffin claims, is sufficiently typical to support a

warranty cause of action.  Proving a manifest defect, therefore, is a common interest of all potential class members since the loss of the value of the bargain would be the loss suffered by all class members.

Ford contends that because Daffin has repeatedly driven her vehicle after recognizing an alleged safety defect and because she has admittedly never read her maintenance guide, she is an inadequate representative because her individual claims are exposed to unique defenses.  While Daffin's actions may make her claims more suspect, they have no bearing on whether a pervasive defect that lowers the economic value of the car exists.  Nor do they affect Daffin's claim that Ford refused to honor its warranty by "pretending" to fix the defect.

Ford also argues that Daffin is an inadequate representative because should the throttle body not be found to be defective, collateral estoppel will bar class members from bringing future claims of property damage or personal injury.  Collateral estoppel prohibits relitigation of issues in a subsequent action between the same parties or those in privity.  See Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd., 692 N.E.2d 140, 144, 81 Ohio St.3d 392, 395 (Ohio 1998) (collateral estoppel precludes relitigation of the same issues between the same parties or those in privity whether the causes of actions are the same or different).  Ford is correct in its collateral estoppel analysis, but such adequacy issues are resolved by giving class members notice and an opportunity to opt out such that they may preserve their claims for a later action involving an injury more severe than economic loss.

As Daffin has satisfied the numerosity, commonality, typicality and adequacy requirements for her express warranty claim, she has fulfilled the prerequisites of Rule 23(a).

**C.     Rule 23(b)(2)**

Ms. Daffin argues that the Court should certify this action under Rule 23(b)(2) because she seeks primarily declaratory or injunctive relief. (Doc. #75 at 3.) Assessing the strength of this argument requires resolving whether this suit is primarily for money damages.

**2. Suit for Damages**

The Court must consider whether the instant suit is primarily one for money damages. It is well settled that "Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir. 2002) (quoting Rules Advisory Committee's Notes, 39 F.R.D. 69, 102 (1966)); see also Hoffman v Honda of Am. Mfg., Inc., 191 F.R.D.530, 531 (S.D. Ohio 1999). In Coleman, the Sixth Circuit held that in order to determine whether to certify a class under (b)(2) or (b)(3), a court must determine when one form of relief predominates over another. Id. at 447. The Sixth Circuit noted that "the underlying premise of (b)(2) certification – that the class members suffer from a common injury that can be addressed by classwide relief – begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries." Id. at 448 (quoting Eubanks v. Billington, 110 F.3d 87, 95 (D.C. Cir. 1997)). Finally, the Coleman court held that whether injunctive relief predominates depends on "whether the compensatory relief requested requires individualized damages determination or is susceptible to calculation on a classwide basis." Id. The Sixth Circuit did not fully resolve the issue of whether money damages are recoverable in a (b)(2) suit because in Coleman it found that money damages predominated.

The Fifth Circuit has held that certification does not turn on the subjective intentions of the class representatives. In the Matter of Monumental Life Ins. Co., 365 F.3d 408 (5th Cir.

2004) (allowing monetary damages in cases certified under 23(b)(2)).  The Fifth Circuit held that

(b)(2) certification is unavailable "where the need to address the merits of individual claims

requires separate hearings" because then "the efficiency gained by class litigation is lost."

Monumental Life, 365 F.3d at 415-16 (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th

Cir. 1998)).  The Second Circuit has adopted a similar approach, instructing district courts to

consider the evidence and arguments of counsel at the class certification hearing and then

exercise discretion to certify a (b)(2) class if (1) injunctive or declaratory relief is the

predominant relief sought and (2) class treatment would be efficient and manageable.  See

Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001).  The real

question is therefore: do money damages predominate?

      In her First Amended Complaint (doc. #34), Ms. Daffin seeks incidental and

consequential damages on her first two causes of action (breach of implied and express

warranty), compensatory damages on her third and fourth causes of action (negligent design and

manufacture), and compensatory and treble damages on her fifth cause of action (consumer

protection statute).  This recitation seems to indicate that this is an action primarily for damages;

it is not clear that Daffin can convert the nature of the action in the course of moving for and

supporting class certification by (1) merely asserting that she primarily wants a declaratory order

and (2) offering to drop any requests for damages that would hinder certification.  Daffin puts

particular emphasis on the fact that both the Ohio CSPA and the express warranty claims

explicitly contemplate the possibility of injunctive relief.  The question at hand, however, is if

such suits fit within the scope of Federal Rule 23(b)(2), not whether injunctive relief may be

available under the statute or common law.

