THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICIA DAFFIN,<br><br>       Plaintiff,<br><br>  v.<br><br>FORD MOTOR COMPANY,<br><br>       Defendant. | Case No. C-1-00 458<br><br>Judge Dlott<br><br>**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION** |

Defendant Ford Motor Company ("Ford") respectfully requests that this Court reconsider and vacate its July 15, 2004 Order Granting Plaintiff's Motion For Class Certification ("Order").

The Order grants the certification motion without modifying the plaintiff's proposed class definition. Thus, the Order on its face certifies an express warranty class that includes Ohio residents who own or lease 1999 and 2000 Mercury Villagers, including: 1) those who never experienced any malfunction and never sought repair or replacement during the period their vehicles were under warranty ("non-incident owners"); and 2) owners (like Ms. Daffin) who experienced an incident and had their vehicles serviced under warranty ("incident owners"). The Court's Order, contains at least two manifest errors of law.[1]

The *first* error is the Court's assumption that non-incident owners can pursue a breach of express warranty claim. Ohio law flatly forbids this result; non-incident owners have no claim for breach of express warranty. *See Goddard v. General Motors Corp.*, 396 N.E.2d 761 (Ohio 1979). Because the claims of non-incident owners would have to be dismissed on the merits

---

[1] Certifying a class outside the permissible legal framework of Rule 23 constitutes reversible error. *See, e.g., Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446-50 (6th Cir. 2002) (vacating and remanding grant of class certification motion after concluding that compensatory damages requested by plaintiff class were not recoverable on a class-wide basis).

either upon a summary judgment motion before trial, or after appeal, *e.g., Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421, 424-25 (6th Cir. 1998) (reversing verdict for plaintiff when based on incorrect legal ruling as to Ohio contracts law), certification of these claims is not only erroneous, it will waste judicial resources and engender confusion among class members who will receive notice that their non-existent claims are being adjudicated in this proceeding.

The ***second*** error is the Court's conclusion that incident owners can pursue their breach of express warranty claims on a classwide basis. Under Ohio law, whether any incident owner is entitled to damages requires a factual inquiry that "must be based on objective evidence of the buyer's idiosyncratic tastes and needs." *McCullough v. Bill Swad Chrysler-Plymouth, Inc.,* 449 N.E.2d 1289, 1294 (Ohio 1983). Because the highly individualized liability and damages elements of the incident owners' claims necessarily predominate over any common issue, class certification is improper. Unless these two errors of law are addressed, disseminating class notice and trying the claims will be a colossal waste of effort. Accordingly, the Court's Order should be vacated.

**I.   CERTIFICATION OF ANY BREACH OF EXPRESS WARRANTY CLASS INCLUDING NON-INCIDENT OWNERS IS IMPROPER.**

Non-incident owners have no breach of express warranty claim under Ohio law. As the Ohio Supreme Court explained in *Goodard,* Ohio law permits sellers to limit remedies under express warranties "to the repair and replacement of defective parts." 396 N.E.2d at 764; *Abele v. Bayliner Marine Corp.,* 11 F. Supp. 2d 955, 960 (N.D. Ohio 1997). *See also* Ohio Rev. Code, § 1302.93. The purpose of an exclusive remedy to "repair or replace defective parts" is to "limit[] risks by excluding direct and consequential damages." *Abele,* 11 F. Supp. at 960.[2]

---

[2]   The vast majority of courts that have considered whether ***any*** cause of action can lie for claims stemming from an alleged vehicle defect when the defect has never manifested in the plaintiff's vehicle, have overwhelmingly dismissed these suits for failure to plead legally cognizable injury under any legal theory – including "injury" in the

The exclusive repair and replacement remedy is an *absolute bar* to any express warranty claim under Ohio law, unless a purchaser can establish that her warranty "fails of its essential purpose" by proving "(1) that the goods are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; (3) and that the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts." *Abele,* 11 F. Supp. 2d at 961; *Goddard,* 396 N.E.2d at 764-65.

