UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA DAFFIN, on behalf of herself and all others similarly situated, | : : | Case No. C-1-00 458 |
| Plaintiff, | : : | Judge Susan J. Dlott |
| v. | : : | |
| FORD MOTOR COMPANY, | : : : | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR RECONSIDERATION** |
| Defendant. | : | |

## I.     INTRODUCTION

Nearly every argument raised by Ford in its Motion for Reconsideration simply rehashes prior propositions that have been previously briefed, argued and rejected.  Further, any argument which was not previously raised by Ford certainly should have been raised earlier.  Accordingly, Ford's motion is improper and should be denied.  Yet, even if the Court were to consider the merits of Ford's arguments for a second time, the Court's Order Granting Plaintiff's Motion For Class Certification is appropriate and does not contain any manifest or clear errors of law that warrant reconsideration.

## II.    FORD'S MOTION IMPROPERLY REHASHES PREVIOUSLY REJECTED ARGUMENTS AND ANY NEW ARGUMENT IS UNTIMELY

Motions for reconsideration are governed by Fed. R. Civ. P. 59(e) and are "not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal." *Darrell Sherwood v. Royal Insurance Company of America,* 290 F. Supp.2d 856, 858 (N.D. Ohio 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998)) ("A motion under Rule 59(e) is not an opportunity to re-argue a case."); *Stop the Ohio Pipeline v. Thomas E. White,* 2003 U.S. Dist. LEXIS 607 (S.D. Ohio 2003) ("Rule 59(e) is not to be used to simply relitigate issues previously addressed by the

Court.") Yet, the primary arguments raised by Ford in its Motion are identical to arguments that have already been fully briefed, argued and rejected. In addition, any issue presented for the first time through a Rule 59(e) motion is not timely raised and should be rejected. *Sault Ste Marie Tribe*, 146 F.3d at 374 ("Because the Lac Vieux **could have, but did not**, raise their argument before the district court ruled on the motion . . ., the [Rule 59(e)] argument is barred.") (Emphasis added). Ford's motion, therefore, should not be considered by the Court.

The first rehashed argument by Ford contends that the Court erred by permitting non-incident owners to pursue breach of express warranty claims. *Defendant Ford Motor Company's Memorandum in Support of its Motion for Reconsideration,* p.1 (Doc. #94) (the "*Ford Memo*"). Ford raised this exact argument several times during the state-wide class certification briefing process. *See Defendant Ford Motor Company's Memorandum in Response to the Court's Order Directing Parties to Address Certain Specific Issues*, p. 2 (Doc. #82) ("[U]nnamed putative class members who have driven their vehicles without incident – never experiencing accelerator sticking – simply have no cause of action."); *Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, pp. 14-15 (Doc. #73). ("Ohio law does not provide 'non-incident' owners with a cause of action…Even if a latent defect exists, the purchaser of a product does not have a claim under any legal theory unless and until the defect results in an actual injury."); and *Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, p. 38 (Doc. #73) ("[U]nder Ohio law, 'non-incident' owners have not been injured and cannot assert breach of warranty claims."). Since Ford previously raised this identical issue, it cannot now attempt to re-hash this argument through its motion for reconsideration.

Ford's second argument is that the Court erred by concluding "that incident owners can pursue their breach of express warranty claims on a classwide basis." *Ford Memo,* p. 2 (Doc. #94). According to Ford, whether each "incident owner is entitled to damages requires a factual

inquiry" that is "highly individualized," destroying predominance. *Id.* Again, Ford's argument is not new and simply represents re-hashed propositions previously rejected by this Court. *See Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, p. 34 (Doc. #73) ("Ohio [warranty] law requires proof of causation and actual injury, neither of which is susceptible to classwide proof… Even as to the minority of vehicles that may have experienced accelerator sticking, the issue of causation is inherently individualized."); *Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, p. 39 (Doc. #73) ("Accordingly, to determine whether any putative class member has a valid breach of warranty claim will require an individualized factual inquiry as to…what Ford did (or did not) do to honor the coverage."); *Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, pp. 38-39 (Doc. #73). ("Determining whether and to what extent the named plaintiff or any other class member experienced 'actual injury' from repair delays or any other alleged breach is a highly individualized question that cannot be resolved through classwide proof."); *Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, p. 32 (Doc. #73), FN 49 ("This issue [whether Ford's written warranty applies to the defect] is not susceptible to common proof. It requires, among other things, individualized proof as to whether each class member actually experienced accelerator sticking during the warranty period, whether any such sticking resulted from the alleged defect…and whether each class member relied on the express warranty."); *Defendant Ford Motor Company's Memorandum in Response to the Court's Order Directing Parties to Address Certain Specific Issues*, p. 3 (Doc. #82) ("Without proof of reliance on an individual basis, there is no proof of any commonality among the putative class members with respect to the purported express warranty claims."). Once again, Ford's attempt to rehash these old arguments should be rejected.

