THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICIA DAFFIN,<br><br>           Plaintiff,<br><br>     v.<br><br>FORD MOTOR COMPANY,<br><br>           Defendant. | Case No. C-1-00 458<br><br>Judge Dlott<br><br>**DEFENDANT FORD MOTOR COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION** |

Defendant Ford Motor Company ("Ford") respectfully files this reply to Plaintiff's Opposition to Ford's Motion for Reconsideration ("Pl.'s Opp.").

As Plaintiff admits, a motion for reconsideration is appropriately granted to correct a clear error of law. (Pl.'s Opp. at 5). This is such a case. Plaintiff advances a radical re-writing of warranty law, unsupported by any precedent. Plaintiff asserts that this Court can refashion a limited-term written warranty into a lifetime replacement guarantee for an entire class of individuals, most of whom have experienced no problems with their vehicles during their contracted period of warranty coverage. Moreover, Plaintiff would have this Court ignore clear Ohio precedent that defines the circumstances under which a warranty "fails of its essential purpose," and instead espouse a theory directly contrary to Ohio law. The Court's Order, which adopts and implements Plaintiff's reasoning, is an extreme departure from existing Ohio precedent and unsupported by the law of *any* jurisdiction, and should be reconsidered.

## I. DAMAGES FOR DIMINUTION IN VALUE ARE AVAILABLE ONLY FOR INDIVIDUALS WHO HAVE EXPERIENCED THE ALLEGED DEFECT DURING THEIR WARRANTY.

Plaintiffs argue that the Court properly included non-incident class members in the class on the theory that they may be entitled to diminution in value damages under an express warranty theory. As a matter of Ohio law, non-incident owners cannot claim such damages.

Plaintiff concedes that the *only* way an owner can claim a UCC-type remedy like diminution in value is if his or her express limited warranty's "exclusive remedy fails of its essential purpose." (Pl.'s Opp. at 5 (quoting *Goddard v. General Motors Corp.*, 60 Ohio St. 2d 41, 47, 396 N.E.2d 761, 765 (1979)); *see also, e.g., Abele v. Bayliner Marine Corp.,* 11 F. Supp. 2d 955, 961 (N.D. Ohio 1997). But Ohio case law is clear: A warranty does not "fail of its essential purpose" where there has been no incident during the warranty period. *See, e.g., Boyas Excavating, Inc. v. Powerscreen of Ohio, Inc.*, 743 N.E.2d 464, 471 (Ohio Ct. App. 2000) (limited warranties are "designed to give the seller an opportunity to make the goods conforming") (internal citations omitted); *Westfield Ins. Co. v. Huls Am., Inc.*, 714 N.E.2d 934 (Ohio Ct. App. 1998) (where product functioned properly during limited warranty term, but manifested defect after warranty expired, warranty did not fail of its essential purpose); *Jackson v. Krieger Ford*, No. 88AP-1030, 1989 WL 29351, at *6 (Ohio Ct. App. Mar. 28, 1989) (defect arising after expiration of warranty did not establish that warranty failed of its essential purpose).

These, and other similar cases,[1] state nothing less than the most basic warranty law. There is no breach of warranty, when the product performs as warranted during the term of the contract. *See, e.g., Vahalik v. Jeep Corp.*, Case No. 82-J-22, 1983 WL 6736 (Ohio App. Jan. 12,

---

[1] *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) ("an express warranty does not cover repairs made after the applicable time has elapsed" and thus "latent defects discovered after the term of the warranty are not actionable.") (quotations and ellipsis omitted); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) (same) (collecting cases).

1983) ("[Even] assuming plaintiff's vehicle could not be adequately repaired, this fact is irrelevant, since the only evidence in the record indicates that the transmission and motor mount failed to operate after the period during which plaintiff's vehicle was under warranty had expired."); *accord Abraham,* 795 F.2d at 250 (breach of warranty entails manifestation of defect during warranty term). Under Ohio law, non-incident owners cannot claim that their warranty failed of its essential purpose – a precondition to any claim for damages. *Goddard*, 396 N.E.2d at 764; Ohio Rev. Code § 1302.93.

