LEXSEE 1998 OHIO APP. LEXIS 6063

**BERNIE TOTH, Plaintiff-Appellant v. DAVID SPITZER dba ALL SEASON REMODELING CO., Defendant-Appellee**

**C.A. CASE No. 17178**

**COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MONTGOMERY COUNTY**

*1998 Ohio App. LEXIS 6063*

**December 18, 1998, Rendered**

**PRIOR HISTORY:** [*1] T.C. CASE NO. 96-4604.

**DISPOSITION:** Affirmed.

**COUNSEL:** STEPHEN E. KLEIN, Vandalia, Ohio, Attorney for Plaintiff-Appellant.

SCOTT G. OXLEY, and P. CHRISTIAN NORDSTROM, Dayton, Ohio, Attorneys for Defendant-Appellee.

**JUDGES:** WOLFF, J. YOUNG, P.J. and BROGAN, J., concur.

**OPINION BY:** WOLFF

**OPINION:**

   OPINION

WOLFF, J.

   Bernie Toth appeals from a judgment of the Montgomery County Court of Common Pleas, which overruled his motions for a judgment notwithstanding the verdict or for a new trial on his claim of Consumer Sales Practices Act ("CSPA") violations by David Spitzer, dba All-Season Remodeling Company ("Spitzer"). A jury entered a verdict against Spitzer on Toth's breach of contract claim but found no CSPA violations.

   In July 1996, Toth hired Spitzer to install concrete slabs in and around a pole barn on land that he owned in Randolph Township, Ohio. A concrete slab had already been installed by another contractor covering a portion of the inside of the barn, but the rest of the barn had a dirt floor. Toth was dissatisfied with the quality of the original slab and asked Spitzer whether he could install an equal or better concrete slab, with a drain, to cover the dirt portion of the floor. [*2] Toth wanted to use the barn to store and wash vehicles, to store other personal items, and as a workshop. Spitzer stated that he could perform the work as Toth requested.

   Toth and Spitzer entered into a contract for the work at a price of $ 5,132, and Toth made a $ 1,282 down payment. Spitzer completed the concrete work in a timely manner, and Toth paid the balance due before the slabs were dry and could be thoroughly inspected. Upon closer inspection, Toth was dissatisfied with the surface of the concrete because fine wire mesh fibers that had been mixed with the concrete protruded from the surface. Toth also subsequently complained to Spitzer that the area around the outside slab had not been properly backfilled, that there were pits and depressions in the slabs, and that the drainage was improper. Toth allegedly made numerous telephone calls to Spitzer about these problems without response. Spitzer claimed that he had sent a crew to complete the clean-up and to cut control joints in the slabs the following week and had not heard from Toth from that time until the filing of the complaint.

   On November 4, 1996, Toth filed a complaint against Spitzer alleging breach of contract and [*3] violations of the CSPA. The alleged CSPA violations were based upon the commission of deceptive and unconscionable acts or practices. The matter went to trial before a jury on January 12, 1998. At trial, Toth presented evidence that the concrete slabs had not been

installed in a workmanlike manner and were not of equal or better quality than the original slab. He also presented evidence that the slope of the floor and the drain installed by Spitzer did not allow for effective drainage. According to Toth's expert, the only way to correct the problems with the concrete slabs was to tear them out and install new slabs.

Spitzer presented evidence that the slabs were of equal or better quality than the original slab, that the slabs were structurally sound and could be used for their intended purposes, and that the slope of the floor was appropriate for drainage. Spitzer also presented evidence that the wire mesh fibers protruding from the slabs were unavoidable if such a material was mixed into the concrete to strengthen the slab and prevent cracking, and that Toth had approved the use of the fibers. Spitzer's evidence showed that the fibers would wear off over time with regular use of [*4] the floor, leaving a smooth surface, and that the claimed problem was aesthetic in nature.