With respect to her assertion that she primarily wants a declaratory order, Professors Wright and Miller explain that "an action seeking a declaration that certain conduct constitutes a breach of conduct would not qualify under Rule 23(b)(2) because the effect simply is to lay the basis for a damage award rather than injunctive relief." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1775 (2d ed. 1986). Second, Daffin *supports* diversity jurisdiction in this Court, agreeing that the amount in controversy in this case exceeds $75,000 for Daffin and other plaintiffs. Third, Hoffman, Allison, Robinson, and Monumental Life all consider this issue in the context of a civil rights action; Although not limited to civil rights suits, 23(b)(2) was plainly designed for to address them rather than products liability ones.[2] Finally, the injury Daffin alleges is suffered by all class members is economic injury, which is most logically rectified by money damages.

At oral argument, when questioned about a 23(b)(2) certification for a product liability case, Daffin's counsel pointed the court toward In re Telectronics Pacing Sys., Inc., 164 F.R.D. 222, 229 (S.D. Ohio 1995) (medical monitoring class certified under 23(b)(2)) (Spiegel, J.) That 23(b)(2) class, however, was decertified, see In re Telectronics Pacing Sys., Inc., 168 F.R.D 203, 219 n.17 (S.D. Ohio 1996) and recertified under 23(b)(1) and 23(b)(3), see In re Telectronics Pacing Sys., Inc., 172 F.R.D. 271, 285-87 (S.D. Ohio 1997). While medical monitoring classes have been certified under 23(b)(2), a medical monitoring class that is appropriate for 23(b)(2) certification is not comparable to an automobile defect product liability class because of the different types of relief ultimately sought by the class.

---

[2]James v. City of Dallas, Texas, 254 F.3d 551, 567 n. 16 (citing the Rules Advisory Committee's Notes, 39 F.R.D. 69, 102 (1966)); Barnett v. W. T. Grant Co., 518 F.2d 543, 547 (4th Cir. 1975); Fujishima v. Board Of Education, 460 F.2d 1355, 1360 (7th Cir. 1972).

In <u>Day v. NLO, Inc.</u>, 144 F.R.D. 330 (S.D. Ohio 1992), <u>rev'd on other grounds</u>, 5 F.3d

154 (6th Cir.1993), Judge Spiegel offers a cogent distinction between medical monitoring claims

seeking predominantly injunctive relief in the form of a court-supervised program and medical

monitoring claims seeking predominantly monetary relief in the form of compensatory damages.

Judge Spiegel held that:

> Relief in the form of medical monitoring may be by a number of means. First, a court may simply order a defendant to pay a plaintiff a certain sum of money. The plaintiff may or may not choose to use that money to have his medical condition monitored. Second, a court may order the defendants to pay the plaintiffs' medical expenses directly so that a plaintiff may be monitored by the physician of his choice. Neither of these forms of relief constitute injunctive relief as required by Rule 23(b)(2).
> However, a court may also establish an elaborate medical monitoring program of its own, managed by court-appointed court-supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data produced is utilized for group studies. In this situation, a defendant, of course, would finance the program as well as being required by the Court to address issues as they develop during the program administration. Under these circumstances, the relief constitutes injunctive relief as required by Rule 23(b)(2).

<u>Day</u>, 144 F.R.D. at 335-36.  <u>See also</u> <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 131-32

(3d Cir. 1998).  This helpful explanation makes clear why Ms. Daffin's demand for a court-

ordered lifetime warranty is not predominantly injunctive in nature.  Daffin is asking for either of

the first two forms of relief described by Judge Spiegel in <u>Day</u>.  She has suggested that either the

Court may order defendant's to pay for the class members' throttle replacement costs directly[3] or

to pay plaintiffs a sum of money that the plaintiff may or may not choose to use to finance

throttle repairs.[4]  This so-called "injunctive relief" clearly does not fit within the confines of

---

[3]<u>See</u> doc. #66 at 9 n.48.

[4]<u>See</u> doc. #66 at 9 n.48.

injunctive relief as it pertains to medical monitoring, the example of 23(b)(2) product liability class certification that Daffin has offered. Daffin's proposed relief is not a court-supervised diagnostic monitoring for curative and research purposes but a cost-shifting from consumer to Ford. Such relief is more properly considered under the rubric of compensatory and consequential damages rather than that of injunctive relief. Unsurprisingly, Daffin has failed to direct this Court to any automobile defect case certified under (b)(2). Class certification under 23(b)(2) is therefore inappropriate.