A non-incident owner whose vehicle has operated perfectly and who never took her vehicle to the seller for repair cannot, as a matter of law, establish that her warranty failed of its essential purpose.[3] Moreover, now that the express warranties on 1999 and 2000 Villager owners have expired,[4] these non-incident owners do not even have the potential to pursue an express warranty claim under Ohio law based on any future part failure. *See, e.g., Westfield Ins. Co. v. Huls Am., Inc.*, 714 N.E.2d 934 (Ohio Ct. App. 1998) (warranty did not fail of its essential purpose when product functioned properly during warranty period and manifested defect two and a half years after warranty expired); *Jackson v. Krieger Ford*, No. 88AP-1030, 1989 WL 29351, at *6 (Ohio Ct. App. Mar. 28, 1989) (warranty did not fail of its essential purpose when vehicle

---

form of "diminution in value" or "overpayment" at the time of sale. *See, e.g.,* Def's Opp. to Class Cert. at 15; *see also Briehl v. General Motors Corp.*, 172 F.3d 623, 626, 628 (8th Cir. 1999) (rejecting claims under multiple theories because alleged defect had never manifested in vehicles at issue); *Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000) ("unless there is actually a failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way. Mere suspicion of a lost bargain . . . will not support an award of damages.").

[3]   One passage in the Court's Order appears to recognize this fundamental point. The Court notes that Ms. Daffin is typical of individuals "who brought their vehicles in for Ford to repair, and whose vehicles Ford failed to repair according to warranty." Order at 5. Nonetheless, elsewhere in the Order the Court suggests that non-incident owners have an express warranty claim for damages under Ohio law. *See* Order at 4-5 ("under a contract claim for breach of express warranty, a buyer may recover the difference in value of the goods as accepted and the goods as warranted. Ohio Rev. Code § 1302.88"); *id* at 7 ("the loss of the value of the bargain would be the loss suffered by all class members.")

[4]   Ford's standard limited written warranty extends only for 3 years or 36,000 miles, whichever comes first. More than 3 years has passed since 1999 and 2000 Villagers were sold, so the warranties on virtually all of the vehicles necessarily have expired.

broke down shortly after expiration of warranty period because warranty coverage extended only 12 months or 12,000 miles).[5]

Indeed, permitting warranty claims for a defect that arises after the warranty expires would render the durational limits of warranties meaningless. *See, e.g., Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238, 250 (2d Cir. 1986) ("A rule that would make failure of a part actionable based on such 'knowledge' [that a part may fail after the warranty expires] would render meaningless time/mileage limitations in warranty coverage"). Under such a regime, there would be no need for extended warranties – or any contractual arrangement concerning the repair or replacement of parts – since a consumer could simply demand free repairs for the entire life of the product.[6] *See, e.g., Tokar v. Crestwood Imports, Inc.*, 532 N.E.2d 382, 388 (Ill. App. Ct. 1988) (if plaintiffs may bring warranty claim outside duration limit, "Ford, would in effect, be obliged to insure that a vehicle it manufactures is defect free for its entire life. The Court cannot accept such a drastic interpretation of the plain language of the warranty."). This, however, is not the law in Ohio or any other state, *see, e.g., Jackson,* 1989 WL 29351, at *6 ("Ford's twelve-month, twelve thousand-mile warranty was . . . not designed to provide protection for the balance of the car's useful life or for any other period than specified by the warranty"). Non-incident owners who may later experience the supposed defect after the warranty expired cannot state a breach of warranty claim.

The Court's Order certifying an express warranty class that includes non-incident owners is clearly erroneous under binding Ohio precedent and therefore must be vacated.

---

[5] Ohio law is in accord with that of numerous other states on this issue. *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (holding that "general rule" is that "an express warranty does not cover repairs made after the applicable time has elapsed" and thus "latent defects discovered after the term of the warranty are not actionable.") (quotations and ellipsis omitted); *Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238, 250 (2d Cir. 1986) (same) (collecting cases).

[6] Indeed, Ms. Daffin herself made the conscious decision to pay for an extended warranty; a contractual arrangement which the Court's Order would appear to render worthless.

## II. CERTIFICATION OF ANY BREACH OF EXPRESS WARRANTY CLASS INCLUDING INCIDENT OWNERS IS IMPROPER.

Even an incident owner such as Ms. Daffin is prohibited from seeking damages for breach of express warranty under Ohio law unless she is able to make an individualized factual showing based on her "idiosyncratic tastes and needs" that her warranty failed of its essential purpose. *See McCullough,* 449 N.E.2d at 1294; *Abele,* 11 F. Supp. at 961; *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954, 966 (N.D. Ohio 1998) (determinations of whether a warranty has failed to fulfill its essential purpose is a question of fact for the jury) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624 (Ohio 1989) and *Brown v. Allio*, 620 N.E.2d 1020 (Ohio. Ct. App. 1993)); *Boyas Excavating, Inc. v. Powerscreen, Inc.*, 743 N.E.2d 464, 472 (Ohio Ct. App. 2000) (jury must consider "all the circumstances" to determine whether warranty failed of its essential purpose when repairs took six months to complete). Only upon such a showing is a vehicle owner entitled to a remedy, for damages for breach of express warranty. *McCullough,* 449 N.E.2d at 1294; *Abele,* 11 F. Supp. 2d at 961.

The requirement that a vehicle owner make the highly fact-specific showing of failure of essential purpose based on their "idiosyncratic tastes and needs" precludes certification of an express warranty class including incident owners. Whether any owner's warranty is breached, and what damages if any result, is necessarily plaintiff-specific. Each incident class member would have to establish, through individualized proof in a "mini-trial," that the alleged defect impaired the vehicle's "worth to the buyer." *McCullough,* 449 N.E.2d at 186. Such a showing would depend on evidence that the alleged defect "shakes the buyer's faith or undermines his confidence in the reliability and integrity" of the vehicle. *Id.* Because under Ohio law the

"failure of essential purpose" that can give rise to a breach of warranty claim for damages depends on a given vehicle owner's individual expectations and frame of mind, whether any given owner experienced "diminution in value" or "loss of the value of the bargain," Order at 4, 7, cannot be treated as a common issue. Not surprisingly, courts have repeatedly held that claims of "diminished value" cannot be decided using classwide proof. *See, e.g., In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1019 (7th Cir. 2002) (rejecting class certification in part because differences in use of vehicles would "affect resale prices" and "could require vehicle-specific litigation"); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 177 F.R.D. 360, 374 (E.D. La. 1997) ("diminution in value" of vehicles could not be shown using "an average" amount of diminution because such method "is speculative at best and biased at worst").[7]

Apart from each owner's individualized expectations, failure of essential purpose also requires evidence that a given vehicle has numerous defects, and that the owner gave the seller "a reasonable opportunity to cure" any defects – facts that will differ from owner to owner. *Abele,* 11 F. Supp. 2d at 961-62 ("[l]iability has been found only where the product contained *numerous, serious defects,* and those defects went unrepaired despite *repeated attempts by the seller to repair them*") (emphasis added); *LaBonte v. Ford Motor Co.,* No. 74855, 1999 WL 809808 at *1 (Ohio Ct. App. Oct. 7, 1999) (barring express warranty claims because Ford twice adjusted the alleged defect by cleaning parts during warranty period, even when problem recurred after warranty expired); *Watson v. Falhaber Datsun, Inc.*, No. 447, 1987 WL 13491 (Ohio Ct. App. June 26, 1987); *Haynes v. George Ballas Buick-GMC Truck*, No. L-89-168, 1990

---

[7] *See also Briehl v. General Motors Corp.*, 172 F.3d 623, 628-29 (8th Cir. 1999) (rejecting diminution claim because "Plaintiffs do not allege in the Original Complaint that any member of the purported class has actually sold a vehicle at a reduced value"); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1986) (rejecting diminution claim where "Plaintiff has not apparently attempted to sell his car in the used car market and simply asserts the bald conclusion that its value in that market has decreased.")

WL 210413 (Ohio Ct. App. Dec. 21, 1990) (even repeated repair attempts do not constitute a breach of warranty unless the vehicle is so "riddled with defects" that it cannot be repaired).

The Court's conclusion that "whether the defect reduces the value of the car" and "whether Ford breached the terms of its express warranty," are common issues, Order at 12-13, is clearly erroneous under Ohio law. Because the question of whether any given incident owner's warranty failed of its essential purpose is fact-specific, Ms. Daffin cannot as a matter of law be typical of all incident owners, and common issues cannot predominate over individualized issues with regard to the express warranty claim.[8]

## III.  OTHER COGENT REASONS EXIST TO RECONSIDER THE CLAIMS CERTIFIED FOR CLASS NOTICE AND TRIAL.

Because the Court's Order granted the certification motion without modifying plaintiff's proposed class definition, the Order incorporates several other clear errors. Although these errors are subsidiary to the two just discussed – which require that the Order be vacated – they are worth noting.

*First*, the Order certifies a class of all current Ohio residents who own the vehicles at issue rather than current Ohio residents who *purchased* their vehicles *in Ohio*. Such a definition necessarily encompasses claims that would arise under the law of other states. *See Nationwide Mut. Ins. Co. v. Ferrin*, 487 N.E.2d 568, 569 (Ohio 1986) ("It is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract") (citing *Garlick v. McFarland*, 113 N.E.2d 92 (Ohio 1953)). As such, the improper breach of express warranty class that the Court certified suffers from the same variations in law noted by this Court in denying certification of a nationwide class. Under the current class

---

[8] Of course, whether the repairs were effective is not the only individualized question. Ford is also entitled to present evidence as to the cause of each throttle bottle failure to determine whether its source was the alleged defect or, for example, driver abuse.

7

definition, a trial would either be unworkable, as the laws of numerous other states would have to be considered for the claims of absent class members, or, if the Court is planning to conduct a trial only for the Ohio law claims, then the trial would prejudice the non-Ohio purchasers whose claims would have to be dismissed (because they cannot state a claim under Ohio law). This prejudice would be compounded if the class notice gave the impression that the claims of non-Ohio purchasers would be addressed in the proceeding.

*Second*, the class definition includes both vehicle owners and lessees. Plaintiff, however, nowhere explained how a lessee would be injured even under a diminution of value theory (since repairs are generally performed under warranty during the lease term and a problem vehicle can be returned at the end of the lease term with no penalty). That lessees are not appropriate class members is all the more clear after this Court's class certification order. The injury certified for class treatment was the "diminished value" of the vehicles due to the alleged defect. Lessees, however, cannot be injured by a vehicle's "diminished value" since the terms of the lease – including the depreciation rate of the vehicle – are determined before the lease papers are even signed. And, even if a vehicle's depreciation exceeded the figure that was pre-negotiated, a lessee can simply walk away at the end of the lease term without incurring any loss from the accelerated depreciation in value. Accordingly, the certification of a class including lessees cannot legitimately stand.

*Third*, the class definition does not comport with this Court's reasoning that Ms. Daffin could meet the typicality requirement only for owners who purchased their vehicles either new or used with remaining warranty coverage. *See* Order at 5 (Ms. Daffin is typical of "a class of individuals who purchased vehicles new . . . or individuals who purchased used Villagers with remaining warranty coverage . . .") Rather, it includes individuals who may have purchased their

vehicles well beyond the expiration of any warranty period, and who clearly do not and could not have an express warranty claim.  For this additional reason, the Order should be vacated.

## Conclusion

For the foregoing reasons, Ford respectfully requests that the Court's Order Granting Plaintiff's Motion for Class Certification be vacated.

Respectfully submitted,

July 29, 2004

s/Gary M. Glass
Gary M. Glass (0042417)
THOMPSON HINE LLP
Suite 1400
312 Walnut Street
Cincinnati, Ohio  45404
Telephone:    (513) 352-6700

Brian C. Anderson  (pro hac vice)
John F. Niblock (pro hac vice)
Thomas Kuczajda (pro hac vice)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
Telephone:    (202) 383-5300
Facsimile:    (202) 383-5414

Attorneys for Defendant Ford Motor Company

## CERTIFICATE OF SERVICE

A copy of the foregoing Defendant Ford Motor Company's Memorandum in Support of Its Motion for Reconsideration was filed electronically on this **29th** day of July, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                 s/Thomas Kuczajda  
                                                 Thomas Kuczajda (pro hac vice)  
                                                 O'MELVENY & MYERS LLP  
                                                 1625 Eye Street, N.W.  
                                                 Washington, DC  20006  
                                                 Telephone:    (202) 383-5300  
                                                 Facsimile:    (202) 383-5414

                                                 Attorney for Defendant Ford Motor Company