Ford's third argument supporting reconsideration is that "the Order certifies a class of all current Ohio residents who own the vehicles at issue rather than current Ohio residents who purchased their vehicles in Ohio." *Ford Memo,* p. 7 (Doc. #94). Like its previous arguments, Ford raised this identical proposition in its earlier briefs. *See Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, p. 19 (Doc. #73) ("Although Ohio law would apply to Ms. Daffin's own claims, litigation of her claims would prove nothing as to those Ohio residents who purchased or leased their Villagers outside of Ohio…"); *Id.* ("Ms. Daffin's Claims Are Not Typical Of Individuals Who Purchased Or Leased Their Vehicles Outside of Ohio."). Since this is the identical argument previously raised by Ford, an argument that this Court considered and rejected, it is not appropriate to revisit it through a motion for reconsideration.

The final argument previously raised by Ford is that "Ms. Daffin could meet the typicality requirement only for owners who purchased their vehicles either new or used with remaining warranty coverage." *Ford Memo,* p. 8 (Doc. #94). Like the prior arguments discussed above, Ford previously raised this argument, and it was rejected. *See Defendant Ford Motor Company's Memorandum in Opposition to Plaintiff's Motion for Certification of a Statewide Class*, p. 18 (Doc. #73) ("As A New Vehicle Purchaser, Ms. Daffin's Claims Are Not Typical Of Those Of Putative Class Members Who Purchased Their Vehicles Used Without Warranty Coverage."). Again, in this instance, it is not appropriate to rehash prior arguments through a motion for reconsideration.

The sole "new" argument advanced by Ford is its assertion that lessees cannot recover damages related to diminution of value. *Ford Memo,* p. 8 (Doc. #94). However, Ford certainly could have (and should have) raised this argument earlier especially since this argument is closely related to many of its other arguments adverse to lessees. Since Ford "could have, but

did not, raise" this argument earlier, "the argument is barred." *Sault Ste Marie Tribe*, 146 F.3d. at 374.

### III. Even If The Court Overlooks Ford's Improper Motion, Nothing In The Court's Certification Order Indicates A Clear Error Of Law Or A Manifest Injustice.

Although the forgoing makes it clear Ford's motion is not properly before this Court, even if it were considered, the Sixth Circuit instructs that motions for reconsideration should be granted for only one of three reasons: (1) an intervening change in controlling law; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Gencorp, Inc. v. American International Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999). This is an exceptionally high standard for Ford to meet and is only satisfied when, for example, a "court has patently misunderstood a party, has made a decision outside of the adversarial issue presented, has made a mistake not of reasoning but of apprehension, or there has been a significant change or development in the law or facts . . .." *Gregg v. American Quasar Petroleum Co.*, 840 F.Supp.1394, 1401 (Colo. 1993). Such is not the case here.

Ford alleges that this Court made "at least two manifest errors of law" by granting Plaintiff's Motion for Certification of a Statewide Class. *Ford Memo*, p.1 (Doc. #94). First, Ford contends that non-incident owners cannot pursue a breach of express warranty claim because their remedies are limited to "repair and replacement of defective parts." *Id.* at 1-2. However, repair and replacement is not the sole remedy when it is apparent that the defendant's repair attempt uniformly consists of placing the same defective part back into the vehicle. "Where an exclusive remedy fails of its essential purpose, remedy may be had as provided under various chapters of the revised code." *Goddard v. General Motors Corp.,* 60 Ohio St.2d 41, 47, 396 N.E.2d 761, 765 (1979). And these additional remedies include diminution of value. This is exactly what the Court concluded – "The common course of conduct Daffin alleges is 1)

installation of a defective throttle body assembly and 2) Ford's refusal to fix the problem upon being alerted to the defect. *Order Granting Plaintiff's Motion for Class Certification,* p. 4 (Doc. #93).[1] Accordingly, "under a contract claim for breach of express warranty, a buyer may recover the difference in value of the goods as accepted and the goods as warranted." *Id.* at 4-5.

In fact, in the very recent appellate decision, *Thiedmann v. Mercedes-Benz,* 369 N.J. Super. 402, 849 A.2d 196 (N.J. Sup. Ct. 2004), the reviewing court reached a similar conclusion. In *Thiedmann,* the plaintiffs' Mercedes contained a defective fuel sending unit. As a result of this defect, the vehicles' fuel gage would not give accurate readings, and these vehicles would unexpectedly run out of fuel. *Id.* at 405. Consequently, the plaintiffs filed a class action. In August 2000, Mercedes issued a Dealer Technical Bulletin instructing dealers to replace the units if they fail. *Id.* at 407. Nonetheless, "the replacement units were just as defective as the original ones…" *Id.* at 410-411. Recognizing diminution of value as one proper measure of damages, the *Thiedmann* court stated the following:

> [P]laintiffs have a car with a defect in a significant component, which defect is present in every replacement of the component, and will likely manifest itself at some future time. We believe that common knowledge, indeed common sense, compels the conclusion that the value of the vehicle is impaired to a measurable, if presently unknowable degree. Can it possibly be doubted that if the [Plaintiffs] sought to sell their vehicle on the used market, and advised prospective buyers of the fuel-sending unit problem, that they would receive less than if the vehicle had no such defect? We think not. *Id.* at 413.

Ford next argues that incident owners cannot seek, through a class action, diminution of value for breach of express warranty because too many individual issues allegedly arise as to whether the warranty failed its essential purpose. *Ford Memo,* 5-7 (Doc. #94). This argument

---

[1] Ford cites to *Westfield Ins. Co. v. Huls Am., Inc.,* 714 N.E.2d 934 (Ohio Ct. App. 1998) and *Jackson v. Krieger Ford,* No. 88AP-1030, 1989 WL 29351 (Ohio Ct. App. 1989), for the proposition that Villager owners who did not experience the locking or sticking accelerator pedal within the warranty period cannot establish that the warranty failed of its essential purpose. Ford's reliance upon these cases is misplaced as neither case involved a class action. Further, it ignores the fact that Ms. Daffin, as a class representative, made a timely claim within the warranty period on behalf of the entire class for the identical defect that has been present in every 1999 and 2000 Villager from the date that each vehicle left the assembly line in Avon Lake, Ohio.

completely ignores the undisputed fact that thousands of Villager owners and lessees have attempted to have the defect corrected by taking their vehicles to Ford dealerships pursuant to the terms of the identical express warranty. Every Villager owner and lessee who attempted to have this defect repaired pursuant to the terms of the warranty left the dealership with the same defective throttle body in their vehicle. In fact, there is absolutely no evidence in the record indicating that the defect in any Villager has ever been properly and permanently repaired. In other words, Ford has been presented with thousands of opportunities to live up to its express warranty obligations, and it is has failed to do so in each and every instance. Ford's consistent conduct undoubtedly indicates that the identical express warranty made to the entire class has failed of its essential purpose. This conclusion is further buttressed by the fact that Pat Daffin is now on her fifth defective throttle body assembly. Again, Ford's argument has no merit.

Ford then goes on to assert that "claims of 'diminished value' cannot be decided using classwide proof." *Ford Memo,* p. 6 (Doc. #94). This simply is not the case, as Courts have recognized diminution of value as one measure of damage in the context of a class action involving automobiles. *Thiedmann,* supra.; *State Farm v. Rudine Mabry*, 556 S.E.2d 114, 122, 274 Ga. 498, 508 (2001) ("[T]he insurer's obligation to pay for the loss includes paying for any lost value."); *Christina Allgood v. Meridian Security Insurnace Company,* 807 N.E.2d 131, 2004 Ind. App. LEXIS 762 (Construing automobile insurance policy to require recovery of diminution of value). Further, even if diminution of value damages were to vary from class member to class member, certification is still appropriate. *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1196-1197 (6th Cir. 1988); *Robert L. Violette v. P.A. Days,* 214 F.R.D. 207 (S.D. Ohio 2003) (Actions "are appropriately certified under Rule 23(b)(3) despite the fact that individual damage claims differ.")

Ford next attacks the Court's certification Order claiming that it is defective because it "certifies a class of all current Ohio residents who own the vehicles at issue rather than current

Ohio residents who purchased their vehicles in Ohio." *Ford Memo,* p. 7 (Doc. #94). Ford's argument is incorrect because it ignores the fact that one of the Ohio Consumer Sales Practices Act ("CSPA") violations alleged by Plaintiff occurred and continues to occur here in Ohio – post sale, namely, Ford's complete failure to disclose that the "repaired" vehicles contain the same defective throttle body and its complete failure to warn of the presence and nature of the defective throttle body in the Villagers at issue.[2] Thus, the application of the CSPA to Ohio citizens that may have purchased their Villager in neighboring states is wholly appropriate and consistent with remedial purpose of the statute – a statute that must be construed liberally in favor of consumers. *Parker v. I&F Insulation Company,* 89 Ohio St.3d 262, 264, 730 N.E.2d 972, 975 (2000). Further, the CSPA applies against a supplier (like Ford) whether or not the consumer was from Ohio. *Shorter v. Champion Home Builders Co.,* 776 F.Supp. 333, 339 (N.D. Ohio 1991) (citing *Brown v. Malket Developers,* 41 Ohio Misc. 57, 322 N.E.2d 367 (1974)). "[I]t is the activity of the supplier that is determinative." *Id.* Thus, because of Ford's continuing violations, the CSPA claims apply to all current Ohio residents that own or lease a 1999 or 2000 model year Villager regardless of where they actually purchased their vehicle.

Ford then complains that Plaintiff has failed to explain how lessees have been damaged under a diminution of value theory which, according to Ford, was "the injury certified for class treatment." *Ford Memo,* p. 8 (Doc. #94). At best, Ford's argument is premature, as courts need not determine, at the class certification stage, what methods of awarding damages are appropriate. *In re Domestic Air Transport Antitrust Litigation,* 141 F.R.D. 534, 555 (N.D. Ga. 1992). Yet, even if it were appropriate at this stage of the litigation to determine exact damages and methodologies, it is apparent that lessees have been damaged and can recover as a result of

---

[2] Importantly, Ford's beach of express warranty also constitutes a deceptive consumer sales practice pursuant to R.C.§1345.02(B)(10). "(B) without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive . . . . (10) That a consumer transaction involves or does not involve a warranty, a disclosure of warranties or other rights, remedies or obligations if the representation is false."

{00010619; 1}    -8-

this diminution of value. After all, the monthly lease payments made by lessees were derived directly from the Villager's value. Since the value or price of the Villager was inflated (because it did not reflect the diminution due to the defective throttle body), each lessee paid an inflated monthly lease price and would be entitled to a rebate for these overpayments.

Further, the Court did not recognize diminution of value as the only recoverable damage in this litigation. Rather, the Court stated that "[t]he 'injury' suffered by owners who have not experienced sticking must therefore be the economic injury of diminution in value of the car caused by a defective throttle body. Daffin's claim is thus typical of owners who have experienced sticking accelerators and owners who have not experienced sticking accelerators…" as both incident and non-incident owners can recover diminution of value. *Order,* p. 4 (Doc. #93). Ford fails to grasp that incident owners and incident lessees can also recover all other compensatory and consequential damages to which they otherwise would be entitled – including the cost of past and future throttle body replacements.[3] For example, a lessee with a four-year lease who experiences a sticking throttle body and has that throttle body replaced during the final month of the lease will be forced to pay for the new (albeit still defective) replacement throttle body because the standard three-year warranty will have expired. Thus, this class member would be entitled to recover the hundreds of dollars in costs typically incurred during the installation of the replacement throttle body. Thus, because lessees have been damaged, certification of a class that includes lessees was proper.

---

[3] The Court's Order at page 12 recognizes that Plaintiff seeks additional relief beyond diminution of value. "This helpful explanation makes clear why Ms. Daffin's demand for a court-ordered lifetime warranty is not predominantly injunctive in nature. Daffin is asking for either of the first two forms of relief described by Judge Spiegel in *Day*... This so call 'injunctive relief' clearly does not fit within the confines of injunctive relief as it pertains to medical monitoring, the example of 23(b)(2) product liability class certification that Daffin has offered. Daffin's proposed relief is not a court-supervised diagnostic monitoring for curative and research purposes but a cost-shifting from consumer to Ford. Such relief is more properly considered under the rubric of compensatory and consequential damages rather than that of injunctive relief."

The final argument put forth by Ford is that individuals who purchased their vehicles after the expiration of the warranty period (typically three years and 36,000 miles) should not be included in the class because they allegedly do not have an express warranty claim. *Ford Memo*, p. 8 (Doc. #94). This argument ignores the reality the when Ms. Daffin filed this action in May 2000, Ford had plenty of notice of the problem and decided not to properly honor its warranty obligation to Ms. Daffin and the class. Because Ford knew of this defect well-before these vehicles' warranty expired and did nothing to actually "fix" the defect or notify the owners and lessees, it cannot now hide behind the expiration of the express warranty and thereby benefit from its delay and refusal to fix the problem. To do so would reward Ford for failing to act, and that is not appropriate. See *Richardson v. Car Lot Company*, 10 Ohio Misc. 2d 32, 33, 462 N.E.2d 459, 461 (1983) (In an express warranty action, the court concluded that it was appropriate to "toll" the express warranty stating, "[t]he delay in making that repair was unreasonable and Car Lot should not benefit by its improper actions.") And, this result is also consistent with Plaintiff's established contention (not re-argued here) that Ford's warranty has failed of its essential purpose. *Supra.* at pp. 5-7.

Finally, Ford's argument completely ignores the fact that subsequent purchasers (including purchasers who bought their vehicle after the warranty expired) still have valid CSPA claims against Ford.[4] "A review of the Ohio Consumer Sales Practices Act reveals nothing in the statute provides that privity of contract is a prerequisite to recovery of damages. Rather, the definition of a 'supplier' under the Ohio Consumer Sales Practices Act includes those who engage in the business of affecting consumer transactions, whether or not they deal directly with the consumer." *Maurice Patterson v. Central Mills, Inc.,* 112 F. Supp.2d 681, 692 (N.D. Ohio

---

[4] Even if the Court were to subsequently conclude that these class members do not have express warranty claims, they would still have valid negligent design and negligent manufacture claims against Ford in addition to the CSPA claims. And these claims were brought well before the statute of limitations ran, therefore suspending the applicable statute of limitations "as to all asserted members of the class . . ." *American Pipe & Constr. Co.*, v. Utah, 414 U.S. 538, 554 (1974).

2000) (citing *Mermer v. Med. Correspondence Serv.,* 115 Ohio App.3d 717, 722, 686 N.E.2d 296 (1996). This is consistent with the decision in *Garner v. Borcherding Buick, Inc.,* 84 Ohio App.3d 61, 616 N.E.2d 283 (1992) where two dealerships not in privity with the plaintiff (a subsequent purchaser) were held liable under the CSPA for putting a defective vehicle back into the stream of commerce after that vehicle had been totaled.

### Conclusion

For the foregoing reasons, Defendant Ford Motor Company's Motion for Reconsideration should be denied.

RESPECTFULLY SUBMITTED,

　/s/ Jeffrey S. Goldenberg　
Jeffrey S. Goldenberg (0063771)
John C. Murdock (0063749)
Theresa L. Groh (0029806)
Murdock Goldenberg Schneider & Groh, LPA
700 Walnut Street, Suite 400
Cincinnati, Ohio 45202-2011
(513) 345-8291 Telephone
(513) 345-8294 Facsimile

Steve W. Berman
Sean R. Matt
Hagens Berman, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292 Telephone
(206) 623-0594 Facsimile

**Of Counsel for Plaintiff**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR RECONSIDERATION** was served electronically and by ordinary U.S. mail, postage prepaid, on this 30th day of August, 2004 upon the following:

| | |
|---|---|
| Gary M. Glass, Esq. | John F. Niblock, Esq. |
| Thompson Hine, LLP | O'Melveny & Myers LLP |
| 312 Walnut Street, Suite 1400 | 555 13th Street, N.W., Suite 500 |
| Cincinnati, Ohio 45404 | Washington, D.C. 20004-1109 |

            /s/ Jeffrey S. Goldenberg