Tellingly, Plaintiff offers absolutely no authority for her argument that Ohio law permits non-incident class members to claim that their limited warranties "failed of their essential purpose."[2] Certifying a class that includes non-incident members constitutes clear legal error. *See McGee v. East Ohio Gas Co.*, No. 99-CV-813, 2002 WL 484480 (S.D. Ohio Mar. 26, 2002) (granting motion for reconsideration and granting, in part, defendant's renewed motion to dismiss based on clear error where "despite the Plaintiff's assertion that the claim arises from common law, she has failed to cite any Ohio case, nor is the Court aware of any Ohio case [supporting her argument]").

## II. WHETHER THERE HAS BEEN A FAILURE OF A WARRANTY'S ESSENTIAL PURPOSE IS AN INDIVIDUALIZED, FACTUAL INQUIRY.

The second clear error of law is the Court's implicit holding that the failure of a warranty's "essential purpose" can be proven on a class-wide basis. Plaintiff points to no

---

[2] Plaintiff's citation to the New Jersey intermediate appellate court decision in *Thiedemann v. Mercedes-Benz*, 849 A.2d 196 (N.J. Sup. Ct. 2004), does nothing to support the class claims at issue. The *Thiedemann*, court did not address a claim of breach of express warranty, much less Ohio warranty law. The *Thiedemann* court held that a defective fuel gauge constituted an "ascertainable loss" under New Jersey's consumer fraud act, where the fuel gauge **was presented to the manufacturer for repair**, but continued to give faulty fuel gauge readings. *Thiedemann*, 849 A.2d at 198-99 (discussing testimony of named plaintiffs, who had experienced faulty fuel gauge, and brought their car in for repair). *Thiedemann* did not address the propriety of certifying a class that would include owners who never experienced a faulty fuel gauge. *Id.* at 204 ("Since the case must be remanded, the motion judge will have to resolve plaintiffs' motions for class certification …, which he did not address once having found the underlying cause of action to be deficient.").

precedent for her bald assertion that "Ford's [allegedly] consistent conduct" proves that the limited express warranty of every individual class members has "failed of its essential purpose." (Pl.'s Opp. at 7 (citing no authority)).

Under controlling Ohio precedent, proof of failure of essential purpose must be adjudged on an individual basis. "Whether a limitation fails of its essential purpose is a question of fact. … Further, whether a nonconformity 'substantially impairs an item's worth to the buyer is a determination exclusively within the purview of the fact-finder and ***must be based on objective evidence of the buyer's idiosyncratic tastes and needs***.'" *Trgo v. Chrysler Corp.*, 34 F.Supp.2d 581 (N.D. Ohio 1998) (emphasis added) (quoting *McCullough v. Bill Swad Chrysler-Plymouth, Inc.*, 449 N.E.2d 1289 (Ohio Ct. App. 1983)) (other citations omitted); *see also, e.g., Boyas Excavating, Inc. v. Powerscreen, Inc.*, 743 N.E.2d 464, 472 (Ohio Ct. App. 2000) (jury must consider "all the circumstances" to determine whether warranty failed of its essential purpose, and framing question as whether six months was an "unreasonable" amount of time to make equipment "***operational***") (emphasis added); *Abele,* 11 F. Supp. at 961; *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954, 966 (N.D. Ohio 1998) (whether a warranty has failed to fulfill its essential purpose is a question of fact for the jury) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624 (Ohio 1989) and *Delorise Brown, M.D., Inc. v. Allio*, 620 N.E.2d 1020 (Ohio. Ct. App. 1993)). The Plaintiff does not – nor can she – contest this authority.

Contrary to Plaintiff's unsupported assertion, Ford's practice of cleaning or replacing the throttle bodies that have become dirty during the warranty period cannot establish that Ford's warranty failed of its essential purpose for the entire class. (Pl.'s Op. at 7.) The necessary "failure of essential purpose" under Ohio law can only be established by vehicle- and owner-

4

specific proof, including: each individual class members' expectations; the number and seriousness of defects experienced; and whether the seller had "a reasonable opportunity to cure" any defects during the warranty term. *See, e.g., Abele,* 11 F. Supp. 2d at 961-62 ("[l]iability has been found only where the product contained **numerous, serious defects**, and those defects went unrepaired despite **repeated attempts by the seller to repair them**") (emphasis added); *Watson v. Falhaber Datsun, Inc.*, No. 447, 1987 WL 13491 (Ohio Ct. App. June 26, 1987); *Haynes v. George Ballas Buick-GMC Truck*, No. L-89-168, 1990 WL 210413 (Ohio Ct. App. Dec. 21, 1990) (even repeated repair attempts do not constitute a breach of warranty unless the vehicle is so "riddled with defects" that it cannot be repaired).

For example, neither the Plaintiff nor this Court can point to any legal support for the theory that Ford's limited remedies failed of their essential purpose for vehicle owners who brought their vehicle in once to have their throttle body cleaned and never experienced the problem again during the warranty term. *See, e.g., LaBonte v. Ford Motor Co.,* No. 74855, 1999 WL 809808 at *1 (Ohio Ct. App. Oct. 7, 1999) (barring express warranty claims because Ford twice adjusted the alleged defect by cleaning parts during warranty period, even when problem recurred after warranty expired).

Plaintiff attempts to shift the Court's focus from the issue of **breach** of warranty to the proper measure of damages. (Pl.'s Opp. at 7.) But the Court cannot reach the issue of classwide damages if the question of **breach** cannot be resolved on a classwide basis.

Certification premised on class-wide proof of breach through a warranty's failure of essential purpose is unprecedented and directly contrary to well-established Ohio case law. In fact, Ford is aware of only one decision – reported or unreported, federal or state – that has contemplated allowing class-wide proof that an express warranty failed of its essential purpose.

5

*In re Bridgestone/Firestone Inc.*, 205 F.R.D. 503, 526 (S.D. Ind. 2001). The Seventh Circuit, however, **reversed** that decision, which was, in any event, based on Indiana law. *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002). The stark absence of *any* case law in Plaintiff's brief on this point suggests that she has likewise been unable to find any legal support for her theory. Adopting Plaintiff's unsupported contention would result in a drastic re-writing of Ohio warranty law, and would constitute clear error. *See McGee*, 2002 WL 484480 (recognizing legally unsupported contentions as clearly erroneous in context of motion for reconsideration).

### III.     PLAINTIFF'S OTHER ARGUMENTS ARE IRRELEVANT.

Plaintiff's Opposition makes several other arguments, none of which refute the two clear errors of law noted above.

For example, Plaintiff has no adequate response to concerns raised over choice of law issues. Plaintiff **concedes** that the class definition includes Ohio residents, regardless of where they purchased their vehicle. (Pl.'s Opp. at 7-8.) Yet, Plaintiff is unable to explain how, for example, a breach of express warranty claim for an Ohio resident who purchased his or her vehicle in Cleveland is the same as a claim of a Michigan resident who bought his or her car in Detroit and subsequently moved to Ohio. As many courts have noted, "'[t]he Uniform Commercial Code is *not* uniform.'" *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (emphasis added) (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* 7 (2d ed. 1980)). Accordingly, courts have refused to certify express warranty claims for class treatment where there are state law variations.[3]

---

[3]     *See, e.g.*, *Bridgestone/Firestone*, 288 F.3d at 1018 ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 (5th Cir. 1996) (reversing certification of express warranty claims); *Georgine*, 83 F.3d 610, 620, 627 (3d Cir. 1996) (same), *aff'd sub nom.*, *Georgine v. Amchem Prods., Inc.*, 521 U.S.

In a similar vein, Plaintiff fails to explain how an Ohio resident who purchased a vehicle *after* the express warranty had expired could possibly have a claim for breach of express warranty. Plaintiff merely cites to a case that stands for the unexceptional proposition that the term of a warranty may be tolled ***while the defendant making the repairs is in possession of the vehicle*** because "[t]he intent of the warranty was to cover a period while [the owner] had the ***use of the vehicle***." *See Richardson v. Car Lot Co.*, 462 N.E.2d 459, 461 (1983) (emphasis added).[4] Nothing in *Richardson*, or any other precedent establishes that an express warranty can be indefinitely extended in time to cover every subsequent owner of a vehicle. Nevertheless, Plaintiff continues to assert that even after expiration of the express warranty, Ford had a proactive obligation to fix throttle bodies in the subject vehicles. As Ford has previously pointed out, case law holds exactly opposite. *See, e.g., Westfield Ins. Co..*, 714 N.E.2d at 934; *Jackson*, 1989 WL 29351, at *6; *accord Abraham,* 795 F.2d at 250 (recognizing the legitimate time/mileage limitations of express warranties); *Tokar v. Crestwood Imports, Inc.*, 532 N.E.2d 382, 388 (Ill. App. Ct. 1988) (same).

---

591; *Walsh v. Ford Motor Co.,* 130 F.R.D. 260, 276 (D.D.C. 1990) (denying class certification in part because "[i]ssues such as notice or presentment of the defect, refusal of service and the measure of damages will be governed by the varying warranty laws of the relevant jurisdictions"); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, No. 89-2181-V, 1992 WL 193661, at *7 (D. Kan. July 15, 1992) (observing that UCC § 2-313 has not been adopted and interpreted uniformly).

Plaintiff's discussion of the Ohio Consumer Sales Practices Act is irrelevant because the Court's Order held only that Ms. Daffin was typical under a breach of express warranty claim. (Order at 5-6).

4   Plaintiff's citation to *Richardson* borders on the disingenuous. She cites *Richardson* for the proposition that "tolling" of an express warranty is appropriate here because, by analogy: "[t]he delay in making that repairs was unreasonable and Car Lot should not benefit by its improper actions." (Pl.'s Opp. at 10 (quoting *Richardson*, 462 N.E.2d at 461)). Yet, the full quotation to the passage in *Richardson* reveals that the court was not ruling that incidents occurring after the expiration of a warranty are still covered by the warranty, but rather that a car dealer cannot evade its obligations by taking possession of a vehicle and not returning it until the warranty expires. *See Richardson*, 462 N.E.2d at 461 ("A warranty may be tolled during ***down time for repairs*** if it is implied from the dealings between the parties. … The warranty period was tolled during July and August ***when Car Lot had the vehicle***. The delay in making that repair was unreasonable and Car Lot should not benefit by its improper actions. The intent of the warranty was to cover a period while Richardson ***had the use of the vehicle***. … After the engine problem, Car Lot towed the vehicle to its premises and promised to make the necessary repairs. It did nothing for over two months, and then repaired the vehicle and resold it.") (emphasis added).

### Conclusion

For the foregoing reasons, Ford respectfully requests that the Court's Order Granting Plaintiff's Motion for Class Certification be vacated.

Respectfully submitted,

September 13, 2004

s/Gary M. Glass_____
Gary M. Glass (0042417)
THOMPSON HINE LLP
Suite 1400
312 Walnut Street
Cincinnati, Ohio  45404
Telephone:    (513) 352-6700

Brian C. Anderson  (pro hac vice)
John F. Niblock (pro hac vice)
Thomas Kuczajda (pro hac vice)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
Telephone:    (202) 383-5300
Facsimile:    (202) 383-5414

Attorneys for Defendant Ford Motor Company

## **CERTIFICATE OF SERVICE**

A copy of the foregoing Defendant Ford Motor Company's Memorandum in Support of Its Motion for Reconsideration was filed electronically on this **13th** day of September, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

          s/Thomas Kuczajda_____
          Thomas Kuczajda (pro hac vice)
          O'MELVENY & MYERS LLP
          1625 Eye Street, N.W.
          Washington, DC  20006
          Telephone:     (202) 383-5300
          Facsimile:       (202) 383-5414

          Attorney for Defendant Ford Motor Company

DC1:597681.3