The jury found that Spitzer had breached his contract with Toth but had not engaged in any deceptive practices in violation of the CSPA. The jury awarded Toth $ 2,672.93 in damages on the breach of contract claim. The trial court incorporated the jury's findings into a judgment entry dated January 26, 1998. Toth filed a motion for judgment notwithstanding the verdict and for a new trial, claiming that the jury's findings were contradictory, that the finding on the CSPA claims was unsupported by the evidence, and that the jury's verdict had been tainted by errors in the jury instructions and the form of the interrogatories. The trial court denied the motion.

Toth appeals from the trial court's denial of his motion for judgment notwithstanding the verdict and for a new trial. He asserts two assignments of error.

I. THE TRIAL COURT ERRED BY FAILING TO GRANT PLAINTIFF A JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE DEFENDANT/APPELLEE COMMITTED A DECEPTIVE ACT UNDER THE OHIO CONSUMER SALES PRACTICES ACT.

Toth contends that the trial court erred in overruling his motion for a judgment notwithstanding [*5] the verdict because a breach of contract necessarily constitutes a violation of the CSPA. In support of this argument, Toth relies on *R.C. 1345.02*, the CSPA provision related to deceptive practices in a consumer transaction, which includes as an example of a deceptive practice a representation that "the subject of a consumer transaction is of a particular standard, quality, [or] grade, *** if it is not." *R.C. 1345.02(B)(2)*. Toth contends that the jury's finding that Spitzer had breached its contract with Toth compelled the conclusion that Spitzer had also committed a deceptive act in violation of *R.C. 1345.02*.

We disagree with Toth's premise that a breach of contract is necessarily rooted in a deceptive act pursuant to *R.C. 1345.02*. Obviously, a contract can be breached in myriad ways that do not involve deception. Where, as here, the jury expressly found that Spitzer had not committed any "unfair or deceptive acts," the trial court did not err in concluding that the breach of contract found by the jury did not constitute a violation of *R.C. 1345.02*.

Toth also relies upon the fact that proof of an intent to deceive is not required to establish a CSPA violation, and he claims that [*6] the mere "presence of deception in the state of mind of the consumer" establishes a violation of *R.C. 1345.02*. Although we agree that Toth was not required to show an intent to deceive, we disagree with his assertion that the state of mind of the consumer is determinative. It was the jury's responsibility to decide whether Spitzer's actions could fairly be characterized as deceptive pursuant to *R.C. 1345.02*; whether Toth considered the actions to be deceptive was not controlling. Moreover, any assertion on Toth's part that he felt he had been deceived was subject to the jury's assessment of the assertion's credibility and reasonableness under the circumstances.

Many of the cases relied upon by Toth are factually distinguishable from this case. For example, in *Brown v. Lyons (1974), 43 Ohio Misc. 14, 332 N.E.2d 380,* the defendant was found to have frequently changed his business names, to have concealed his real identity from consumers, and to have intentionally sold defective merchandise for which he did not honor the warranty. In *State ex rel. Celebreeze v. Goldstein* (June 20, 1983), Fairfield Cty. C.P. No. 53110, unreported, the supplier accepted payments toward the purchase [*7] of goods without giving a receipt stating the refund policy and kept the money for more than eight weeks without taking any further action toward the delivery of the goods, making a refund, or making other arrangements with the purchaser. In *Maimon v. Day* (May 31, 1990), Montgomery Cty. C.P. No. 89-2411, unreported, the defendants

misrepresented their experience and qualifications and utterly failed to perform in a workmanlike manner. In *Zimmerman v. U.S. Diamond & Gold Jewelers, Inc., 1995 Ohio App. LEXIS 901* (March 8, 1995), Montgomery App. No. 14680, unreported, the supplier refused to deliver on a binding contract for specifically identified goods at a specific price. The representations and the alleged breaches in Toth's case were much less clear cut. There was substantial evidence in the record from which the jury could have concluded that Spitzer's work was performed in a workmanlike manner and could be used for the precise purposes proposed by Toth. The parties' dispute centered largely on the subjective issue of whether the concrete slabs installed by Spitzer were of equal or better quality than the original slab installed by another contractor. Because both parties presented experts supporting **[*8]** their positions, the jury could have reasonably concluded that the facts did not support a finding that Spitzer had acted deceptively.

Because the jury could have reasonably concluded that Spitzer had breached the contract with Toth by not complying with all of Toth's specifications but had not acted deceptively pursuant to *R.C. 1345.02*, the trial court did not err in overruling Toth's motion for judgment notwithstanding the verdict.

The first assignment of error is overruled.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO GRANT PLAINTIFF A NEW TRIAL.

Toth contends that his motion for a new trial should have been granted because the jury's verdicts on the breach of contract and CSPA claims were inconsistent, its award of damages was inadequate, and its verdict was against the manifest weight of the evidence due to inconsistencies between the verdict and the jury's answers to interrogatories. To the extent that Toth's claim of inconsistent verdicts is based upon his argument that a breach of contract is necessarily a deceptive act in violation of the CSPA, we rely on our discussion under the first assignment of error.

In arguing that the damage award was **[*9]** inadequate, Toth asserts that the damage award was insufficient "to put him in the position he would have been had the contract been performed by Spitzer" and that the jury erroneously based its award on the diminution in value of Toth's property. Toth claims that "the reasonable cost of completion, not diminution in value" was the proper measure of damages, and that the jury was improperly instructed on this issue. Toth paid $ 5,132 for Spitzer to install the two concrete slabs with a drain. He sought damages of $ 12,320 based on the cost of removing the concrete slabs poured by Spitzer and replacing them.

In *Dooley v. Purdum, 1997 Ohio App. LEXIS 477* (Feb. 14, 1997), Champaign App. No. 96-CA-07, unreported, a case upon which Toth relies, we held that, generally, the proper measure of damages in a home improvement contract is the cost of repair, but that a different measure of damages must be used if the total cost to remedy a defect is grossly disproportionate to the good to be attained. *Id*., citing *Tru-Built Garage & Lumber Co., Inc. v. Mays, 1993 Ohio App. LEXIS 288* (Jan. 27, 1993), Montgomery App. No. 13432, unreported. "In such cases, termed 'economic waste' cases, damages are measured by the difference in the value **[*10]** of the improvement or structure contracted for and the improvement or structure received." *Id*. To do otherwise would result in a windfall to the owner because he would receive more than the benefit of his bargain. *Id.*

Toth presented an appraiser's testimony that the market value of his property was "primarily in the raw land and the building" and that the pole barn floor had a "very minor value" compared to the overall value of the property. The appraiser did not opine as to a specific amount that Spitzer's work, if it was defective, might have diminished the value of the property, but he did testify to the total value of the property -- $ 130,000 to $ 140,000 -- and that any diminution in value would be "very minor" by comparison. Moreover, there was a substantial amount of evidence, including testimony from some of Toth's witnesses, that there were no structural problems with the slabs and that the drain had been constructed in a reasonable manner. Based on this evidence, the jury could have reasonably found that Toth was not entitled to recover based on the cost of replacing the slabs, but rather would be more appropriately compensated by an amount representing the difference **[*11]** between the value of the barn with the slab if it had been constructed according to Toth's precise specifications and the value of the barn with the slab as constructed.

We reject Toth's argument that the amount of damages "defeats the purpose of the CSPA" to protect consumers from deceptive practices on the basis that the

jury did not find any CSPA violation or deceptive practice.

Finally, Toth argues that the trial court erred when it refused to ask the jury to specify in its interrogatories in what respects it had found that Spitzer had breached his contract with Toth. Toth wanted to use this information to establish whether the breach or breaches had also constituted violations of the CSPA. However, the jury's indication, in separate interrogatories, that Spitzer had committed no deceptive or unconscionable acts in violation of the CSPA settled the issue of whether there had been any violation of the CSPA, and the trial court's failure to allow additional instructions on this issue did not prejudice Toth.

The second assignment of error is overruled.

The judgment of the trial court will be affirmed.

YOUNG, P.J. and BROGAN, J., concur.