### D.    23(b)(3)

As an alternative to certification under 23(b)(2), Daffin seeks certification under Rule 23(b)(3). "Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable." Amchem, 521 U.S. at 615. Certification under 23(b)(3) requires a showing that questions of law or fact common to the class predominate over individual issues and that a class action is superior to other available methods of adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3). Ford contends that Daffin cannot meet the stringent requirements of certification under 23(b)(3) because common issues do not predominate over individual questions and because a class action is not superior to other available methods of adjudicating the controversy.

### 1.    Common Issues Predominate

The predominance inquiry subsumes the less stringent commonality inquiry, but involves the same considerations. Of most significance in this suit are the issues of 1) whether the throttle body assembly in all 1999 and 2000 Villager is identical and defective, 2) whether the defect

reduces the value of the car, and 3) whether Ford breached the terms of its express warranty.

This case does not suffer from the same predominance flaws as those exhibited in Amchem.  In

Amchem, class members with different histories were exposed to different products over

different lengths of time, in different ways, all of which made for a very difficult class resolution

of the question of causation.  Amchem, 521 U.S. at 624.  Here, if it is proven that the throttle-

body assemblies are identical, class members will all have the same piece of equipment.  Ford

argues that the issue of causation is inherently individualized because the vast majority of class

members have not experienced the accelerator sticking and because there are "a number of other

factors unrelated to the throttle body that can cause accelerator sticking . . . . " (Doc. #73 at 34.)

The alleged injury, however, is not accelerator sticking but economic loss resulting directly from

the allegedly defective piece of equipment.  The causation question is therefore vastly simplified

and does not suffer the infirmities argued by Ford.  The Court finds that the three issues above

predominate over individual issues and that Daffin has satisfied the predominance inquiry.

        **2.**       **Superiority**

     Daffin seeks to certify a class of thousands of plaintiffs seeking relief for a defective

throttle body that, for most, has not yet manifested itself in the form of sticking accelerators.

Ford argues that class treatment is not the superior method of adjudicating the controversy

because it may compensate those who have not experienced accelerator sticking, leading to

excess compensation for uninjured buyers.  (Doc. #73 at 46.)  As discussed above, however, the

injury alleged is economic loss[5], an injury recognized by Ohio law.  If Daffin proves liability,

---

[5]Whether or not plaintiffs experience accelerator sticking and the frequency of that sticking may go to whether economic injury was, in fact, suffered, but such sticking is not itself the injury at issue.

those owners who experience economic loss but no accelerator sticking are not "uninjured" and will not receive excess compensation because they will, in fact, have suffered economic injury. Whether those owners have truly experienced economic loss is a different question, one not properly decided at this juncture. It hardly seems likely that asking each injured consumer to prosecute his or her own action – even if they would be entitled to attorney fees – is a superior method of adjudicating the controversy.

Ford also argues that petitioning the National Highway Traffic Safety Administration ("NHTSA") is a superior method of adjudicating the controversy. The Motor Vehicle Safety Act, 49 U.S.C. § 30101 <u>et seq.</u>, gives the National Highway Traffic and Safety Administration the authority to investigate complaints concerning automobile defects and to order a recall where appropriate. The Safety Act establishes a mechanism through which persons can petition NHTSA to investigate automobile defects and order recalls. The cases cited by Ford, however, allow that "[t]he Court recognizes that the Motor Vehicle Safety Act and NHTSA itself do not in any way preempt a plaintiff's right to bring common law claims against the manufacturer of an allegedly defective part." <u>Chin v. Chrysler Corp.</u>, 182 F.R.D. 448, 464 (D.N.J. 1998); <u>see also</u> <u>In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.</u>, 174 F.R.D. 332, 353 (D.N.J. 1997). <u>Chin</u> and <u>Ignition Switch</u> discuss NHTSA's possible superiority in the context of a nationwide class analyzing numerous claims under the laws of 52 jurisdictions. This class deals with few claims, analyzed only under Ohio law.

Finally, Ford argues that Daffin has not yet offered a workable trial plan. It is true that Daffin offers a trial plan that erroneously equates the finding of a defect with an automatic finding of liability, but this flaw in legal reasoning does not mean that the trial plan is unworkable. With few claims at issue, the jury may determine what economic loss, if any, has

been suffered by the class.  For the reasons set forth above, the Court finds that Daffin has

satisfied the superiority inquiry and fulfilled the prerequisites for 23(b)(3) certification.

### III.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for certification of a

state-wide class (doc. #66).

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge